# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CEPHALON, INC., EAGLE PHARMACEUTICALS, INC., AND TEVA PHARMACEUTICALS INTERNATIONAL GMBH,<br><br>Plaintiffs,<br><br>v.<br><br>SLAYBACK PHARMA LIMITED LIABILITY, COMPANY, et al.,<br><br>Defendant. | Case No. 1:17-cv-01154-CFC (Consolidated)<br><br>**CONFIDENTIAL –<br>FILED UNDER SEAL** |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' LETTER TO JUDGE CONNOLLY REGARDING DISCOVERY DISPUTE

Dated: May 14, 2019

*Of Counsel:*

Nicole Stafford (*pro hac vice*)
Aden Allen (*pro hac vice*)
Shyamkrishna Palaiyanur (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746-5546
Tel: (512) 338-5400
nstafford@wsgr.com
aallen@wsgr.com
spalaiyanur@wsgr.com

Dennis D. Gregory (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
(212) 999-5899
dgregory@wsgr.com

James M. Lennon (#4570)
DEVLIN LAW FIRM LLC
1306 N. Broom Street, 1st Floor
Wilmington, DE 19806
Phone: (302) 449-9010
jlennon@devlinlawfirm.com

*Attorneys for Defendant Mylan Laboratories Limited*

Dear Judge Connolly,

Defendants Mylan, Apotex, Slayback, and Fresenius Kabi (collectively, "Defendants") oppose the relief requested in Plaintiffs' discovery dispute letter (D.I. 260). Plaintiffs' letter does not seek relief that is appropriate under the Court's "discovery dispute" procedure. Plaintiffs' letter is largely a rehash of relief that Plaintiffs previously *requested and were denied* at the March 12, 2019 hearing. *See* Exs. A, B (D.I. 243-244); Ex. C (Hr'g Tr. at 39:20-40:6). As before, Plaintiffs seek to preclude substantial portions of Defendants experts' opinions at trial, even though the Court's scheduling order does not permit such requests prior to the pre-trial order (D.I. 207 at ¶14 ("All *in limine* requests and responses thereto shall be set forth in the proposed pretrial order.")). As in their prior motion, Plaintiffs are once again requesting the exclusion of evidence and argument, ostensibly on discovery grounds, based on mere speculation of how that evidence might be used at trial, without addressing the mandatory *Pennypack* factors. *See Abbott Labs v. Lupin Ltd.*, 2011 WL 1897322, at *3-5 (D. Del. May 19, 2011). The Court should reject Plaintiffs' proposed order as untimely and contrary to law.

## I. The Court Previously Denied Plaintiffs' Request to Identify Specific Combinations

Plaintiffs already asked this Court to "narrow [Defendants'] invalidity combinations" to those references identified under certain headings in Defendants' expert reports.[1] However, the Court explained at the March 12 conference that "**I'm not going to limit the combinations. I'm going to do it by number of references.**" Ex. C at 39:20-40:6 (emphasis added). Plaintiffs' attempt to re-raise this issue only wastes Court resources by relitigating an issue that has been decided and is contrary to existing law.

Plaintiffs demand that Defendants' experts rely only on *portions* of their expert reports under specific headings but provide no explanation as to why that should be the case. As Defendants previously explained, Plaintiffs ignore sections of Defendants' expert reports that, for example, discuss motivations to combine, expectation of success, and other elements of the obviousness analysis. *See, e.g.*, Ex. B (opinions expressed in Section VI, VII, X.A., and XI.A.).

Contrary to Plaintiffs' arguments, there is no artificial and mechanical "combination of references" requirement. The Supreme Court *explicitly rejected* such a rule in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). Instead, the Supreme Court's "cases have set forth an expansive and flexible approach" to obviousness. The Court explained that "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *Id.* at 419. Plaintiffs' requirement that Defendants "must identify (1) the specific portions of [the] references that would have been modified or combined, and (2) any motivation to modify or combine [references]" reflects Plaintiffs' profound misunderstanding of the law of obviousness and the text of Defendants experts' reports. Each

---

[1] The similarity between the relief requested in the March 12 hearing and in the present dispute is reflected by the proposed orders, which are substantively identical. *Compare* Ex. D (March 12 Proposed Order) *with* D.I. 260-3.

prior art reference must be read "as a whole," and the reports are replete with reasons why a POSA would have been motivated to develop the claimed inventions and how a POSA would have done so.

None of the caselaw Plaintiffs rely on supports their position. First, in *ActiveVideo*, the Federal Circuit affirmed the district court grant of JMOL on the basis that the expert opinions "were conclusory and lacked factual support." *See ActiveVideo Networks v. Verizon Comms.*, 694 F.3d 1312, 1327-28 (Fed. Cir. 2012). Likewise, in *Innogenetics*, defendant's expert failed to opine on a motivation to modify the prior art. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373–74 (Fed. Cir. 2008). Neither case applies here because Defendants' expert reports explain in detail the prior art that invalidates the asserted claims and the motivation to modify those references.

## II. The Court's Order Does Not Preclude Defendants from Relying on Additional References to Prove the State of the Art and Rebut Secondary Considerations

Defendants complied with the Court's March 12, 2019 Order, which required Plaintiffs to cut the number of asserted claims down to 25[2] and Defendants "to identify no more than 40 prior art references on which they can rely to prove their invalidity claims" (the "Order"). Ex. C at 45:17-19. After the March 12 hearing, Plaintiffs served six expert reports on validity and secondary considerations totaling more than 2000 pages and citing more than 150 additional references (many of which were disclosed for the first time in Plaintiffs' expert reports). Plaintiffs now request the Court to prohibit Defendants from using any additional references to respond to these arguments. This is both unfair and unwarranted. Plaintiffs also seek to preclude references that serve to demonstrate the state of the art. This is not consistent with the Court's ruling or with Plaintiffs' own actions. During the discussion relating to how best to reduce the number of prior art references in this case, Defendants repeatedly stated that any reduction should not preclude the use of additional references for background purposes and showing the state of the art at the time. *See, e.g., id.* at 32:8-33:10 (explaining distinction between "background references" and "invalidating references" and that Defendants could limit references "within the 50 invalidating references realm"). Thus, the Court ordered Defendants to identify 40 invalidating prior art references with no limitation on the number of background references or references needed to rebut secondary considerations.

Controlling case law also recognizes the difference between a prior art reference that "defin[es] a combination for obviousness," and prior art that "can legitimately serve to document the knowledge that skilled artisans would bring to bear in reading the prior art identified as producing obviousness" (*i.e.* a background reference). *Ariosa Diags v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015); *Genzyme Therapeutic Prods. v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1369 (Fed. Cir. 2016) (references not identified in IPR petition "can legitimately serve to document the knowledge that skilled artisans would bring to bear in reading the prior art identified as producing obviousness   Moreover, the cases cited by Plaintiffs are inapposite because (1) those cases were motions to strike from expert reports references that were not previously raised, and (2) the references were used not as background but instead to show

---

[2] By carefully selecting the claims that are still being asserted Plaintiffs effectively only eliminated one claim limitation—thus not narrowing the case to any significant degree.

invalidity of a specific claim limitation. Here, Plaintiffs have not moved to strike but seek an advisory order, and Defendants properly identified the background references its experts may rely on prior to the submission of the expert reports. Plaintiffs' attempt to preclude testimony regarding the state of the art and to rebut secondary considerations is therefore inappropriate.

### III. Plaintiffs' Request to Strike Portions of the Yates Report is Unwarranted.

Plaintiffs' request to strike portions of Dr. Yates' expert report is a motion *in limine*, not a discovery dispute and should be barred by the Court's Scheduling Order, which provides that motions *in limine* are to be presented with the pretrial order. Regardless, there is no basis for striking these portions of Dr. Yates' Report, which directly support Defendants' invalidity defenses. Each of the Paragraphs Plaintiffs seek to strike relate to a declaration submitted by Plaintiffs to the Patent Office to overcome prior art (¶¶ 127-148) and misstatements made in the '021 Patent that bendamustine would not have been expected (prior to the date of the patent) to be safely used to treat CLL and NHL in renally impaired patients (¶¶128-158). These statements go to the heart of the arguments Plaintiffs used to overcome prior art and obviousness rejections at the patent office to obtain issuance of their patents, and therefore are directly related to the invalidity of these patents. *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 110 (2011)("[I]f the PTO did not have all the material facts before it, its considered judgment may lose significant force."); *Am. Hoist & Derrick Co. v. Sowa & Sons Co.*, 725 F.3d 1350, 1359-60 (Fed. Cir. 1984). For instance, Paragraphs 127-148 point out that Eagle submitted a 37 C.F.R. § 1.132 declaration of Eagle's Chief Scientific Officer, Steven L. Krill, to the Patent Office to overcome certain rejections based on prior art. Ex. E. The declaration contained statements designed to support Eagle's argument to the Patent Office that certain prior art taught away from the concept of lower volume, shorter infusions of bendamustine, going so far as to state that "[p]rior to the invention described in the '090 Application, it was thought that fast-infusion of low-volume, high-concentration bendamustine formulations was practically impossible and dangerous for the patient." *Id.* at ¶9). This declaration was relied on by the Patent Office in allowing many of the patents at issue here. However, ███████, ███████████ with an entirely different characterization of the same prior art—stating instead that the studies reported in these prior art references would indicate that a fast, low-volume, high-concentration administration of bendamustine ███████████████████████████████" but never brought this to the attention of the Patent Office. Ex. F at 4. Dr. Yates should be entitled to opine on these topics, which go directly to invalidity, because they refute Plaintiffs' assertions of nonobviousness and patentability. That the statements in Dr. Yates' Opening Report also support inequitable conduct do not make them any less relevant to invalidity.[3]

---

[3] The allegations of inequitable conduct/unclean hand are not a surprise. Plaintiffs admit Apotex pled inequitable conduct/unclean hands in its answer. Once Defendants had additional facts supporting the inequitable conduct/unclean hands defense from discovery they provided detailed contentions that explain at length and with particularity the who, what, when, where, and how of the material misrepresentations and omissions committed before the Patent Office.

Sincerely,

DEVLIN LAW FIRM LLC

By: *s/James M. Lennon/*
     James M. Lennon

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on May 14, 2019 to the counsel of record for plaintiffs via electronic mail.

*s/James M. Lennon/*
James M. Lennon

-4-