IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CEPHALON. INC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 17-1154-CFC |
| | ) | |
| v. | ) | CONSOLIDATED |
| | ) | Redacted Public Version |
| SLAYBACK PHARMA LIMITED | ) | |
| LIABILITY CO., *et al.*, | ) | ███████████ |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION TO REDACT PORTIONS OF
## THE MAY 16, 2019 HEARING TRANSCRIPT (D.I. 269)

Plaintiffs Teva Pharmaceuticals International GmbH, Cephalon, Inc. (collectively,

"Teva"), and Eagle Pharmaceuticals, Inc. ("Eagle") (collectively, "Plaintiffs"); and Defendants

Apotex Inc., Apotex Corp., Fresenius Kabi USA, LLC, Mylan Laboratories Ltd., and Slayback

Pharma Limited Liability Co. (collectively, "Defendants") respectfully move the Court to redact

certain, limited portions of the May 16, 2019 Hearing Transcript, the disclosure of which would

result in a clearly defined and serious injury to Plaintiffs' competitive standing.  The grounds for

this motion are set forth below.  A highlighted version of Plaintiffs' proposed redactions is

attached as Exhibit A.  For the Court's convenience, a redacted version of the Hearing Transcript

is attached as Exhibit B.

Although the public has a presumptive right of access to judicial records, that right "is not

absolute."  *Littlejohn v. Bic Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (citing *Nixon v. Warner

Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  A party seeking the redaction of judicial records

may overcome the presumption of public access by showing "that the material is the kind of

information that courts will protect and that disclosure will work a clearly defined and serious

injury to the party seeking closure.'" *In re Avandia Marketing Sales Practices & Prods.*
*Liability Litig.*, 924 F.3d 662, 672 (3rd Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551
(3d Cir. 1994)).  Thus, courts may appropriately "deny access to judicial records, for example,
where they are sources of business information that might harm a litigant's competitive
standing." *Littlejohn*, 851 F.2d at 678 (citing *Nixon*, 435 U.S. at 598).

Here, Plaintiffs seek to redact only limited portions of the Hearing Transcript that directly
involve Plaintiffs' competitive interests.  Specifically, Plaintiffs seek to redact portions of the
Hearing Transcript that describe confidential information concerning Plaintiffs' prosecution of
drug and patent applications, including the contents of confidential statements made by Plaintiffs
to the U.S. Food & Drug Administration in support of regulatory approval.  Plaintiffs also seek
to redact confidential information concerning the terms of a revised licensing agreement between
Eagle and Teva.  Disclosure of that information would seriously harm Plaintiffs by providing
competitors and future litigants with knowledge of Plaintiffs' internal strategies for obtaining
drug applications and patents and, in the case of the Eagle-Teva license agreement, the
confidential details of the parties' business arrangements.  Armed with that information, such
parties could attempt to extract more favorable terms from Plaintiffs in future negotiations
regarding the patents or products at issue in this case or others owned by Plaintiffs.

Recognizing the serious injuries that would arise if competitors were able to access the
kinds of sensitive information identified above, courts routinely grant requests for redaction
under similar circumstances.  *See Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157,
166 (3d Cir. 1993) ("We too have explained that the presence of trade secrets in court records
weighs against the right of access, although we have framed the inquiry as whether the need for
secrecy outweighs the presumption of access that normally attaches to such documents."); *Joint*

*Stock Soc. v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 396 (D. Del. 2000) (sealing proper where the "overwhelming majority of these documents contained 'legitimate trade secrets or other proprietary information,'" such as "vodka formulas, consumer research studies, strategic plans, potential advertising and marketing campaigns or financial information."); *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 667 (D. N.J. 2004) (sealing proper to protect information relating to "the parties' products, research and development, processes, secret chemical formulas, the parties' suppliers"); *Mars, Inc. v. JCM Am. Corp.*, 2007 WL 496816, at *2 (D.N.J. Feb. 13, 2007) (concluding that disclosure of confidential agreements would dampen the moving party's "ability to negotiate effectively favorable terms on which it is willing to condition future sales and/or acquisitions").  This Court has previously recognized that the parties' need to protect their confidential research, development, and commercial information outweighs the public's interest in accessing those materials.  *See* D.I. 184.  Redaction is therefore appropriate here.

Accordingly, the parties respectfully request that the Court redact the portions of the Hearing Transcript identified in Exhibit A.

Respectfully submitted,

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Teva Pharmaceuticals
International GmbH, Cephalon, Inc., and
Eagle Pharmaceuticals, Inc.*

/s/ James M. Lemon
James M. Lennon (No. 4570)
DEVLIN LAW FIRM LLC
1306 N. Broom Street, 1st Floor
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com
*Attorneys for Mylan Laboratories Ltd.*

/s/ Jeremy S. Cole
Damien N. Tancredi (No. 5395)
Jeremy S. Cole (No. 6226)
FLASTER/GREENBERG P.C.
1201 N. Orange Street, Suite 301
Wilmington, DE 19801
(302) 351-1910
Jeremy.cole@flastergreenberg.com
*Attorneys for Apotex Inc. and Apotex Corp.*

/s/ Eve H. Ormerod
Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com
*Attorneys for Slayback Pharma Limited
Liability Co.*

/s/ Brian E. Farnan
Brian E. Farnan (No. 4089)
Michael J. Farnan (No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com
*Attorneys for Fresenius Kabi USA, LLC*

Dated: June 19, 2019

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on June 19, 2019, this document was served

on the persons listed below in the manner indicated:

**BY EMAIL**

Jeremy S. Cole
Damien Nicholas Tancredi
FLASTER/GREENBERG P.C.
1201 N. Orange Street, Suite 301
302-351-1910
Wilmington, DE 19801
jeremy.cole@flastergreenberg.com
damien.tancredi@flastergreenberg.com
*Attorneys for Apotex Inc.*
*and Apotex Corp.*

Steven E. Feldman
Sherry L. Rollo
Daniel R. Cherry
John D. Cravero
HAHN LOESER & PARKS LLP
125 South Wacker Drive
Suite 2900
Chicago, IL 60606
(312) 637-3010
sfeldman@hahnlaw.com
srollo@hahnlaw.com
dcherry@hahnlaw.com
jcravero@hahnlaw.com
*Attorneys for Apotex Inc.*
*and Apotex Corp.*

Jeffrey A. Cohen
FLASTER & GREENBERG, P.C.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900
jeffrey.cohen@flastergreenberg.com
*Attorneys for Apotex Inc.*
*and Apotex Corp.*

James M. Lennon
DEVLIN LAW FIRM LLC
1306 N. Broom Street, 1st Floor
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com
*Attorney for*
*Mylan Laboratories Limited*

Nicole Stafford
Shyamkrishna Palaiyanur
Anjali Deshmukh
WILSON SONSINI GOODRICH
 & ROSATI PC
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746
(512) 338-5402
nstafford@wsgr.com
spalaiyanur@wsgr.com
adeshmukh@wsgr.com
*Attorneys for Mylan Laboratories*
*Limited*

Dennis D. Gregory
WILSON SONSINI GOODRICH
 & ROSATI PC
1301 Avenue of the Americas
40th Floor
New York, NY 10019
(212) 497-7764
dgregory@wsgr.com
*Attorney for Mylan Laboratories Limited*

Bobby Delafield
Aden Allen
WILSON SONSINI GOODRICH
 & ROSATI PC
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746
(512) 338-5432
bdelafield@wsgr.com
aallen@wsgr.com
*Attorneys for Mylan Laboratories
Limited*

Brian E. Farnan
Michal J. Farnan
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com
*Attorneys for Defendant
Fresenius Kabi USA, LLC*

Arun John Mohan
SCHIFF HARDIN LLP
666 Fifth Avenue, Suite 1700
New York, NY 10103
(212) 745-9536
amohan@schiffhardin.com
*Attorney for Defendant
Fresenius Kabi USA, LLC*

Kevin M. Nelson
Imron T. Aly
SCHIFF HARDIN LLP
233 S. Wacker Dr., Suite 7100
Chicago, IL  60606
(312) 258-5500
knelson@schiffhardin.com
ialy@schiffhardin.com
*Attorneys for Defendant
Fresenius Kabi USA, LLC*

Neal C. Belgam
Eve H. Ormerod
SMITH, KATZENSTEIN, & JENKINS LLP
The Brandywine Building
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, DE 19899
302-652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com
*Attorneys for Defendant
Slayback Pharma Limited Liability
Company*

Constance S. Huttner
Frank D. Rodriquez
James P. Barabas
Beth C. Finkelstein
WINDELS MARX LANE & MITTENDORPH, LLP
One Giralda Farms, Suite 100
Madison, NJ  07940
chuttner@windelsmarx.com
frodriguez@windelsmatx.com
jbarabas@windelsmarx.com
bfinkelstein@windelsmarx.com
*Attorneys for Slayback Pharma Limited*
*Liability Company*

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Teva Pharmaceuticals*
*International GmbH, Cephalon, Inc., and*
*Eagle Pharmaceuticals, Inc.*

# Exhibit A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                         - - -

 4
        TEVA PHARMACEUTICALS        :   CIVIL ACTION
 5      INTERNATIONAL GMBH,         :
        CEPHALON, IN., and EAGLE    :
 6      PHARMACEUTICALS, INC.,      :
                                    :
 7                   Plaintiffs,    :
                                    :
 8         vs.                      :
                                    :
 9      SLAYBACK PHARMA LIMITED     :
        LIABILITY COMPANY, et al.,  :
10                                  :
                     Defendants.    :   NO. 17-1154-CFC
11

12                         - - -

13                         Wilmington, Delaware
                           Thursday, May 16, 2019
14                         3:34 o'clock, p.m.

15                         - - -

16   BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

17                         - - -

18   APPEARANCES:

19
             SHAW KELLER LLP
20           BY:  JOHN W. SHAW, ESQ.

21
                      -and-
22

23

24
                           Valerie J. Gunning
25                         Official Court Reporter
```

APPEARANCES (Continued):

WILLIAMS & CONNOLLY LLP
BY:  DAVID I. BERL, ESQ.
ADAM HARBER, ESQ., and
SHAUN P. MAHAFFY, ESQ.
(Washington, D.C.)

Counsel for Plaintiff
Teva Pharmaceuticals International GmbH
& Cephalon, Inc.

LATHAM & WATKINS LLP
BY:  DANIEL G. BROWN, ESQ. and
MICHELLE L. ERNST, ESQ.
(New York, New York).

Counsel for Defendant
Eagle Pharmaceuticals, Inc.

FARNAN LLP
BY:  BRIAN FARNAN, ESQ.

-and-

SCHIFF HARDIN LLP
BY:  KEVIN M. NELSON, ESQ.
(Chicago, Illinois)

Counsel for Defendant and Counterclaim
Plaintiff Fresenius Kabi USA LLC

---

**3**

APPEARANCES (Continued):

SMITH, KATZENSTEIN & JENKINS LLP.
BY:  EVE H. ORMEROD, ESQ.

-and-

WINDELS MARX LANE & MITTENDORF LLP
BY:  JAMES P. BARABAS, ESQ.

Counsel for Defendant
Slayback Pharma Limited Liability Company,
et al.

HAHN LOESER & PARKS LLP
BY:  STEVEN FELDMAN, ESQ. and
SHERRY L. ROLLO, ESQ.

Counsel for Defendant
Apotex Inc. and Apotex Corp.

FLASTER GREENBERG P.C.
BY:  JEREMY S. COLE, ESQ.

-and-

FLASTER GREENBERG P.C.
BY:  STEVEN E. FELDMAN, ESQ.,
SHERRY L. ROLLO, ESQ. and
JEFFREY A. COHEN, ESQ.
(Chicago, Illinois)

Counsel for Defendant Apotex

---

APPEARANCES (Continued):

THE DEVLIN LAW FIRM LLC
BY:  JAMES M. LENNON, ESQ.

-and-

WILSON SONSINI GOODRICH & ROSATI
BY:  DENNIS GREGORY, ESQ.

Counsel for Defendant
Mylan Pharmaceuticals

- - -

---

**5**

PROCEEDINGS

(Proceedings commenced in the courtroom, beginning at 3:34 p.m.)

THE COURT:  All right.  Good afternoon.  Please be seated.

Mr. Shaw?

MR SHAW:  Good afternoon, Your Honor.  I'm here representing Teva and Eagle.

Joining me for Teva from Latham & Watkins, David Berl, Adam Harber and Shaun Mahaffy, and for Eagle from Latham & Watkins, Dan Brown and Michelle Ernst.

THE COURT:  Good afternoon.  All right.  We have folks here.  Let's start with, I guess, Mr. Farnan.

MR FARNAN:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR FARNAN:  Brian Farnan on behalf of Fresenius.  With me today is Kevin Nelson from Schiff Hardin.

THE COURT:  All right.

MR FARNAN:  Thank you.

THE COURT:  Thank you.  And Mr. Lennon?

MR. LENNON:  Hello again, Your Honor.  Jim Lennon on behalf of Mylan.

6

1     With me today on behalf of Mylan is Dennis
2  Gregory.
3          THE COURT: Thank you. Ms. Ormerod?
4          MS. ORMEROD: Good afternoon, Your Honor. Eve
5  Ormerod of Smith, Katzenstein & Jenkins on behalf of
6  Slayback, and I am joined today by James Barabas from
7  Windels Mark.
8          THE COURT: Thank you. All right. Is that
9  everybody?
10         MR. COLE: One more. Good afternoon, Your
11 Honor. I'm Jeremy Cole from Flaster Greenberg on behalf of
12 the Apotex defendants.
13         THE COURT: I see. Sorry.
14         MR. COLE: That's okay.
15         THE COURT: All right. Thank you. Wait. Are
16 you with --
17         MR. COLE: And I've got Jeff Cohen also from
18 Flaster Greenberg as well as Sherry Rollo and Steven
19 Feldman.
20         THE COURT: Okay.
21         MR. COHEN: Good afternoon.
22         THE COURT: Good afternoon. Is that everybody
23 then? That is everybody. Okay. All right.
24         Let's start with, I've got the two proposed
25 orders. Just, by the way, this came up in a telephone

7

1  conference. So earlier today, this is really for the --
2  well, you all appear probably regularly.
3          Just going forward, the motions, somebody filed
4  one of the motions, which is the new, part of the revised,
5  April of this year revised patent order, and so if you could
6  do that for all discovery disputes going forward.
7          Have I already ruled that the April 22, 2019
8  procedures are in place in this case? All right. So why
9  don't I do that.
10         So for the record, the briefing requirements,
11 discovery procedure requirements that are in the April 22nd,
12 2019 form patent order on the website will apply in this
13 case. And there's one caveat though already, which is when
14 you file the motion for disputes like this, if you can
15 attach to that motion the order that has the specific form
16 of relief requested, I would appreciate that. All right?
17 That's not in the revised order, but in the revised order it
18 says file it with a letter. All right? All right.
19         So then let's get to the first dispute, which is
20 the -- let's see. Let's go with the plaintiffs first. All
21 right.
22         MR. HARBER: Good afternoon, Your Honor.
23 Adam Harber from Williams & Connolly on behalf of the
24 plaintiffs.
25         I can take the issues in whatever order Your

8

1  Honor would like or I can just move in the order that
2  they're in our letter if you have no preference.
3          THE COURT: Well, you know, I don't know why the
4  defendants didn't follow the order you laid out in your
5  letter. It kind of threw me for a loop. I'm curious why.
6  Given that, you can go in whatever order you want.
7          MR. HARBER: Okay. So I will start with the
8  inequitable conduct/unclean hands issue which applies in the
9  case.
10         THE COURT: Did you move to dismiss?
11         MR. HARBER: We didn't, Your Honor, because
12 there wasn't a -- in our view, there wasn't an inequitable
13 conduct allegation that was properly in their answer. I
14 mean, in this case they have injected a specific allegation
15 alleging fraud against two specific individuals whose names
16 appear nowhere in their amended answer.
17         So --
18         THE COURT: Do they allege inequitable conduct
19 in the answer?
20         MR. HARBER: In Apotex's answer only, the 28th
21 additional defense --
22         THE COURT: Right.
23         MR. HARBER: -- is a sentence that says, that
24 contains the words inequitable conduct and unclean hands,
25 but there's otherwise no detail.

9

1          THE COURT: You didn't move to dismiss?
2          MR. HARBER: We didn't move to dismiss or strike
3  that.
4          THE COURT: Right. So why should I be dealing
5  with this now?
6          MR. HARBER: I think for two reasons if we're
7  focused on the facts that plaintiffs didn't move to strike
8  or move to dismiss the answer at the time.
9          One is --
10         THE COURT: No. I mean my point is that you
11 didn't move to dismiss. One of your arguments is it was
12 inadequately pled. Right?
13         MR. HARBER: That's correct, Your Honor.
14         THE COURT: All right. And now, but you didn't
15 move to dismiss. Fair enough. You didn't lose your right
16 to argue, you know, later on that you can't present it. So
17 why now?
18         MR. HARBER: Because their -- we now have and we
19 raised it as soon as we had it an expert report that alleges
20 a specific allegation based on fraud against two specific
21 individuals in the case, and so whatever was in that answer
22 that Apotex filed certainly wasn't the specific allegations
23 which we wouldn't have known to move to strike or dismiss,
24 and the implication of saying that if a party doesn't
25 move -- you know, go through the 50 affirmative defenses

10

1  that a party puts in its answer at the time and in every
2  case move to strike or dismiss them for being inadequately
3  pled, that they have closed the door to any permutation of
4  that defense that a party may inject down the road is
5  essentially going to create one of these motions in every
6  case.
7       So we think it's not -- A, we don't think it's
8  the proper procedure.  But, B, even if it was, whatever it
9  was that was in their amended answer is not the two specific
10 inequitable conduct allegations.
11      THE COURT:  Well, it sounds like you just said a
12 one or two-sentence thing.  It doesn't identify anything
13 with specificity.
14      MR. HARBER:  That's right.  But they have to,
15 and they are alleging a specific -- they are now for the
16 first time in the case alleging a specific allegation of
17 fraud, and that allegation of fraud has to be pled.
18      THE COURT:  I'm confused.  I mean, you know,
19 they alleged that you allege in a pleading.
20      MR. HARBER:  Right.
21      THE COURT:  So they alleged in a pleading and
22 you didn't move to strike or dismiss the pleading.  Right?
23 And you don't waive your ability to challenge that defense,
24 but why in the context of an expert report are we litigating
25 this?

11

1       MR. HARBER:  Because --
2       THE COURT:  At this stage as opposed to a motion
3  in limine on the eve of trial, as far as a pretrial order?
4  I don't understand.
5       MR. HARBER:  Well, because we think it's a
6  proper motion to strike.  They have in their expert reports
7  a defense that in our view was not adequately pled and the
8  proper place to deal with that is in a motion to strike.
9       I ask that those improperly pleaded allegations
10 come out of the case before we're forced to go through
11 expert --
12      THE COURT:  So what Federal Rule of Civil
13 procedure is this?
14      MR. HARBER:  It would just be, they can't -- I'm
15 not familiar with the rule, but they can't include in the
16 case an allegation that they have not pleaded.
17      THE COURT:  They did plead it.
18      MR. HARBER:  But they have not pled the -- there
19 are two specific inequitable conduct allegations.
20      THE COURT:  Your argument is the sufficiency of
21 the pleading, so when are you supposed to raise that under
22 the Federal Rules of Civil Procedure?
23      MR. HARBER:  Our belief is we were not on notice
24 until they served their expert report.
25      THE COURT:  You were on notice they had an

12

1  inequitable conduct defense.  I mean, seriously, just tell
2  me in the rule where, you know, I'm familiar with pleading
3  related arguments under Rule 12.
4       MR. HARBER:  Right.
5       THE COURT:  There's a motion.  The rule
6  specifically provides for it.  I'm aware of motions in
7  limine.  I'm just trying to figure out procedurally why
8  we're dealing with this now.
9       MR. HARBER:  I don't know what to say, Your
10 Honor, other than what I've already said, which is there
11 wasn't -- the rule that the Court wishes to create is that
12 in every case we have to go through and move at the time on
13 all 50 defenses that as a matter of form these defendants
14 put in their cases but which are clearly inadequate to
15 allege something down the road, we can do that.
16      THE COURT:  Let's say your expert said that the
17 patent was invalid because it had too many pages.  Are you
18 moving to strike that?
19      MR. HARBER:  I don't --
20      THE COURT:  Isn't that his opinion?  You can
21 argue his opinion when we get to trial or you can file a
22 motion in limine when we get to trial and we deal with it
23 then.  I'm just trying to understand why we're dealing with
24 it now.
25      MR. HARBER:  Well, because their --

13

1       THE COURT:  So a hypothetical.  He put forth a
2  theory of invalidity you never heard of.  What do you do at
3  that point?
4       MR. HARBER:  I think in that case it wouldn't be
5  a matter of pleading, it would be if there was a theory of
6  invalidity that wasn't in the invalidity contentions, the
7  proper procedure for that would be to move to strike
8  something that wasn't in the invalidity contentions.  But
9  what we're dealing with here is one step beyond that, where
10 it's not just a theory that wasn't properly identified in
11 contentions.  It's a -- it's a theory that carries with it
12 specific particular pleading requirements that the other
13 party didn't meet.  So I mean, I suppose we can do this as a
14 motion in limine down the road.
15      THE COURT:  Can you point to me anything in the
16 rule -- I mean, let's look at Rule 12.  Defenses and
17 objections, when and how presented.  Motion for judgment on
18 the pleadings.
19      I mean, I'm just trying to figure out, you're
20 saying this is an inadequate pleading.  I'm familiar that
21 Rule 12 allows for such motions to be brought.  Aren't there
22 time limitations placed on that pursuant to Rule 12?
23      MR. HARBER:  Yes, but, Your Honor, again, I
24 appreciate the point you're trying to make, but I think our
25 point --

14

1    THE COURT:  I'm not trying to make a point.  I'm
2  trying to understand your point.
3    MR. HARBER:  Well, our point is it's not that
4  it's -- we are not attacking the sufficiency of the pleading
5  as such.  We are saying that the defense that was injected
6  into the case in the expert report is not a defense that
7  there is correspondingly, correspondingly adequate pleading
8  for them to maintain in the case.  And we believe the
9  proper way to address that is in a motion to strike so
10  that we don't have to proceed through expert discovery and
11  take our time cross-examining their expert and adduce
12  evidence, and when this wasn't even during fact discovery,
13  they never advised us that this was a theory they had in the
14  case.  They had not named these two individuals anywhere as
15  people they believed committed fraud.
16    We had no ability to take -- for example, one of
17  them was a former employee who lives in California.  We
18  don't control the employee.  So the fact that it wasn't
19  until after fact discovery that we were on notice that they
20  were alleging that employee of having committed fraud in the
21  in the Patent Office is a problem and it prejudices us.
22  That's the point we believe is pertinent here.
23    THE COURT:  Okay.  Anything else on that
24  argument?
25    MR. HARBER:  The other argument that I take the

15

1  defendants to be making is that the allegations in Dr.
2  Yates' report that go to inequitable conduct/unclean hands
3  are somehow relevant to general validity and therefore
4  shouldn't be stricken even if the Court finds they can't run
5  an inequitable conduct defense, and that in our view just
6  isn't correct.
7    The cases they cite on this are cases dealing
8  with the presumption of validity jury instruction.  They are
9  not cases that say that a party without adequate pleading
10  can accuse another party of having engaged in, and to use
11  the words that their expert used, knowingly, willfully lying
12  or otherwise misleading the Patent Examiner in an apparently
13  fraudulent effort to gain patent approval.  That is not a
14  general validity defense that should remain in the case
15  absent a proper pleading of inequitable conduct.  And so
16  it's our view that these, that this portion of the report
17  is -- bears no relevance, it wasn't properly pled, it wasn't
18  properly before in the case during fact discovery as it
19  ought to have been, and it therefore should be stricken from
20  the expert report now.
21    I can move on to the next issue unless Your
22  Honor --
23    THE COURT:  No, no.  Just give me a second.
24    MR. HARBER:  Okay.
25    THE COURT:  Do you know of any case where a

16

1  Court struck an expert report at this stage in the
2  litigation, or portions of the expert report?
3    MR. HARBER:  Yes.
4    THE COURT:  All right.  And which one?
5    MR. HARBER:  I believe it's not on this issue,
6  but I mean in the -- the cases that we've cited, just to use
7  examples of what's in our letter, the Innogenetics case that
8  we've cited on the third issue in our brief is the Federal
9  Circuit affirming a Court, the District Court striking an
10  expert's report, portions of an expert report as
11  insufficient under Rule 26, I believe.
12    THE COURT:  When was it struck?
13    MR. HARBER:  I don't have the exact details.  I
14  can follow up, Your Honor, on this point.  It's my
15  understanding, it has been my practice that this is, this is
16  generally done when the expert report contains something
17  that's not properly disclosed.
18    You know, for example, I'm litigating cases
19  right now in California --
20    THE COURT:  I thought the whole purpose of the
21  expert report is when he or she does disclose, and then
22  normally the battle is whether there was a sufficient
23  disclosure in the report.
24    MR. HARBER:  That is -- there are two issues.
25  That's certainly one.

17

1    THE COURT:  Yes.
2    MR. HARBER:  One issue though is you proceed
3  through -- for example, Delaware has contention requirements
4  where the parties have to put their contentions on the
5  table, they have to answer interrogatories, they have to
6  disclose generally what their contentions are to the other
7  side so that there can be an orderly taking of fact
8  discovery, and so if it were the case that a party could
9  ignore all of those requirements and then get to the expert
10  report stage and then put in on issues where they had the
11  burden like this a bunch of contentions and allegations that
12  the other party wasn't on notice of during fact discovery,
13  that would upend that procedure of contentions.
14    THE COURT:  All right.  Hold on a second.
15    Well, is there any discovery?  I don't see the
16  word contention.  Maybe it's in here.  Is there any
17  discussion in your letter about inadequate contentions?
18    MR. HARBER:  Well, that is not the basis -- I
19  was using that as an example --
20    THE COURT:  That actually resonates with me, so
21  I get that.  That's why we have contentions and that limits
22  the scope of litigation, and that I have seen.
23    MR. HARBER:  Right.
24    THE COURT:  But you didn't argue that as far as
25  I can tell.  All you're arguing is there was an inadequate

18

1  pleading at the very beginning of the case and that somehow

2  now we can tee it up. That's what I'm getting at, can you

3  show me any case? Don't get defensive. I'm not being

4  critical of you.

5         MR. HARBER: Right.

6         THE COURT: I'm trying to figure out the right

7  thing.

8         MR. HARBER: Yes.

9         THE COURT: Okay. So can you show me a case

10  that says, hey, in the middle of litigation, a Court struck

11  portions of an expert report because of an inadequate

12  pleading?

13         MR. HARBER: I'm not aware of those off the

14  top of my head. If Your Honor would like, we can collect

15  those.

16         THE COURT: I think it's too late. You get your

17  shot. That's part of the problem here.

18         MR. HARBER: Well, no, Your Honor. I think --

19         THE COURT: Look, it's too late if you don't

20  have a case.

21         So let me ask this then: How about in

22  discovery? Did you serve any discovery that would have

23  required in response a contention about inequitable conduct?

24         MR. HARBER: Yes.

25         THE COURT: All right. And what were those?

19

1         MR. HARBER: We served interrogatory responses

2  asking for their invalidity defenses, and there was a

3  separate requirement to give both initial and then final

4  invalidity contentions.

5         Now --

6         THE COURT: I inherited this case. Where are we

7  on contentions?

8         MR. HARBER: Those are done because we're now

9  four months into expert discovery.

10         THE COURT: Okay.

11         MR. HARBER: The first --

12         THE COURT: So was there a contention made about

13  inequitable conduct?

14         MR. HARBER: The first time that a contention

15  was made about inequitable conduct, I don't remember the

16  exact timing. I believe it was two or three weeks after the

17  close of fact discovery, which is when the parties served

18  their final contentions, so we got their final invalidity

19  contentions at that point. But by then, there was no

20  ability for us to take any discovery to respond to any of

21  the contentions they were making.

22         THE COURT: So we'll get to that in a second.

23         Did the contention responses or the contentions

24  made, did they reference the two people that are in the

25  expert report?

20

1         MR. HARBER: Yes, for the first time, weeks

2  after the close of fact discovery.

3         THE COURT: But it's before you got the expert

4  report?

5         MR. HARBER: Yes. I believe it was the week

6  before or two weeks before.

7         THE COURT: You didn't hear about it in the

8  expert report. You actually heard about it first in their

9  contentions?

10         MR. HARBER: And I believe as soon as we got the

11  contentions, we wrote them and said this is improper. This

12  wasn't something that you pleaded. And then when we a week

13  later got the expert report, in our view, the operative

14  document for determining what was or wasn't proper was that

15  one because that was the latest document that set forth

16  their defenses.

17         THE COURT: Okay. Anything else?

18         MR. HARBER: No. I mean, I would simply say,

19  Your Honor, that the -- frankly, it's so, in our view, I

20  understand the timing concern and the timing question from

21  Your Honor, but in our view, it's so elemental in these

22  cases that a party can't -- I mean, to open the door to --

23  I mean, what this will do is create a situation in which

24  every single generic defendant in these cases will now

25  include the patents are invalid for inequitable conduct and

21

1  unclean hands, and then in every case the party will have to

2  then file a motion, because lest they be in a situation down

3  the road where when there's a specific defense on

4  inequitable conduct or unclean hands that the party wants to

5  make, they would be told, well, it's too late. You should

6  have moved to strike --

7         THE COURT: I disagree with you. Here's what I

8  think. I think what a party will do is, they will propound

9  discovery and make sure that before the end of fact

10  discovery they have in hand sufficient portion of the

11  contentions that they know they can develop the necessary

12  factual discovery they need to to respond to it.

13         Was the scheduling order in this case -- it was

14  created before I took over?

15         MR. HARBER: It was, Your Honor.

16         THE COURT: I was no part of that. My

17  scheduling order doesn't contemplate that, and as a

18  litigant, I wouldn't allow for it. So I don't think we will

19  receive -- if I decline your request for relief here, I do

20  not think the answer would be, I'm going to now be inundated

21  with motions to dismiss. I think the answer is going to be,

22  people are going to be careful when they engage in

23  contention discovery to make sure they know what the

24  contentions are, and as a judge, I would make sure they get

25  it.

22

1       MR. HARBER:  But, Your Honor, we did serve -- I

2  mean, to be clear, we did serve an interrogatory during fact

3  discovery, at the very beginning of fact discovery, that

4  sought their invalidity defenses.  They didn't -- this one

5  wasn't in it until after discovery had closed.

6       THE COURT:  So did you come to me?  I mean, that

7  I can understand.

8       MR. HARBER:  We're coming to you now.

9       THE COURT:  Well, no.  You're coming to me to

10  strike an expert report.  That's what you are coming to me

11  for.

12       MR. HARBER:  Right, but that would be the

13  request under -- for the contentions, that is our view the

14  proper relief for putting something in an expert report that

15  wasn't pleaded and that wasn't disclosed.

16       THE COURT:  It was disclosed.  You just told me

17  it was disclosed.

18       MR. HARBER:  Not during fact discovery.

19       THE COURT:  But it had to be disclosed under the

20  rules.  Right?

21       MR. HARBER:  No.  It was disclosed at the very

22  last opportunity they had to disclose it.

23       THE COURT:  But under the scheduling order, I

24  guess they were permitted to do that.  Right?

25       MR. HARBER:  I think the timing of that didn't

23

1  mean that they could hold a defense and put it in at that

2  time and deny us fact discovery on it if that was something

3  that should have been pleaded earlier.

4       THE COURT:  Well, I don't know that.  I mean, I

5  thought you just told me that they alleged it in their

6  contentions and you didn't allege the contention was

7  untimely.

8       MR. HARBER:  Because we think that the clearer

9  argument here is that they're attempting to allege a defense

10  that wasn't pleaded with particularity as the Federal Rules

11  require.  And it is hard for us to have moved and said, you

12  can't accuse Dr. Krill of inequitable conduct earlier

13  because that wasn't what's in their -- that wasn't what was

14  in their answer.

15       THE COURT:  Now, I'm looking for any -- you

16  know, I don't see any cases in your briefing that tell

17  me, that give me any comfort that any judge has ever done

18  this that is in the right context.  You made a pleading

19  argument.  That's all I see in your brief, and I'm just at a

20  loss.

21       MR. HARBER:  Okay.  I'm sorry, Your Honor.  You

22  know, again in this case we believe that the rules are clear

23  regardless of the context.  I mean, it's not something that

24  comes up, because frankly, it's such an improper thing to

25  do, it's hardly something that would be before courts all of

24

1  the time.

2       It's clear that there are, from the Federal

3  Circuit on down, incredibly stringent pleading requirements

4  for these defenses.  Apotex doesn't contest that in their

5  letter, it's so clear that that is the law.

6       So it's hard for me to imagine what the case

7  would be that deals with this, but I suppose our point

8  on this is in the brief.  We believe that it would be an

9  end run around the pleading requirements and not something

10  that we necessarily would have been on notice to raise

11  earlier.

12       Again, if Your Honor would like specific case

13  law, I understand your point about the briefing being too

14  late at this point.  Of course, we didn't realize that this

15  would be a concern that Your Honor had.  We're happy to

16  address it after the hearing if it is, because we think it

17  is a general -- as a matter of general practice, Courts

18  routinely strike things that weren't properly disclosed,

19  that weren't properly pled at this stage.

20       THE COURT:  So I get the improperly disclosed.

21       MR. HARBER:  Right.

22       THE COURT:  You've said it was in the contention

23  interrogatories, in the contention, and that you've said

24  they were served before the expert report.  Right?

25       MR. HARBER:  Weeks after the close of fact

25

1  discovery.

2       THE COURT:  So, but you've also told me that

3  they didn't break a rule by serving the contentions when

4  they did, that that was contemplated they would be served

5  after the close of fact discovery.

6       MR. HARBER:  Right, but that's different.

7  Saying that the contentions will be served then is different

8  from saying that because we've served an interrogatory, you

9  have an ongoing duty to supplement, you can't -- it is not

10  the case that they can wait until the last minute after fact

11  discovery has closed to tell us that they have specific

12  fraud allegations against two of our employees.  I mean,

13  that's what they've done.

14       THE COURT:  Why would you agree to a scheduling

15  order that have contentions that would come after the close

16  of fact discovery?

17       MR. HARBER:  I can't recall whether that was

18  something in Judge Sleet's at the time form order, whether

19  it was something -- what schedule required that.  I mean, in

20  this case, for example, I know that the defendants asked for

21  several extra weeks on that deadline and we extended their

22  deadline for several extra weeks for them because they

23  needed additional time to do those contentions.

24       You know, I don't -- I don't think that that,

25  whatever the case is, that doesn't relieve the prejudice of

26

1  us not knowing that during fact discovery.

2  THE COURT:  I'm not saying you're not

3  prejudiced.  The question would be whether you are unfairly

4  prejudiced.  But it sounds like you agreed to an order that

5  allowed for contentions to come after the close of fact

6  discovery.

7  MR. HARBER:  Right.  But, Your Honor the

8  implication of what you are saying was because that's the

9  date for final contentions, whatever they put in there is

10  proper, is that no party would ever have to put anything in

11  their initial contentions or answer interrogatories, because

12  as long as it's in their final contentions that's all good,

13  and therefore that's the way every one of these cases would

14  proceed, which is --

15  THE COURT:  Wait.  It would proceed only that

16  way if a party agreed to allow the deadline to come after

17  the fact discovery.

18  MR. HARBER:  But, Your Honor, it's a hard

19  question in these cases because what defendants would say

20  is, well, how come can we do final contentions before we

21  finish taking depositions?

22  How can we -- so it's -- it's a constant

23  balance, but I think it doesn't -- that date can't possibly

24  mean that everything that happens before that is irrelevant.

25  And that's our only point.

27

1  THE COURT:  All right.  Let's hear from the

2  other side.

3  MR. FELDMAN:  Good afternoon Your Honor.  Steven

4  Feldman on behalf of the Apotex defendants.

5  As Your Honor pointed out, and it was admitted,

6  we did plead it.  It was also in the contentions.

7  Regarding the timing, Your Honor, just to be

8  perfectly clear here, the critical deposition of the patent

9  lawyer didn't take place until January.  Okay.  And then

10  when the contentions were due was early February, and that's

11  when it was included.  But it was based on that testimony

12  elicited in discovery, but that discovery, they didn't

13  produce them until very late in the case, and that's when it

14  all happened.  It's not like we were sandbagging, something

15  like that.

16  When the facts became apparent in that

17  deposition, we included them.  We updated our interrogatory

18  to refer to the contentions and it was all within the

19  schedule that was agreed to by the parties.

20  So based on that, Your Honor, I think that we're

21  perfectly timely.  You know, if they ask to take every

22  allegation from the contentions and put it in the pleading,

23  amend the pleading, we can certainly do that if it would

24  make them feel better.  They were provided notice of it, and

25  notice before Dr. Yates' expert report was submitted.  So

28

1  therefore, I just don't see what the issue is here,

2  particularly in the context of a motion to strike portions

3  of an expert report.

4  THE COURT:  And Dr. Yates' opinions on this

5  issue, they are limited in their factual predicate to the

6  testimony of the witness that you just described who

7  testified in January.  Is that correct?

8  MR. FELDMAN:  There's also a witness who

9  testified I believe in December, but it's both of those,

10  both of those witnesses, the predicate for it.

11  And just to be clear, you know, every statement,

12  they included portions of his expert report.  I can hand up

13  the whole expert report.  Every portion is not just to

14  defraud.  It's just that they didn't tell the Patent Office

15  the whole story or the truth.  They were telling one thing

16  to the FDA concerning certain facts and they were telling

17  something else to the Patent Office, and that's the real

18  point.  And that goes directly to the presumption of

19  validity, invalidity, because the presumption of validity is

20  built upon the premise that the Patent Office was allowed to

21  do its job properly and given the information to do its job,

22  and when that wasn't the fact, and we can demonstrate it and

23  we have demonstrated it in Dr. Yates' reports, in our

24  contentions, then that presumption of validity is basically

25  decimated, and what happens is, is that the Courts allow,

29

1  the trier of fact is allowed to determine the facts based on

2  in the record that gets put in.

3  And that's what we intend to do at trial.

4  That's what this expert report is designed to do.  They're

5  clearly on notice of all of these things and obviously it

6  bothers them, but the reality is they're on notice and they

7  have been on notice.

8  THE COURT:  And the two witnesses, who are the

9  two witnesses?  Tell me about them again.  One in December,

10  one in January.

11  MR. FELDMAN:  Yes.  So one submitted --

12  THE COURT:  You were turning around.

13  MR. FELDMAN:  I don't want to violate any

14  protective order, give names or whatever.  I can mention

15  names or I can describe them generally?

16  MR. HARBER:  Yes.

17  MR. FELDMAN:  That's fine.

18  Okay.  So one is Dr. Krill, who was their chief

19  science officer at the time, and he submitted a declaration

20  in conjunction with getting all, you know, a full family of

21  these patents.  That gets cited repeatedly by the Patent

22  Office each time they allow one of these patents.

23  They say, based on what Dr. Yates told us, okay.

24  Well, it might have been obvious before.  What he told us,

25  we agree with him, we're going to allow these patents.

30

1    THE COURT: Who is Dr. Yates?

2    MR. FELDMAN: Dr. Krill. I'm sorry. I

3 misspoke.

4    But at the same time Dr. Krill was also -- had

5 attended meetings with the FDA and had presented Eagle's

6 position to the FDA, okay, saying that, oh, all the things

7 that I told the Patent Office you should be concerned about,

8 FDA, you shouldn't be concerned about them, okay, based on

9 all of these references, some of which are references we're

10 going to rely on as well. You know, the short infusion

11 time, the other things. It isn't a big deal. Just go ahead

12 and approve our product.

13    Well, none of that was in front of the Patent

14 Office and Dr. Yates talks about and explains it.

15    THE COURT: Who is the other witness?

16    MR. FELDMAN: Okay. The other witness is

17 Mr. McKenzie, who as the patent lawyer. Okay. And, of

18 course, this is the patent lawyer that submitted the Krill

19 declaration. We talked to him about that. There are other

20 patents where there's data involved and this test data about

21 impurities. Okay.

22    And what happened is, they filed one set of

23 patents, we call it the '707 patent, okay, and what they do

24 is say, oh, but this formulation, it has this great

25 stability and low impurities and whatnot, but they also file

31

1 another application that's not in this case because they've

2 abandoned it, okay, which says you can't actually review

3 what's in the '707 patent unless you include this additional

4 ingredient. Okay. And then only if you get these

5 additional, you know, high levels of stability and low

6 impurities and things like that, and all that stuff would work without

7 this additional ingredient.

8    Okay. Mr. McCanty was actually prosecuting

9 these things at the same time. There's actually an office

10 action in both patents where he does not bring it to the

11 attention of the Patent Office, the fact that he's telling

12 two different stories there.

13    THE COURT: Thanks. Let's hear from the other

14 side just to give a reply.

15    Who did you say you hadn't deposed and you were

16 prejudiced because you weren't able to speak with somebody

17 who is a former employee?

18    MR. HARBER: Dr. Krill is a former employee of

19 Eagle. He's in California, not within control of the

20 parties.

21    THE COURT: Were you present at his deposition?

22    MR. HARBER: Yes, but there was no -- they

23 weren't accusing him of inequitable conduct at the

24 time.

32

1    THE COURT: Mr. Feldman just described the

2 factual basis. Did that come out at the deposition?

3    MR. HARBER: Obviously, Your Honor, we

4 vehemently disagree with what Mr. Feldman said about -- -

5    THE COURT: You say obviously. Who knows?

6    MR. HARBER: Well, I mean, we vehemently

7 disagree. All of the information was before the Patent

8 Office, and frankly, without getting into the details of

9 specifically rebutting every single factual point

10 Mr. Feldman just said, the only fact that Your Honor needs

11 to know about the validity of these arguments is that only

12 two of the four defendants in this case were even willing

13 to sign onto the expert report in which this was

14 articulated.

15    So this is, in our view, these are just -- it's

16 a complete sideshow. Ir is baseless. Part of the reason

17 why they may not have moved to amend this is because they

18 know that that would be, that --

19    THE COURT: Move to amend?

20    MR. HARBER: Move to amend their answer to

21 actually pleading with particularity, I apologize, is

22 because the law on this would so clearly show that their

23 allegations were futile.

24    Perhaps, Your Honor, what the proper thing to do

25 here is, it is our view the law, regardless of when a party

33

1 moves, there has to be -- the case law from the Federal

2 Circuit and Rule 9(b) says that for a party to be

3 articulating these, these defenses in a case, there has to

4 be a particularized pleading that asserts them. And so if

5 they want to move to amend at this point and we can respond

6 to that, maybe that is the answer that gets around the

7 motion to strike and then the issue can come before the

8 Court. But it is still our view that there are specific

9 pleading requirements extremely well developed in the law

10 about when a party can assert these defenses, and they have

11 not complied with them in this case.

12    And whether, what Your Honor wants to do is a

13 motion -- if Your Honor doesn't want to do a motion to

14 strike or wants to hear more, or however Your Honor would

15 prefer it, we believe it's improper to allow these to

16 proceed in the case without that particularized pleading.

17    THE COURT: All right. I'm going to deny the

18 application on this. I mean, it's without prejudice. If

19 the plaintiffs think there was some other basis on which to

20 address insufficient pleading or in a motion in limine,

21 there's apparently an inadequate basis based on the original

22 pleading. That does not seem to me to be a discovery

23 dispute. And so anyway the burden is on the plaintiffs, and

24 I'm going to deny the application.

25    Let's go to the next one.

1      MR. HARBER:  All right.  Thank you, Your Honor.

2      The second issue relates to the last time we --

3      THE COURT:  For the record, I don't think you're

4  prejudiced.  I mean, you have not demonstrated prejudice to

5  me.  The articulated prejudice was the inability to speak

6  with Dr. Krill, who is a former employee, and you were

7  present at the deposition.

8      So, again, just if it were to be treated as a

9  discovery dispute, I don't think there was prejudice, but

10 either way I'm going to deny the application, and I think

11 I've articulated it.  If there is an appropriate time to

12 revisit the issue, I'm sure you'll be able to come up with

13 one.

14     All right.  Next.

15     MR. HARBER:  Thank you, Your Honor.

16     The second issue is relating to the last time we

17 were before the Court on March 12th.  The Court ordered

18 certain narrowing to take place by both sides.

19     THE COURT:  Right.  So actually, I'm with you on

20 this.  Let's hear from the other side.

21     MR. NELSON:  Your Honor, Kevin Nelson for

22 Fresenius on behalf of the other defendants.

23     Your Honor, we think the issue here is much like

24 the issue with the inequitable conduct issue.  We think it's

25 the wrong time and wrong type of motion.

1      THE COURT:  I couldn't disagree with you more.

2  I thought it was pretty clear when we left here that you

3  were going to identify 40 prior art references.  I actually

4  sided with you against Mr. Berl and said I'm not going to

5  require identification of combinations at that point for the

6  narrowing, but I am going to require you, and I went back

7  and looked at the transcript.  I don't think it could have

8  been clearer.  You were to identify 40 prior art references

9  and you didn't.

10     MR. NELSON:  Your Honor, we actually did.

11     THE COURT:  Okay.  You did.  Then you in

12 56 pages of an expert report talked about various, it seems,

13 references that were not within the 40.  Now, I might be

14 wrong because I was somewhat frustrated with plaintiff.  I

15 was supposed to read 56 pages and figure out what all of

16 these references were and decide.  I don't know how you

17 expected me to decide whether they were among the 40.

18     So I'm accepting their word on that, but if you

19 tell me --

20     MR. NELSON:  Your Honor, that is incorrect,

21 because our expert reports were already in at the time that

22 they filed that motion.  So the 56 pages or whatever they

23 were citing, those references were already in.  The

24 narrowing came after the expert reports were already in.

25 But to be very clear, Your Honor, those background

1  references that they're fighting about right now that are

2  hypothetically going to be injected into these expert

3  reports now, they're not.  They're still in the background.

4  Those same 40 references are only being used for

5  invalidating purposes.

6      Now, yes, our experts do talk about background

7  references, but not in the context.  In the case law that

8  they cite, the case law that they cite clearly talks about

9  background references and invalidating references, and the

10 Court's say background references are fine as long as they

11 are not being used to show motivation or to invalidate a

12 specific limitation.  Our experts have never done that, Your

13 Honor.  The background references are clearly just

14 background.

15     And, Your Honor, to give this hypothetical a

16 little bit more meat, because I think that's the problem

17 here, Your Honor.  They are asking you to make a judgment

18 based on a problem that's not happening right now.  There is

19 no problem.

20     Their concern is we're going to take these

21 background references and move them into our invalidity case

22 and say, ah, this background reference meets this

23 limitation.  Our experts have not done that.  They are not

24 going to do that.

25     THE COURT:  So then why did you have any problem

1  with their order?

2      MR. NELSON:  First of all, their order is asking

3  for hypotheticals.

4      THE COURT:  No, no.  Let's go through the order.

5      MR. NELSON:  Okay.  Yes.

6      THE COURT:  And, again, it was very hard.  I

7  didn't go and check, but I'm just going to assume given who

8  counsel is, and reputable counsel, that they basically took

9  the expert report and they put through the accommodations.

10 Am I correct, Mr. Berl?

11     MR. BERL:  Yes, yes.  Your Honor.  I think we

12 may be conflating the second issue in our letter brief with

13 the third issue, but to answer that question, yes.

14     THE COURT:  Is the we meant the judge?  Sorry.

15     MR. NELSON:  So we're talking, Your Honor, about

16 their first request for relief, the background references

17 that they are saying.

18     THE COURT:  Hold up, hold up.

19     MR. NELSON:  Yes.  I'm sorry.  If I was

20 misunderstanding which issue --

21     THE COURT:  No.

22     MR. NELSON:  The 40 references are the ones that

23 we identified that are in our expert report that are only

24 used to show invalidity of the specific limitations.  That's

25 what our experts did.  They went not claim by claim, but

38

1    they went down to granular level limitation by limitation
2    and showed how those 40 references meet the limitation.
3            Again, they're across three different patents,
4    so, Judge there are a lot of different limitations. That's
5    why there's a lot of differences.
6            Again, they do refer to background references,
7    but the case law is very clear. Even the case that they
8    cite, it's permissible for background references.
9            And, Judge, background references are
10   something -- for instance, I'm sorry, Your Honor, if you are
11   reading something.
12           THE COURT: Yes. Just hold on one second. Hold
13   on.
14           MR. NELSON: Yes.
15           THE COURT: I was looking at your proposed
16   order, not their proposed order.
17           MR. NELSON: That could be a problem, yes. Feel
18   free to accept our proposed order.
19           THE COURT: Okay. So here is their proposed
20   order. Defendants may not rely on any reference not
21   identified in your letter, 40, including, but not limited
22   to, for the purpose of establishing that, one, the prior art
23   disclosed one or more claim limitations. You agree with
24   that.
25           MR. NELSON: Yes.

39

1            THE COURT: Two, a person of ordinary skill in
2    the art would have been motivated. You agree with that?
3            MR. NELSON: Yes.
4            THE COURT: Three, a POSA would have had a
5    reasonable expectation of success? You agree with that?
6            MR. NELSON: Exactly, Your Honor. Our
7    references have not done that.
8            THE COURT: Then I'm going to sign their order.
9            MR. NELSON: No. But, Your Honor, what I want
10   to be very clear about though, one issue, is we do have a
11   reply report coming out, so there may be some responses to
12   their expert.
13           THE COURT: That's a different story.
14           MR. NELSON: That's a different story. I agree.
15   I want to be very clear, we're still permitted to use
16   background references for the purpose for what they are
17   being used for and for the purpose of what the law allows
18   them to be used for. There should be no question of that.
19   As long as that's the issue, I don't think there's any issue
20   there.
21           THE COURT: So here is the problem. Right.
22   It's what does background mean. Right?
23           MR. NELSON: Yes.
24           THE COURT: I'm going to sign their order and,
25   you know, I just can't believe you're going to put in front

40

1    of a jury --
2            MR. NELSON: It's a bench trial. We're
3    definitely not going to do it.
4            THE COURT: Then you don't have to worry about
5    it. But I can't imagine this is going to be an issue.
6            MR. NELSON: The only time it becomes an issue,
7    and that's why we wanted the clarity, Your Honor. If they
8    call us out, if they take issue with something our expert
9    said, there's no way anybody would possibly know that.
10           Let's take, for instance, one of the limitations
11   is it's an antioxidant. Right. And so we have references
12   that say antioxidants are used in injectable formulations
13   all the time, and they'll criticize that. And we have
14   references that say antioxidants are used with bendamustine.
15   It's motivation to use the product. So that is prior art to
16   show motivation.
17           Now, if their expert comes back and criticizes
18   and says, well, nobody would use an antioxidant because of
19   certain properties or whatever, if we just want to show the
20   properties of an antioxidant, not that it meets a
21   limitation, because the properties of the antioxidant are
22   not a limitation. We don't want them to come back and say,
23   oh, you know, you can't educate the judge about the
24   properties.
25           THE COURT: But they are not going to do that.

41

1            MR. NELSON: I would hope not.
2            THE COURT: This is where it gets to absurdity.
3    Suppose there's a reference to a molecule and I ask a
4    question, what is a molecule? And do you think they are
5    going to object if you pull out a chemistry textbook to tell
6    me what a molecule is? They're not going to do that.
7            MR. NELSON: That's exactly, Your Honor, why we
8    viewed that as a hypothetical situation, because if that
9    issue came up, if our experts did pull a background
10   reference in and say, hey, this invalidates a limitation,
11   that's why they filed their motion to strike. That is why
12   they filed their motion in limine. That's why we view this
13   as an improper procedural motion.
14           THE COURT: I think that the reservation
15   language that you had would, it strikes me, motivate
16   somebody like the plaintiff to come to the Court and say, we
17   want to make sure we're not going to be sandbagged.
18           MR. NELSON: Well, let me make that clear. They
19   had the same exact reservation in their limitation when they
20   moved it down to 25 claims. They said we reserve the right
21   to bring new claims. So I think that issue is not in front
22   of the Court.
23           THE COURT: Wait.
24           MR. NELSON: Yes. That reservation was
25   primarily again because reply reports are still outstanding,

42

1    and we want to be able -- if we have to bring background
2    records in to show invalidity in response to one of their
3    criticisms, we need that flexibility.  We didn't want to run
4    to the Court and bother Your Honor.
5         THE COURT:  You did bother me, so I'm signing
6    the order.
7         MR. NELSON:  We didn't.
8         THE COURT:  Well, whoever did.
9         MR. NELSON:  Would you like me to address the
10   accommodations issue, Your Honor?
11        THE COURT:  That's the third issue.  Right?
12        MR. NELSON:  Yes.
13        THE COURT:  They've got to go first.
14        All right.  What's the DI number for the
15   defendants' letter so I can fill in this correctly?
16        MR. HARBER:  260, Your Honor.
17        THE COURT:  Hold on just one second.  Okay.  All
18   right.  So hold up.
19        All right.  So as far as the second paragraph,
20   I'm going to obviously order that, what I've just described.
21   Right?
22        As far as the striking the first paragraph, I'm
23   going to take that out of the proposed order.
24        And then I believe now we turn to the remainder
25   of the order, which is the combination issue.  Is that

43

1    correct?
2         MR. HARBER:  Correct, Your Honor.  And I just
3    want to be clear on one point before we leave the last
4    issue.  We've spoken here in terms of reply reports.  Those
5    are limited to responding to plaintiff's case of secondary
6    indicia, so it's not on prima facie obviousness.  So I think
7    to the extent that's what, through the statements that
8    defendants made, if they're intending to open that up --
9         THE COURT:  But what happens if you say there's
10   some article they cite, and they gave us one of their 40,
11   and your expert says they're misreading that article because
12   of blah, blah, blah, blah.  I mean, I think it's fair game
13   for them to say, wait, that's not true, because if you look
14   at this prior article, which isn't on their list, it rebuts
15   that.  That seems to me appropriate.
16        MR. HARBER:  There are two points, Your Honor.
17   One is that's not what the reply reports are here.  They
18   don't have a reply report that's just replying to the our
19   expert defense in the obviousness case.  There's only two
20   rounds.
21        The reply reports are limited to a very specific
22   purpose, and that is replying to the secondary
23   considerations of nonobviousness.
24        THE COURT:  Wait, wait.  This is Judge Sleet.
25   There are no reply reports.

44

1         MR. NELSON:  There are reply reports, Your
2    Honor, but your point illustrates --
3         THE COURT:  Wait, wait.  How can one say there
4    is and one says there isn't?
5         MR. NELSON:  No.  He's saying reply reports.
6    He's talking about the scope of the reply reports.  Your
7    Honor's point illustrates why this is a hypothetical issue
8    and not something again that the Court should be ruling on
9    right now because it's not an issue.
10        Our experts clearly delineated how they are
11   using these prior art references.  They clearly delineated
12   how they are using background references.  The case law is
13   clear about background references can be used and there's no
14   limitation on that.
15        Your Honor, we would be foolhardy to try to
16   bring issues to the Court's attention the Court is not
17   interested in.
18        THE COURT:  Every lawyer says that.
19        MR. NELSON:  But that's why this is all
20   hypothetical, Your Honor.
21        MR. HARBER:  I mean, I disagree with a lot of
22   what was just said.
23        THE COURT:  Right.  Help me with the reply
24   reports issue.
25        MR. HARBER:  I think this is all resolved by

45

1    just granting what's in the proposed order.  But there are
2    three, in general, three rounds of reports.  In the first
3    round, the parties put in reports on issues on which they
4    bear the burden of proof.
5         THE COURT:  Sure.
6         MR. HARBER:  So the plaintiffs put in
7    infringement reports.
8         THE COURT:  Right.
9         MR. HARBER:  And the defendants put in validity
10   reports.
11        THE COURT:  I believe they're not smart enough
12   to know that people do that.  This just came out this
13   afternoon talking with Judge Noreika.  My understanding is
14   Judge Sleet didn't have reply reports in certain cases.
15        MR. HARBER:  Right.
16        THE COURT:  Is this one of those cases?
17        MR. HARBER:  There are no general reply reports.
18   It's called a reply round, but they are just responsive
19   reports on the secondary considerations that we put in
20   our --
21        THE COURT:  Right.  But that's it?
22        MR. HARBER:  That's it.
23        THE COURT:  Unlike a lot of other courts.
24   Usually my default is you get a real reply.  He doesn't
25   allow for it in this case.

46

1   MR. HARBER:  That's right.  It's not part of the
2   scheduling order.
3   THE COURT:  Okay.  So what did Judge Sleet do,
4   if you know, Judge Sleet, when it came to trial time when
5   one expert would want to reply to something that was raised
6   in an answering brief?  How did he deal with that?  Did you
7   ever have a trial in front of him?
8   MR. HARBER:  I did not.
9   MR. BERL:  I've had several, Your Honor.
10   THE COURT:  Okay.  So what happened in that
11   circumstance?
12   MR. BERL:  If it's not in the report, then it
13   wasn't in evidence.
14   THE COURT:  So how could you have any rebuttal
15   essentially?
16   MR. BERL:  He had almost no rebuttal, first of
17   all.
18   Second of all, his answer to it, if I can speak
19   for him is, I only have one round of reports.  If it's
20   something that the challenger wants to put in his or her
21   prima facie case and rely on for prima facie obviousness,
22   they get one chance.  That's their prima facie case.  You
23   can't go back and sort of rebuild a prima facie case with
24   new references that you didn't rely on.  If you think that
25   the patent is obvious as a result of the following three

47

1   references, that's what you put in, and if it's not and the
2   third round of reports is very limited, as Mr. Harber
3   indicated, and if it's not in the report, it's not in the
4   report.
5   I'm happy to hand Your Honor transcripts that
6   say just that.  I sat in this chair and an entire
7   examination of an expert was stricken on that exact
8   basis.
9   MR. NELSON:  Again, Your Honor, that's not the
10   situation we're looking at here.  These references have all
11   been provided well in advance of paying debt off.
12   And, again, it is very clear, the background,
13   that is the background of the invalidating reference.  We're
14   not talking about that.  That's a completely different
15   situation.
16   MR. HARBER:  And --
17   MR. NELSON:  If there are new opinions that
18   we're bringing up, they'll move to strike it.
19   THE COURT:  All right.
20   MR. HARBER:  I would say one more thing.  I feel
21   like we're conflating a lot of issues here.
22   The reason we are before the Court on this is
23   because Your Honor had a case narrowing order that applied
24   to both parties.  They said, you have all of these, we have
25   all of these claims, the plaintiffs.  You have all of these

48

1   references, defendant.  You each have to mutually narrow to
2   a certain amount.  We did that.  We can't, after seeing
3   their responses to our infringement positions say, okay,
4   we're now going to assert these ten other claims because of
5   what you said, and they had to narrow their case.
6   Now, when you ticked through the three items in
7   the proposed order, you're not going to use it to disclose a
8   limitation, the motivation and expectation, that is the
9   language that was in the letter that we sent them and said,
10   can you confirm that what your reservations doesn't mean it
11   that you are going to use it for one of these -- so that's
12   why we're here.
13   THE COURT:  Right.
14   MR. BERL:  I'm frankly confused.
15   THE COURT:  I'm not faulting you for why you are
16   here.  You said the reservation language.  I get it.  I'm
17   good.
18   MR. HARBER:  Right.  I'm not sure that we need
19   to reopen this.
20   THE COURT:  No.  And frankly, though, it's
21   helpful to me on the reply issue.
22   So I have reply briefs and I think there's a
23   purpose for them, so there's just a philosophical
24   disagreement on that, and which just seems to me something
25   new could be raised in a response that would justify a

49

1   reply, and that's why I was sympathetic to the defendant,
2   saying if you all, the plaintiffs, in a response of an
3   expert somehow raise prior art that was not on their list of
4   40, that it might be fair to have them come back and say,
5   well, wait a second.  Let me explain.  And I get that.
6   Now, it's funny.  I think under Judge Sleet's
7   rules, it's too late.  That's a problem with inheriting
8   cases.
9   MR. BERL:  And I sympathize with Your Honor, but
10   if I may say, we were very careful in what we did and what
11   we did not include in our reports and what arguments we
12   advanced and what arguments we did not advance in reliance
13   on Judge Sleet's order that their third round was very
14   limited.
15   THE COURT:  Yes, and I get that.  I'm going to
16   play by that rule.  But that is my initial thing about the
17   contentions.  You know, as you know from my scheduling
18   order, contentions are early and you've got to have good
19   cause to change them.
20   So, all right.  So we've resolved paragraph 1
21   and paragraph 2.  Let's move to paragraph -- the remainder
22   of the order, the third issue.
23   MR. HARBER:  All right.  Your Honor, and I think
24   Your Honor had some of this issue in mind when we turned to
25   the second issue.

50

1    THE COURT: Right.

2    MR. HARBER: And I'm happy to address, there are

3 some procedural points that the other side raised. I'm

4 happy to address these.

5    THE COURT: So let me just ask this just so I

6 understand, right, because, again, these correspond, these

7 being the paragraphs with the different combinations listed

8 in the proposed order, they correspond to what their expert

9 disclosed. Correct?

10    MR. HARBER: Correct.

11    THE COURT: Okay.

12    MR. HARBER: And so here is what the issue is

13 and why it's different from the issue we were just

14 discussing.

15    One is an administrative kind of case narrowing.

16 You know, what is the scope of, how many claims can we rely

17 on, how many prior art references can they use? And at the

18 last hearing there was some debate about when Your Honor was

19 narrowing, ordering the narrowing of their case.

20    THE COURT: Let me save you some breath here.

21    MR. HARBER: All right.

22    THE COURT: I'm sympathetic to your argument.

23 They don't get to come up with new combinations.

24    MR. HARBER: Yes. And that's --

25    THE COURT: That I agree with.

51

1    MR. HARBER: And so the point, and we're raising

2 it now, frankly, because we're -- you know, we're heading

3 into the point in time where we're going to depose their

4 expert.

5    THE COURT: Right.

6    MR. HARBER: We don't want to be accused -- if

7 they come and put something in their pretrial order or try

8 to run something at trial that they we don't believe they've

9 adequately disclosed, we don't want to be accused of lying

10 in the weeds and have waited and prejudiced them by not

11 raising it until August, that we think there was something

12 inadequate. We put it on the table right away, that their

13 reports, if they intend to rely on a combination of

14 references other than the combinations that are listed in

15 our proposed order, we don't believe those are adequately

16 disclosed.

17    THE COURT: Right. Okay. All right. I'm with

18 you. Let's hear from the other side. I don't know why

19 you're fighting this.

20    MR. NELSON: Again, Your Honor, we think, again,

21 and I understand the Court disagrees with this, but we view

22 this as a motion in limine or motion to strike. All the

23 cases that they cite in support of these positions, both

24 positions, all are in the contexts of motions in limine

25 or motions to strike. We think they have not made the

52

1 proper showing in any event that there's any sort of

2 problem with what we disclosed. All they are saying again

3 is a hypothetical that we may bring in some argument that

4 wasn't previously in their expert report. I think that's

5 improper.

6    THE COURT: Okay. Here's the thing. Let me ask

7 you this: Do you disagree with the substance? This is what

8 your expert has agreed to so far.

9    MR. NELSON: I disagree with the way they

10 characterize how our experts have addressed these prior art

11 references and that's why I don't think we can agree to this

12 order.

13    So that is a problem that --

14    THE COURT: All right. Give me an example.

15    MR. NELSON: Well, so, first of all, if you

16 compare this proposed order to the previous one, Your Honor,

17 from March, it's almost identical except for all of a sudden

18 there's a whole bunch more references in there. Those

19 references were already in the expert report that they had

20 in the March hearing. So I don't know why all of a sudden

21 they wanted to limit combinations then, but now they're

22 allowing for all these other combinations. So that's why I

23 find it a little bit interesting.

24    Again, I don't know how the Courts police this,

25 because our experts again went through with a fine tooth

53

1 comb limitation by limitation and showed how these various

2 references relate to showing motivation to combine and a

3 reasonable expectation of success for meeting those

4 limitations, and to just sort of lay it out here like this

5 does not capture that. It makes it too much of an issue

6 that they can come in and say, that's not the combination

7 that they raise, Your Honor, and then we've got to dig

8 through the expert reports and show it.

9    I don't think that's fair, Your Honor. The

10 combinations are -- and, first of all, I should take a step

11 back, Your Honor. KSR is very clear, that the Supreme Court

12 case on obviousness is very clear. There's no requirement

13 that there be actual combinations. It clearly said, don't

14 follow a rigid format, or that is a clear error, and you

15 should look at the prior art as a whole.

16    So, again, to try to pigeonhole this into

17 specific combinations is a clear error according to the

18 Supreme Court precedent, but putting that aside, our expert

19 showed how each of these references relate to each

20 limitation. And so this is not indicative or -- it does

21 not characterize accurately how your experts attacked

22 these.

23    Again, the better mechanism, Judge, is our

24 expert does something that's not in their report, they

25 should come and call us out. That's the proper vehicle.

54

1  That's the proper thing. That's how every other case that
2  all of us in this room have litigated, that's how it
3  proceeds. Our experts go outside the scope of their report.
4  You call the other side out. They have not even taken the
5  deposition of these individuals yet.
6        THE COURT: All right. I'm going to deny this
7  application on the third paragraph, but without prejudice,
8  because I'm going to hold the defendants to what's in their
9  expert report.
10       MR. NELSON: Yes. Thank you.
11       THE COURT: All right. Switch. I mean, I've
12 got to say, what really bothers me, and the reason why, you
13 know, I'm much more accepting of plaintiffs even teeing this
14 up, because part of me thinks this has been a waste of time
15 and it is an issue that can be addressed down the road, but,
16 you know, the defendants' response to what I thought was a
17 reasonable letter from the plaintiffs is why I understand
18 why they are here.
19       MR. NELSON: Your Honor, that was not our
20 intention. Our intention was just to be very clear, and we
21 said repeatedly in our letters, we are not going outside of
22 what our expert said. We said --
23       THE COURT: I thought they gave you the
24 opportunity with that letter. They spelled out specifically
25 what's in the second paragraph and you couldn't agree to

55

1  that.
2        MR. NELSON: That was not our intention. We
3  thought we were clear. We think there's other motivations
4  to these, but that's not the argument to make here.
5        THE COURT: All right. Let's go. Next.
6        MR. NELSON: So, Your Honor, our first issue for
7  the Court, we have three issues. I think other counsel will
8  be taking some of the other issues.
9        But the first issue would be our request for
10 expert materials from the bendamustine lyophilized case. Is
11 that okay if we started with that one, Your Honor?
12       THE COURT: Yes. Why are you bringing this now
13 since discovery is over?
14       MR. NELSON: Your Honor, this issue was raised
15 during discovery, and we have not been sitting on our hands
16 for 18 months as the plaintiffs have. We actually did raise
17 this issue in correspondences in November, and something did
18 happen in November. The parties had a meet and confer on
19 this issue. In November, plaintiffs submitted supplemental
20 interrogatory responses. They don't cite to the ones from
21 November or from July, the second set of supplemental
22 interrogatory responses.
23       In their interrogatory responses, Judge, they
24 say, our secondary considerations issues reincorporate
25 expert reports that that will be written and will be

56

1  submitted, and that's going to be our position.
2        So while they gave us some information, they
3  still left it open, and that's why -- what, frankly, were we
4  going to do at that point in time? We had to wait for the
5  expert reports to see what their final position was going to
6  be, to see what the final position on secondary
7  considerations was going to be. They left the door open
8  there, Your Honor. We weren't going to ask their fact
9  witnesses about expert reports in a prior case. The timing
10 we are going to use those is right now.
11       Yes, the timing is unfortunate, but they left
12 the door open. Immediately when we got their expert
13 reports, actually, before we got their expert reports, we
14 re-raised this issue, because that was the time to do it.
15       And, Your Honor, there's no prejudice here to
16 them. They can just simply provide those expert reports.
17 They're highly relevant because their experts in the
18 bendamustine.
19       Case said things that are relevant. Those are
20 admissions. Those can be relevant. They can be used
21 against their experts. So we're entitled. But, again,
22 there's no prejudice here. They can simply provide that
23 information to us.
24       THE COURT: All right. I'm going to deny the
25 application. I don't think you've established sufficient

57

1  probative value that would be gained from having access to
2  these, and, more importantly, it's too late. Let's move on.
3        MR. NELSON: Okay.
4        THE COURT: We had a scheduling order and I held
5  the plaintiffs to the scheduling order.
6        Next topic.
7        MR. NELSON: The next one is the Eagle/Teva
8  licensing documents. Now, this, Your Honor, this was
9  something that happened after close of discovery. We became
10 aware of this issue, the licensing issue, or the amendment
11 of the licensing agreement at the end of April, April 29th.
12 Plaintiffs didn't inform us of this. They have a continuing
13 discovery obligation. We had to find out through the news
14 media that this happened.
15       So when we raised it to them, and I do want to
16 be very clear, Your Honor. Plaintiffs say that there was no
17 meet and confer here. We raised it immediately on
18 April 29th. The parties had exchanged correspondences on
19 May 2nd and there was a meet and confer on May 10th. We
20 said we want all the correspondence and information. They
21 only gave us the amended agreement and flat refused. Said
22 you can't have anything else. There's no more negotiation
23 at that point, Your Honor.
24       So the parties properly met and conferred and,
25 Your Honor, we're entitled to the -- the case law is very

58

1   clear.  We're entitled, two parties at arm's length
2   negotiating over issues regarding the product at issue in
3   this case.  So we're entitled to those communications.
4       If they feel like they need to log something,
5   again, I think that's inappropriate, but that wasn't even
6   put on the table.  They simply said, oh, it's too much work.
7   Too burdensome.  There's too much.  But they flat refused to
8   provide it.
9       So they should be providing information.  If
10  they want to log it, you know, I don't think that's proper
11  because, again, I think it's an arm's length transaction,
12  but we believe that we're entitled to those communications
13  regarding this amendment of the license agreement.
14      THE COURT:  All right.  Actually, I'm sorry.
15  Can I just ask one more question?
16      MR. NELSON:  Yes.  Sorry.
17      THE COURT:  If they hadn't cited it in their
18  expert report, would you be entitled to it?
19      MR. NELSON:  If they hadn't cited it?  Yes, we
20  would.  The communications are still relevant, Your Honor,
21  and that's, quite frankly, the other reason for this.  Not
22  only did we just find out about this stuff and brought it to
23  the Court, had a meet and confer and brought it to the
24  Court's attention as soon as we could.
25      The communications themselves, we don't know

59

1   what they say, but they may be relevant to showing various
2   issues on secondary consideration, those reports that are
3   due at the end of this month.
4       THE COURT:  How is that when the rate has gone
5   up?
6       MR. NELSON:  Your Honor, we don't know what else
7   it said.  We don't know why the rates went up.  It could be
8   a variety of reasons.  That's why we're entitled to
9   investigate.  We can't just take their word for it that
10  those communications don't give other reasons why the rate
11  went up.  It's unfair for us to just rely on their word.
12      THE COURT:  All right.  Thank you.
13      MR. MAHAFFY:  Your Honor, Shaun Mahaffy fee from
14  Williams & Connolly on behalf of Teva and Cephalon.
15      I think the main point is the one that you
16  brought up at the very end of your questioning, which is the
17  relevance of these negotiations at all.
18      So to be clear, plaintiffs are not relying on
19  this revised agreement as evidence of the nonobviousness of
20  the patents.  Our expert merely cites it in a footnote as a
21  matter of factual, you know, something that has happened,
22  but the evidence that the expert relies on as evidence of
23  secondary considerations of nonobviousness is the original
24  agreement and the original royalty rate.
25      And --

60

1       THE COURT:  Why did you add it?  Why is it added
2   to the expert report?
3       MR. MAHAFFY:  Frankly, as they said, they
4   requested this material.  It is a change to an existing
5   agreement, and so they've requested this material and, you
6   know, we produced this material in discovery.  And so it
7   seemed appropriate to have the expert, you know, acknowledge
8   its existence just to make, you know, make clear that it
9   didn't change anything about his opinion.
10      THE COURT:  But my recollection was you footnote
11  the amendment to the agreement with the higher rate.  Is
12  that right?
13      MR. MAHAFFY:  Yes.
14      THE COURT:  I mean, you had already produced --
15  when did you produce the original agreement?  That was
16  produced I assume before?
17      MR. MAHAFFY:  During fact discovery.
18      THE COURT:  Right, so they had that, and they
19  read it in the newspaper somewhere, they learn the agreement
20  has been revised, but they ask you for an updated version.
21  Right?
22      MR. MAHAFFY:  Exactly.
23      THE COURT:  And then you produce that.  Is that
24  right?
25      MR. MAHAFFY:  We produced that along with the

61

1   expert report, yes.
2       THE COURT:  At the same time?
3       MR. MAHAFFY:  Yes.
4       THE COURT:  Okay.  So, but the expert report
5   didn't come until after they had requested the revised
6   agreement?
7       MR. MAHAFFY:  This all happened very quickly.  I
8   believe that the revised agreement, it was submitted along
9   with the expert report.  They requested the revised
10  agreement I think two days before the expert report was
11  due.
12      THE COURT:  And the agreement is relevant to
13  what in the case?
14      MR. MAHAFFY:  I mean, frankly, Your Honor, I
15  don't think the agreement is relevant to anything.  As Your
16  Honor correctly pointed out, the royalty rates increased.
17  So, if anything, it would indicate, it would sort of be
18  evidence of the nonobviousness of the patents, but our
19  expert doesn't rely on it for that purpose.
20      THE COURT:  And is it relevant at all, I don't
21  know, to damages or anything like that?
22      MR. MAHAFFY:  Imagine that.  I don't think the
23  defendants have alleged that.  I mean, the only, you know,
24  there are various other provisions in --
25      THE COURT:  But are you guys going to use it for

62

1  anything else?

2  MR. MAHAFFY: No. We're not going to use it for

3  anything else. And what I was just going to say, to be

4  fair, there are other provisions, and if anything, I think

5  that makes things more complicated. For example, there's

6  provisions related to litigation funding. This agreement

7  was entered into by parties to this litigation during

8  ongoing litigation. It involves things about this

9  litigation.

10  Reviewing these documents would be quite

11  burdensome. This all happened very fast, so I can't stand

12  here and tell you the exact, you know, page and document

13  count, which I would normally like to, but it looks like

14  there's at least ten custodians that we would have to review

15  for this, several of them lawyers. It looks like there's

16  probably over 2,000 documents that we might have to look at,

17  and it would be a messy and complicated privilege review.

18  So this would be a burdensome review for us to

19  do. And as Your Honor said, there would be basically no

20  relevance because the only possible relevance would be to

21  help our case through the higher royalty rate, and we are

22  not relying on it for that purpose.

23  THE COURT: Would you strike from the expert

24  report the references to the agreements?

25  MR. MAHAFFY: Yes, that would be fine.

63

1  THE COURT: All right. Let's hear from the

2  other side.

3  This just seems to me, I do think it would be

4  burdensome. I think it raises all sorts of complex issues.

5  I think the probative value is so attenuated, just trying to

6  figure out why this battle is being fought.

7  MR. NELSON: Let me point out one thing, Your

8  Honor. If there's so much going on in this agreement and

9  all it is is just simply bumping up a royalty rate, there

10  wouldn't be so much going on.

11  THE COURT: But there could be stuff completely

12  unrelated to --

13  MR. NELSON: This agreement just has to do with

14  this product. What if the fact that they raised the royalty

15  rate is because it has been a significant financial

16  investment. We don't know. Maybe the royalty rate raising

17  has nothing to do with the license or the value of the of

18  the patent. Maybe it has something to do with the prices

19  they're paying in litigation. We should be able to show

20  that. We should be able to show that, hey, yes, they have a

21  license agreement. We're showing our main contention this

22  license agreement doesn't have to do with the value of the

23  patent. It has to do with regulatory issues. Nothing to do

24  with the patent.

25  This is additional information that they're

64

1  bumping up rates because they had to spend so much in this

2  litigation. That's probative evidence to show --

3  THE COURT: When was the agreement revised?

4  MR. NELSON: April 13th was when the press

5  release was.

6  THE COURT: And when was fact discovery closed?

7  MR. NELSON: Fact discovery closed

8  January --

9  MR. MAHAFFY: January.

10  MR. NELSON: Yes, it was quite sometime ago.

11  THE COURT: I'm going to deny the application.

12  I think it's attenuated, of minimal, if any, probative

13  value. I do think there's a significant burden that would

14  be required to produce it. I think it's unduly burdensome

15  to require it. It occurred after the close of fact

16  discovery. I'm denying the application.

17  Next.

18  MR. NELSON: Your Honor, is it still possible

19  that they strike it from their expert report? Again, we

20  think it shouldn't -- it shouldn't come in at all then.

21  THE COURT: I think --

22  MR. BERL: We've agreed to strike it as long as

23  we don't hear from them that our expert somehow erred by not

24  considering it.

25  THE COURT: I'm the factfinder. If they do

65

1  that --

2  MR. NELSON: We don't know what's behind it.

3  THE COURT: Okay.

4  MR. NELSON: Mr. Feldman is going to address our

5  last issue, which is more --

6  THE COURT: Okay.

7  MR. FELDMAN: Your Honor, Steven Feldman.

8  On the Pearl Sue issue, Your Honor, they've

9  submitted six privilege logs in this case. Pearl Sue

10  appears once on those privilege logs.

11  During the deposition, Mr. McCanty identified

12  her as the in-house counsel and I can't say more about what

13  we said in the transcript, but she was involved in it, in

14  the prosecution of these patents. And so therefore, as I

15  read the Federal Rules, 26(b)(5)(a), you know, if you are

16  going to withhold documents based on claimed privilege, you

17  need to log it or identify the basis for the privilege, and

18  they really have not done that here.

19  So what we're asking for is either the documents

20  or that they provide privilege logs so we know who was

21  communicating to whom and when.

22  THE COURT: Okay. Anything else?

23  MR. FELDMAN: No.

24  THE COURT: All right.

25  MR. BROWN: Thank you, Your Honor. Dan Brown

1   from Latham & Watkins representing Eagle.
2        And there are really three reasons -- excuse me
3   one second.
4        I apologize, Your Honor.  There are really three
5   reasons that we shouldn't be required to log Ms. Sue's
6   documents at this point and they're interrelated.
7        The first is, is the timeliness issue, that fact
8   discovery closed a long time ago.
9        The second is relevance, and the third is the
10  burden proportionality issue.
11       And so with respect to the time limits issue,
12  there was a process that we all went through in fact
13  discovery, the ordinary process, document requests,
14  objections, et cetera.  And the way the process proceeded in
15  this case was the parties agreed that the local default ESI
16  rules would apply.  That was entered in an order by Judge
17  Sleet.  We went, and that operates by custodian.
18            THE COURT:  Right.
19            MR. BROWN:  We were not sticklers.  We did
20  approximately twice as many custodians as the default rules
21  require.  We did about 20.
22       We picked people who were operating at the
23  relevant time period, which is these patents were filed
24  in --
25            THE COURT:  So the issue is identified because

1   another custodian had a privileged communication with her.
2   Is that right?
3            MR. BROWN:  Correct.
4            THE COURT:  Okay.  And that was produced to them
5   when?
6            MR. BROWN:  That was produced in early December
7   of 2018, that privilege log.
8            THE COURT:  Right.
9            MR. BROWN:  Which leads into the relevance
10  issue.  She joined the company in --
11            THE COURT:  2016.
12            MR. BROWN:  2016.  And the patents-in-suit all
13  issued, the latest one issued in March of 2017, and so
14  there's a window of time in which she was at the company and
15  patent prosecution was going on, but there is not a single
16  fact to my knowledge in all of these expert reports.
17       All you've heard about, the inequitable conduct.
18  Every single fact in there occurred before she joined the
19  company.  All the stuff about the Krill declaration, all the
20  stuff about the differences and all of those things that are
21  in the case occurred before she joined the company.
22       And so on top of that, the default rules require
23  you're supposed to identify custodians with discoverable
24  information, and her information would be entirely
25  privileged with respect to this issue.  That's in the TQ

1   Delta case that we cited.  It's pretty abundantly clear.
2            THE COURT:  How was she identified in the
3   December 10th, 2018 privilege log?
4            MR. BROWN:  She was identified as I believe a
5   recipient and she had the asterisk by her name that
6   attorneys have asterisks by their name if they were an
7   attorney on the log, so she was clearly identified as an
8   attorney.  And I think it would have been clear from the
9   context that she was an attorney for Eagle at that time.
10       And then during --
11            THE COURT:  Is she in-house?
12            MR. BROWN:  Excuse me?
13            THE COURT:  I'm just trying to understand.  I
14  guess they're going to say they didn't know she was an
15  in-house lawyer?  What are you going to say, you didn't know
16  she was an in-house lawyer from the description?
17            MR. FELDMAN:  Your Honor, the first time we knew
18  who Pearl Sue was was in the McCanty --
19            THE COURT:  Well, that's a after the privilege
20  log.  What does the privilege log say?
21            MR. FELDMAN:  I'm looking for it.  If I could
22  speak on this?
23            THE COURT:  Go ahead.
24            MR. BROWN:  And then, and so in defendants'
25  motion, they have not identified any connections or claim or

1   defense of a party to support relevance.  They have not
2   said, oh, this fact occurred while Pearl Sue was at the
3   company during prosecution that if true would help our case
4   in some way.  There's no connection to any fact.  And then
5   on the burden issue, and the proportionality, during the
6   time Ms. Sue was at the company, a lot of other things were
7   going on.  And she was one of two attorneys at the entire
8   company.  There was general counsel and her, and so she does
9   a lot of things, and this was their main commercial product.
10       And so there are all sorts of issues going on
11  that she was dealing with on this drug on a regular basis.
12  So the burden of just plowing through those to create a log
13  of which ones relate to prosecution of these particular
14  patents, for what purpose, to show them a list of documents
15  that say communication between Ms. Sue and Mr. McCanty
16  regarding patent prosecution, which is clearly privileged,
17  it seems to me that the disproportionality is just not, not
18  commensurate with any upside to this case for any party that
19  I can see.
20            THE COURT:  Okay.  Thank you.
21            Mr. Feldman, were you able to locate the
22  privilege logs?
23            MR. FELDMAN:  I was, Your Honor.  Would you like
24  me to hand it up?
25            THE COURT:  That would be great.  Thank you.

70

1          (Mr. Feldman handed a document to the Court.)

2          THE COURT:  Okay.

3          MR. FELDMAN:  Your Honor, as you can see from --

4    maybe you can see, I can't really see it that well, but, you

5    know, there's no identification of her as being an Eagle

6    employee.  There's no e-mail address.  There's nothing like

7    that.

8          In their letter they say there's thousands of

9    Pearl communications.  Why is there only one that gets

10   logged into this --

11         THE COURT:  Because she's not the custodian.

12         MR. FELDMAN:  So Mr. Brown said that she wasn't

13   involved in anything substantive in this case.  You know,

14   these patents are being prosecuted while she was there.  And

15   if I could read from the McCanty testimony -- we can seal

16   the transcript, Your Honor.  I don't think there's anybody

17   else in here that is not involved.

18         But he gets asked --

19         THE COURT:  You'll have to redact portions of

20   it.  You'll do that at a later time.

21         MR. FELDMAN:  Yes.  So there comes a time, as I

22   was telling you earlier about, when there's a second patent

23   application that's not involved in this case, but that does

24   say all the things they need to do to actually get this

25   thing to work and gets the low impurities.

71

1          Okay.  So that patent application is pending

2    while Ms. Sue is there.  Okay.

3          And what ends up happening, they end up

4    abandoning that patent application, and the person who gives

5    the order, according to Mr. McCanty, to abandon that patent

6    application was Ms. Sue.  Okay.  So she was directly

7    involved in the strategy and the continuing prosecution of

8    the patents.

9          THE COURT:  And that was what date?

10         MR. FELDMAN:  So that would have been January --

11         THE COURT:  What was the date of the deposition?

12         MR. FELDMAN:  January.

13         THE COURT:  January what?

14         MR. FELDMAN:  January 9th I believe.

15         THE COURT:  When did discovery close?

16         MR. FELDMAN:  Discovery closed January 8th.

17         THE COURT:  Did you make a motion to the Court

18   or anything, say I need to learn more about this person?

19         MR. FELDMAN:  We did not, Your Honor.  We did

20   raise it with them at that time.  We continued to raise

21   it.

22         THE COURT:  All right.  Well, discovery has

23   passed, so this is an untimely motion, and I think it would

24   be -- I don't think it's personal, and I do think it would

25   be incredibly burdensome at this stage to require Eagle to

72

1    produce this, so it's just too late in the day.  I'm going

2    to deny the application.

3          MR. FELDMAN:  Thank you, Your Honor.

4          THE COURT:  All right.  Anything else?

5          MR. HARBER:  Nothing from plaintiff, Your Honor.

6          THE COURT:  Okay.  Thank you, all.

7          Oh, time out.  So I don't want to issue, so it's

8    clear I believe from the transcript what my order is.  I did

9    grant one relief and denied all others.

10         Is it clear from the plaintiff's perspective?

11         MR. HARBER:  Yes, Your Honor.

12         THE COURT:  And is it clear from the defense

13   perspective?

14         MR. NELSON:  Yes, Your Honor.

15         THE COURT:  Great.  Thank you.

16         (Hearing concluded at 4:53 p.m.)

17              -  -  -

18

19

20

21

22

23

24

25

**'**

**'707** [3] - 30:23, 31:3, 31:7

**1**

**1** [1] - 49:20
**10th** [2] - 57:19, 68:3
**12** [4] - 12:3, 13:16, 13:21, 13:22
**12th** [1] - 34:17
**13th** [1] - 64:4
**16** [1] - 1:13
**17-1154-CFC** [1] - 1:10
**18** [1] - 55:16

**2**

**2** [1] - 49:21
**2,000** [1] - 62:16
**20** [1] - 66:21
**2016** [2] - 67:11, 67:12
**2017** [1] - 67:13
**2018** [2] - 67:7, 68:3
**2019** [3] - 1:13, 7:7, 7:12
**22** [1] - 7:7
**22nd** [1] - 7:11
**25** [1] - 41:20
**26** [1] - 16:11
**26(b)(5)(a** [1] - 65:15
**260** [1] - 42:16
**28th** [1] - 8:20
**29th** [2] - 57:11, 57:18
**2nd** [1] - 57:19

**3**

**3:34** [2] - 1:14, 5:4

**4**

**40** [10] - 35:3, 35:8, 35:13, 35:17, 36:4, 37:22, 38:2, 38:21, 43:10, 49:4
**4:53** [1] - 72:16

**5**

**50** [2] - 9:25, 12:13
**56** [3] - 35:12, 35:15, 35:22

**8**

**8th** [1] - 71:16

**9**

**9(b** [1] - 33:2
**9th** [1] - 71:14

**A**

**abandon** [1] - 71:5
**abandoned** [1] - 31:2
**abandoning** [1] - 71:4
**ability** [3] - 10:23, 14:16, 19:20
**able** [6] - 31:17, 34:12, 42:1, 63:19, 63:20, 69:21
**absent** [1] - 15:15
**absurdity** [1] - 41:2
**abundantly** [1] - 68:1
**accept** [1] - 38:18
**accepting** [2] - 35:18, 54:13
**access** [1] - 57:1
**accommodations** [2] - 37:9, 42:10
**according** [2] - 53:17, 71:5
**accurately** [1] - 53:21
**accuse** [2] - 15:10, 23:12
**accused** [2] - 51:6, 51:9
**accusing** [1] - 31:24
**acknowledge** [1] - 60:7
**ACTION** [1] - 1:4
**action** [1] - 31:11
**actual** [1] - 53:13
**ADAM** [1] - 2:3
**Adam** [2] - 5:12, 7:23
**add** [1] - 60:1
**added** [1] - 60:1
**additional** [6] - 8:21, 25:23, 31:3, 31:5, 31:8, 63:25
**address** [8] - 14:9, 24:16, 33:20, 42:9, 50:2, 50:4, 65:4, 70:6
**addressed** [2] - 52:10, 54:15
**adduce** [1] - 14:11
**adequate** [2] - 14:7, 15:9
**adequately** [3] - 11:7, 51:9, 51:15
**administrative** [1] - 50:15
**admissions** [1] - 56:20
**admitted** [1] - 27:5

**advance** [2] - 47:11, 49:12
**advanced** [1] - 49:12
**advised** [1] - 14:13
**affirming** [1] - 16:9
**afternoon** [12] - 5:6, 5:9, 5:14, 5:16, 5:17, 6:4, 6:10, 6:21, 6:22, 7:22, 27:3, 45:13
**ago** [2] - 64:10, 66:8
**agree** [9] - 25:14, 29:25, 38:23, 39:2, 39:5, 39:14, 50:25, 52:11, 54:25
**agreed** [6] - 26:4, 26:16, 27:19, 52:8, 64:22, 66:15
**agreement** [20] - 57:11, 57:21, 58:13, 59:19, 59:24, 60:5, 60:11, 60:15, 60:19, 61:6, 61:8, 61:10, 61:12, 61:15, 62:6, 63:8, 63:13, 63:21, 63:22, 64:3
**agreements** [1] - 62:24
**ahead** [2] - 30:11, 68:23
**al** [2] - 1:9, 3:9
**allegation** [7] - 8:13, 8:14, 9:20, 10:16, 10:17, 11:16, 27:22
**allegations** [8] - 9:22, 10:10, 11:9, 11:19, 15:1, 17:11, 25:12, 32:23
**allege** [5] - 8:18, 10:19, 12:15, 23:6, 23:9
**alleged** [4] - 10:19, 10:21, 23:5, 61:23
**alleges** [1] - 9:19
**alleging** [4] - 8:15, 10:15, 10:16, 14:20
**allow** [7] - 21:18, 26:16, 28:25, 29:22, 29:25, 33:15, 45:25
**allowed** [3] - 26:5, 28:20, 29:1
**allowing** [1] - 52:22
**allows** [2] - 13:21, 39:17
**almost** [2] - 46:16, 52:17
**amend** [5] - 27:23, 32:17, 32:19, 32:20, 33:5
**amended** [3] - 8:16, 10:9, 57:21

**amendment** [3] - 57:10, 58:13, 60:11
**amount** [1] - 48:2
**AND** [1] - 1:2
**answer** [17] - 8:13, 8:16, 8:19, 8:20, 9:8, 9:21, 10:1, 10:9, 17:5, 21:20, 21:21, 23:14, 26:11, 32:20, 33:6, 37:13, 46:18
**answering** [1] - 46:6
**antioxidant** [4] - 40:11, 40:18, 40:20, 40:21
**antioxidants** [2] - 40:12, 40:14
**anyway** [1] - 33:23
**apologize** [2] - 32:21, 66:4
**apotex** [1] - 3:14
**Apotex** [6] - 3:14, 3:22, 6:12, 9:22, 24:4, 27:4
**Apotex's** [1] - 8:20
**apparent** [1] - 27:16
**appear** [2] - 7:2, 8:16
**APPEARANCES** [4] - 1:18, 2:1, 3:1, 4:1
**application** [13] - 31:1, 33:18, 33:24, 34:10, 54:7, 56:25, 64:11, 64:16, 70:23, 71:1, 71:4, 71:6, 72:2
**applied** [1] - 47:23
**applies** [1] - 8:8
**apply** [2] - 7:12, 66:16
**appreciate** [2] - 7:16, 13:24
**appropriate** [3] - 34:11, 43:15, 60:7
**approval** [1] - 15:13
**approve** [1] - 30:12
**April** [7] - 7:5, 7:7, 7:11, 57:11, 57:18, 64:4
**argue** [2] - 9:16, 12:21, 17:24
**arguing** [1] - 17:25
**argument** [8] - 11:20, 14:24, 14:25, 23:9, 23:19, 50:22, 52:3, 55:4
**arguments** [5] - 9:11, 12:3, 32:11, 49:11, 49:12
**arm's** [2] - 58:1, 58:11
**art** [10] - 35:3, 35:8, 38:22, 39:2, 40:15, 44:11, 49:3, 50:17,

52:10, 53:15
**article** [3] - 43:10, 43:11, 43:14
**articulated** [2] - 32:14, 34:5, 34:11
**articulating** [1] - 33:3
**aside** [1] - 53:18
**assert** [2] - 33:10, 48:4
**asserts** [1] - 33:4
**assume** [2] - 37:7, 60:16
**asterisk** [1] - 68:5
**asterisks** [1] - 68:6
**attach** [1] - 7:15
**attacked** [1] - 53:21
**attacking** [1] - 14:4
**attempting** [1] - 23:9
**attended** [1] - 30:5
**attention** [3] - 31:12, 44:16, 58:24
**attenuated** [2] - 63:5, 64:12
**attorney** [3] - 68:7, 68:8, 68:9
**attorneys** [2] - 68:6, 69:7
**August** [1] - 51:11
**aware** [2] - 12:6, 18:13, 57:10

**B**

**background** [20] - 35:25, 36:3, 36:6, 36:9, 36:10, 36:13, 36:14, 36:21, 36:22, 37:16, 38:6, 38:8, 38:9, 39:16, 39:22, 41:9, 42:1, 44:12, 44:13, 47:12, 47:13
**balance** [1] - 26:23
**Barabas** [1] - 6:6
**BARABAS** [1] - 3:7
**based** [9] - 9:20, 27:11, 27:20, 29:1, 29:23, 30:8, 33:21, 36:18, 65:16
**baseless** [1] - 32:16
**basis** [7] - 17:18, 32:2, 33:19, 33:21, 47:8, 65:17, 69:11
**battle** [2] - 16:22, 63:6
**bear** [1] - 45:4
**bears** [1] - 15:17
**became** [2] - 27:16, 57:9
**becomes** [1] - 40:6
**BEFORE** [1] - 1:16
**beginning** [2] - 5:4, 18:1, 22:3

behalf [9] - 5:18, 5:25, 6:1, 6:5, 6:11, 7:23, 27:4, 34:22, 59:14
behind [1] - 65:2
belief [1] - 11:23
bench [1] - 40:2
bendamustine [3] - 40:14, 55:10, 56:18
Berl [3] - 5:12, 35:4, 37:10
BERL [8] - 2:3, 37:11, 46:9, 46:12, 46:16, 48:14, 49:9, 64:22
better [2] - 27:24, 53:23
between [1] - 69:15
beyond [1] - 13:9
big [1] - 30:11
bit [2] - 36:16, 52:23
blah [4] - 43:12
bother [2] - 42:4, 42:5
bothers [2] - 29:6, 54:12
break [1] - 25:3
breath [1] - 50:20
BRIAN [1] - 2:15
Brian [1] - 5:18
brief [5] - 16:8, 23:19, 24:8, 37:12, 46:6
briefing [3] - 7:10, 23:16, 24:13
briefs [1] - 48:22
bring [5] - 31:11, 41:21, 42:1, 44:16, 52:3
bringing [2] - 47:18, 55:12
brought [4] - 13:21, 58:22, 58:23, 59:16
brown [1] - 70:12
Brown [2] - 5:13, 65:25
BROWN [10] - 2:9, 65:25, 66:19, 67:3, 67:6, 67:9, 67:12, 68:4, 68:12, 68:24
built [1] - 28:20
bumping [2] - 63:9, 64:1
bunch [2] - 17:11, 52:18
burden [7] - 17:11, 33:23, 45:4, 64:13, 66:10, 69:5, 69:12
burdensome [6] - 58:7, 62:11, 62:18, 63:4, 64:14, 71:25
BY [12] - 1:20, 2:3, 2:9, 2:15, 2:18, 3:3, 3:7, 3:12, 3:16, 3:20, 4:3,

4:6

**C**

California [3] - 14:17, 16:19, 31:20
capture [1] - 53:5
careful [2] - 21:22, 49:10
carries [1] - 13:11
case [73] - 7:8, 7:13, 8:9, 8:14, 9:21, 10:2, 10:6, 10:16, 11:10, 11:16, 12:12, 13:4, 14:6, 14:8, 14:14, 15:14, 15:18, 15:25, 16:7, 17:8, 18:1, 18:3, 18:9, 18:20, 19:6, 21:1, 21:13, 23:22, 24:6, 24:12, 25:10, 25:20, 25:25, 27:13, 31:1, 32:12, 33:1, 33:3, 33:11, 33:16, 36:7, 36:8, 36:21, 38:7, 43:5, 43:19, 44:12, 45:25, 46:21, 46:22, 46:23, 47:23, 48:5, 50:15, 50:19, 53:12, 54:1, 55:10, 56:9, 56:19, 57:25, 58:3, 61:13, 62:21, 65:9, 66:15, 67:21, 68:1, 69:3, 69:18, 70:13, 70:23
cases [15] - 12:14, 15:7, 15:9, 16:6, 16:18, 20:22, 20:24, 23:16, 26:13, 26:19, 45:14, 45:16, 49:8, 51:23
caveat [1] - 7:13
Cephalon [2] - 2:7, 59:14
CEPHALON [1] - 1:5
certain [5] - 28:16, 34:18, 40:19, 45:14, 48:2
certainly [3] - 9:22, 16:25, 27:23
cetera [1] - 66:14
chair [1] - 47:6
challenge [1] - 10:23
challenger [1] - 46:20
chance [1] - 46:22
change [3] - 49:19, 60:4, 60:9
characterize [2] - 52:10, 53:21
check [1] - 37:7
chemistry [1] - 41:5

Chicago [2] - 2:19, 3:21
chief [1] - 29:18
Circuit [3] - 16:9, 24:3, 33:2
circumstance [1] - 46:11
cite [7] - 15:7, 36:8, 38:8, 43:10, 51:23, 55:20
cited [6] - 16:6, 16:8, 29:21, 58:17, 58:19, 68:1
cites [1] - 59:20
citing [1] - 35:23
CIVIL [1] - 1:4
Civil [2] - 11:12, 11:22
claim [4] - 37:25, 38:23, 68:25
claimed [1] - 65:16
claims [5] - 41:20, 41:21, 47:25, 48:4, 50:16
clarity [1] - 40:7
clear [30] - 22:2, 23:22, 24:2, 24:5, 27:8, 28:11, 35:2, 35:25, 38:7, 39:10, 39:15, 41:18, 43:3, 44:13, 47:12, 53:11, 53:12, 53:14, 53:17, 54:20, 55:3, 57:16, 58:1, 59:18, 60:8, 68:1, 68:8, 72:8, 72:10, 72:12
clearer [2] - 23:8, 35:8
clearly [10] - 12:14, 29:5, 32:22, 36:8, 36:13, 44:10, 44:11, 53:13, 68:7, 69:16
close [9] - 19:17, 20:2, 24:25, 25:5, 25:15, 26:5, 57:9, 64:15, 71:15
closed [7] - 10:3, 22:5, 25:11, 64:6, 64:7, 66:8, 71:16
Cohen [1] - 6:17
COHEN [2] - 3:21, 6:21
Cole [1] - 6:11
COLE [4] - 3:16, 6:10, 6:14, 6:17
collect [1] - 18:14
COLM [1] - 1:16
comb [1] - 53:1
combination [3] - 42:25, 51:13, 53:6
combinations [9] - 35:5, 50:7, 50:23,

51:14, 52:21, 52:22, 53:10, 53:13, 53:17
combine [1] - 53:2
comfort [1] - 23:17
coming [4] - 22:8, 22:9, 22:10, 39:11
commenced [1] - 5:3
commensurate [1] - 69:18
commercial [1] - 69:9
committed [2] - 14:15, 14:20
communicating [1] - 65:21
communication [2] - 67:1, 69:15
communications [6] - 58:3, 58:12, 58:20, 58:25, 59:10, 70:9
COMPANY [1] - 1:9
Company [1] - 3:9
company [7] - 67:10, 67:14, 67:19, 67:21, 69:3, 69:6, 69:8
compare [1] - 52:16
complete [1] - 32:16
completely [2] - 47:14, 63:11
complex [1] - 63:4
complicated [2] - 62:5, 62:17
complied [1] - 33:11
concern [2] - 20:20, 24:15, 36:20
concerned [2] - 30:7, 30:8
concerning [1] - 28:16
concluded [1] - 72:16
conduct [17] - 8:13, 8:18, 8:24, 10:10, 11:19, 12:1, 15:5, 15:15, 18:23, 19:13, 19:15, 20:25, 21:4, 23:12, 31:24, 34:24, 67:17
conduct/unclean [2] - 8:8, 15:2
confer [4] - 55:18, 57:17, 57:19, 58:23
conference [1] - 7:1
conferred [1] - 57:24
confirm [1] - 48:10
conflating [2] - 37:12, 47:21
confused [2] - 10:18, 48:14
conjunction [1] - 29:20
connection [1] - 69:4
connections [1] -

68:25
CONNOLLY [2] - 1:16, 2:2
Connolly [2] - 7:23, 59:14
consideration [1] - 59:2
considerations [5] - 43:23, 45:19, 55:24, 56:7, 59:23
considering [1] - 64:24
constant [1] - 26:22
contains [2] - 8:24, 16:16
contemplate [1] - 21:17
contemplated [1] - 25:4
contention [11] - 17:3, 17:16, 18:23, 19:12, 19:14, 19:23, 21:23, 23:6, 24:22, 24:23, 63:21
contentions [37] - 13:6, 13:8, 13:11, 17:4, 17:6, 17:11, 17:13, 17:17, 17:21, 19:4, 19:7, 19:18, 19:19, 19:21, 19:23, 20:9, 20:11, 21:11, 21:24, 22:13, 23:6, 25:3, 25:7, 25:15, 25:23, 26:5, 26:9, 26:11, 26:12, 26:20, 27:6, 27:10, 27:18, 27:22, 28:24, 49:17, 49:18
contest [1] - 24:4
context [6] - 10:24, 23:18, 23:23, 28:2, 36:7, 68:9
contexts [1] - 51:24
continued [1] - 71:20
Continued [3] - 2:1, 3:1, 4:1
continuing [2] - 57:12, 71:7
control [2] - 14:18, 31:20
Corp [1] - 3:14
correct [9] - 9:13, 15:6, 28:7, 37:10, 43:1, 43:2, 50:9, 50:10, 67:3
correctly [2] - 42:15, 61:16
correspond [2] - 50:6, 50:8
correspondence [1] -

57:20
**correspondences** [2] - 55:17, 57:18
**correspondingly** [1] - 14:7
**Counsel** [4] - 2:6, 2:12, 2:20, 3:22
**counsel** [8] - 3:8, 3:13, 4:8, 37:8, 55:7, 65:12, 69:8
**count** [1] - 62:13
**Counterclaim** [1] - 2:20
**course** [2] - 24:14, 30:18
**COURT** [199] - 1:1, 5:6, 5:14, 5:17, 5:21, 5:23, 6:3, 6:8, 6:13, 6:15, 6:20, 6:22, 8:3, 8:10, 8:18, 8:22, 9:1, 9:4, 9:10, 9:14, 10:11, 10:18, 10:21, 11:2, 11:12, 11:17, 11:20, 11:25, 12:5, 12:16, 12:20, 13:1, 13:15, 14:1, 14:23, 15:23, 15:25, 16:4, 16:12, 16:20, 17:1, 17:14, 17:20, 17:24, 18:6, 18:9, 18:16, 18:19, 18:25, 19:6, 19:10, 19:12, 19:22, 20:3, 20:7, 20:17, 21:7, 21:16, 22:6, 22:9, 22:16, 22:19, 22:23, 23:4, 23:15, 24:20, 24:22, 25:2, 25:14, 26:2, 26:15, 27:1, 28:4, 29:8, 29:12, 30:1, 30:15, 31:14, 31:22, 32:1, 32:5, 32:19, 33:17, 34:3, 34:19, 35:1, 35:11, 36:25, 37:4, 37:6, 37:14, 37:18, 37:21, 38:12, 38:15, 38:19, 39:1, 39:4, 39:8, 39:13, 39:21, 39:24, 40:4, 40:25, 41:2, 41:14, 41:23, 42:5, 42:8, 42:11, 42:13, 42:17, 43:9, 43:24, 44:3, 44:18, 44:23, 45:5, 45:8, 45:11, 45:16, 45:21, 45:23, 46:3, 46:10, 46:14, 47:19, 48:13, 48:15, 48:20, 49:15, 50:1, 50:5, 50:11, 50:20, 50:22, 50:25,

51:5, 51:17, 52:6, 52:14, 54:6, 54:11, 54:23, 55:5, 55:12, 56:24, 57:4, 58:14, 58:17, 59:4, 59:12, 60:1, 60:10, 60:14, 60:18, 60:23, 61:2, 61:4, 61:12, 61:20, 61:25, 62:23, 63:1, 63:11, 64:3, 64:6, 64:11, 64:21, 64:25, 65:3, 65:6, 65:22, 65:24, 66:18, 66:25, 67:4, 67:8, 67:11, 68:2, 68:11, 68:13, 68:19, 68:23, 69:20, 69:25, 70:2, 70:11, 70:19, 71:9, 71:11, 71:13, 71:15, 71:17, 71:22, 72:4, 72:6, 72:12, 72:15
**Court** [23] - 1:25, 12:11, 15:4, 16:1, 16:9, 18:10, 33:8, 34:17, 41:16, 41:22, 42:4, 44:8, 44:16, 47:22, 51:21, 53:11, 53:18, 55:7, 58:23, 70:1, 71:17
**Court's** [3] - 36:10, 44:16, 58:24
**courtroom** [1] - 5:3
**courts** [2] - 23:25, 45:23
**Courts** [3] - 24:17, 28:25, 52:24
**create** [4] - 10:5, 12:11, 20:23, 69:12
**created** [1] - 21:14
**critical** [2] - 18:4, 27:8
**criticisms** [1] - 42:3
**criticize** [1] - 40:13
**criticizes** [1] - 40:17
**cross** [1] - 14:11
**cross-examining** [1] - 14:11
**curious** [1] - 8:5
**custodian** [3] - 66:17, 67:1, 70:11
**custodians** [3] - 62:14, 66:20, 67:23

## D

**D.C** [1] - 2:4
**damages** [1] - 61:21
**Dan** [2] - 5:13, 65:25
**DANIEL** [1] - 2:9
**data** [2] - 30:20
**date** [4] - 26:9, 26:23,

71:9, 71:11
**DAVID** [1] - 2:3
**David** [1] - 5:11
**days** [1] - 61:10
**deadline** [3] - 25:21, 25:22, 26:16
**deal** [4] - 11:8, 12:22, 30:11, 46:6
**dealing** [6] - 9:4, 12:8, 12:23, 13:9, 15:7, 69:11
**deals** [1] - 24:7
**debate** [1] - 50:18
**debt** [1] - 47:11
**December** [4] - 28:9, 29:9, 67:6, 68:3
**decide** [2] - 35:16, 35:17
**decimated** [1] - 28:25
**declaration** [3] - 29:19, 30:19, 67:19
**decline** [1] - 21:19
**default** [4] - 45:24, 66:15, 66:20, 67:22
**defendant** [3] - 20:24, 48:1, 49:1
**Defendant** [6] - 2:12, 2:20, 3:8, 3:13, 3:22, 4:8
**defendants** [14] - 6:12, 8:4, 12:13, 15:1, 25:20, 26:19, 27:4, 32:12, 34:22, 38:20, 43:8, 45:9, 54:8, 61:23
**Defendants** [1] - 1:10
**defendants '** [3] - 42:15, 54:16, 68:24
**defense** [15] - 8:21, 10:4, 10:23, 11:7, 12:1, 14:5, 14:6, 15:5, 15:14, 21:3, 23:1, 23:9, 43:19, 69:1, 72:12
**defenses** [9] - 9:25, 12:13, 13:16, 19:2, 20:16, 22:4, 24:4, 33:3, 33:10
**defensive** [1] - 18:3
**definitely** [1] - 40:3
**defraud** [1] - 28:14
**DELAWARE** [1] - 1:2
**Delaware** [2] - 1:13, 17:3
**delineated** [2] - 44:10, 44:11
**Delta** [1] - 68:1
**demonstrate** [1] - 28:22
**demonstrated** [2] -

28:23, 34:4
**denied** [1] - 72:9
**DENNIS** [1] - 4:6
**Dennis** [1] - 6:1
**deny** [8] - 23:2, 33:17, 33:24, 34:10, 54:6, 56:24, 64:11, 72:2
**denying** [1] - 64:16
**depose** [1] - 51:3
**deposed** [1] - 31:16
**deposition** [8] - 27:8, 27:17, 31:22, 32:2, 34:7, 54:5, 65:11, 71:11
**depositions** [1] - 26:21
**describe** [1] - 29:15
**described** [3] - 28:6, 32:1, 42:20
**description** [2] - 21:10, 68:16
**designed** [1] - 29:4
**detail** [1] - 8:25
**details** [2] - 16:13, 32:8
**determine** [1] - 29:1
**determining** [1] - 20:14
**develop** [1] - 21:11
**developed** [1] - 33:9
**DEVLIN** [1] - 4:2
**DI** [1] - 42:14
**differences** [2] - 38:5, 67:20
**different** [10] - 25:6, 25:7, 31:13, 38:3, 38:4, 39:13, 39:14, 47:14, 50:7, 50:13
**dig** [1] - 53:7
**directly** [2] - 28:18, 71:6
**disagree** [7] - 21:7, 32:4, 32:7, 35:1, 44:21, 52:7, 52:9
**disagreement** [1] - 48:24
**disagrees** [1] - 51:21
**disclose** [4] - 16:21, 17:6, 22:22, 48:7
**disclosed** [13] - 16:17, 22:15, 22:16, 22:17, 22:19, 22:21, 24:18, 24:20, 38:23, 50:9, 51:9, 51:16, 52:2
**disclosure** [1] - 16:23
**discoverable** [1] - 67:23
**discovery** [49] - 7:6, 7:11, 14:10, 14:12, 14:19, 15:18, 17:8,

17:12, 17:15, 18:22, 19:9, 19:17, 19:20, 20:2, 21:9, 21:10, 21:12, 21:23, 22:3, 22:5, 22:18, 23:2, 25:1, 25:5, 25:11, 25:16, 26:1, 26:6, 26:17, 27:12, 33:22, 34:9, 55:13, 55:15, 57:9, 57:13, 60:6, 60:17, 64:6, 64:7, 64:16, 66:8, 66:13, 71:15, 71:16, 71:22
**discussing** [1] - 50:14
**discussion** [1] - 17:17
**dismiss** [10] - 8:10, 9:1, 9:2, 9:8, 9:11, 9:15, 9:23, 10:2, 10:22, 21:21
**disproportionality** [1] - 69:17
**dispute** [3] - 7:19, 33:23, 34:9
**disputes** [2] - 7:6, 7:14
**DISTRICT** [2] - 1:1, 1:2
**District** [1] - 16:9
**document** [5] - 20:14, 20:15, 62:12, 66:13, 70:1
**documents** [7] - 57:8, 62:10, 62:16, 65:16, 65:19, 66:6, 69:14
**done** [8] - 16:16, 19:8, 23:17, 25:13, 36:12, 36:23, 39:7, 65:18
**door** [4] - 10:3, 20:22, 56:7, 56:12
**down** [8] - 10:4, 12:15, 13:14, 21:2, 24:3, 38:1, 41:20, 54:15
**Dr** [13] - 15:1, 23:12, 27:25, 28:4, 28:23, 29:18, 29:23, 30:1, 30:2, 30:4, 30:14, 31:19, 34:6
**drug** [1] - 69:11
**due** [3] - 27:10, 59:3, 61:11
**during** [13] - 14:12, 15:18, 17:12, 22:2, 22:18, 26:1, 55:15, 60:17, 62:7, 65:11, 68:10, 69:3, 69:5
**duty** [1] - 25:9

## E

**e-mail** [1] - 70:6
**Eagle** [8] - 2:12, 5:10,

5:12, 31:20, 66:1,
68:9, 70:5, 71:25
**EAGLE** [1] - 1:5
**Eagle's** [1] - 30:5
**Eagle/Teva** [1] - 57:7
**early** [3] - 27:10,
49:18, 67:6
**educate** [1] - 40:23
**effort** [1] - 15:13
**either** [2] - 34:10,
65:19
**elemental** [1] - 20:21
**elicited** [1] - 27:12
**employee** [7] - 14:17,
14:18, 14:20, 31:18,
31:19, 34:6, 70:6
**employees** [1] - 25:12
**end** [6] - 21:9, 24:9,
57:11, 59:3, 59:16,
71:3
**ends** [1] - 71:3
**engage** [1] - 21:22
**engaged** [1] - 15:10
**entered** [2] - 62:7,
66:16
**entire** [2] - 47:6, 69:7
**entirely** [1] - 67:24
**entitled** [7] - 56:21,
57:25, 58:1, 58:3,
58:12, 58:18, 59:8
**Ernst** [1] - 5:13
**ERNST** [1] - 2:10
**erred** [1] - 64:23
**error** [2] - 53:14, 53:17
**ESI** [1] - 66:15
**ESQ** [18] - 1:20, 2:3,
2:3, 2:4, 2:9, 2:10,
2:15, 2:18, 3:3, 3:7,
3:12, 3:12, 3:16,
3:20, 3:20, 3:21, 4:3,
4:6
**essentially** [2] - 10:5,
46:15
**established** [1] -
56:25
**establishing** [1] -
38:22
**et** [3] - 1:9, 3:9, 66:14
**EVE** [1] - 3:3
**eve** [2] - 6:4, 11:3
**event** [1] - 52:1
**evidence** [7] - 14:12,
46:13, 59:19, 59:22,
61:18, 64:2
**exact** [5] - 16:13,
19:16, 41:19, 47:7,
62:12
**exactly** [2] - 41:7,
60:22
**Exactly** [1] - 39:6

**examination** [1] - 47:7
**Examiner** [1] - 15:12
**examining** [1] - 14:11
**example** [7] - 14:16,
16:18, 17:3, 17:19,
25:20, 52:14, 62:5
**examples** [1] - 16:7
**except** [1] - 52:17
**exchanged** [1] - 57:18
**excuse** [2] - 66:2,
68:12
**existence** [1] - 60:8
**existing** [1] - 60:4
**expectation** [2] - 39:5,
48:8, 53:3
**expected** [1] - 35:17
**expert** [77] - 9:19,
10:24, 11:6, 11:11,
11:24, 12:16, 14:6,
14:10, 14:11, 15:11,
15:20, 16:1, 16:2,
16:10, 16:16, 16:21,
17:9, 18:11, 19:9,
19:25, 20:3, 20:8,
20:13, 22:10, 22:14,
24:24, 27:25, 28:3,
28:12, 28:13, 29:4,
32:13, 35:12, 35:21,
35:24, 36:2, 37:9,
37:23, 39:12, 40:8,
40:17, 43:11, 43:19,
46:5, 47:7, 49:3,
50:8, 51:4, 52:4,
52:8, 52:19, 53:8,
53:18, 53:24, 54:9,
54:22, 55:10, 55:25,
56:5, 56:9, 56:12,
56:13, 56:16, 58:18,
59:20, 59:22, 60:2,
60:7, 61:1, 61:4,
61:9, 61:10, 61:19,
62:23, 64:19, 64:23,
67:16
**expert's** [1] - 16:10
**experts** [12] - 36:6,
36:12, 36:23, 37:25,
41:9, 44:10, 52:10,
52:25, 53:21, 54:3,
56:17, 56:21
**explain** [1] - 49:5
**explains** [1] - 30:14
**extended** [1] - 25:21
**extent** [1] - 43:7
**extra** [2] - 25:21, 25:22
**extremely** [1] - 33:9

## F

**facie** [5] - 43:6, 46:21,
46:22, 46:23

**fact** [36] - 14:12,
14:18, 14:19, 15:18,
17:7, 17:12, 19:17,
20:2, 21:9, 22:2,
22:3, 22:18, 23:2,
24:25, 25:5, 25:10,
25:16, 26:1, 26:5,
26:17, 28:22, 29:1,
31:12, 32:10, 56:8,
60:17, 63:14, 64:6,
64:7, 64:15, 66:7,
66:12, 67:16, 67:18,
69:2, 69:4
**factfinder** [1] - 64:25
**facts** [4] - 9:7, 27:16,
28:16, 29:1
**factual** [5] - 21:12,
28:5, 32:2, 32:9,
59:21
**fair** [5] - 9:15, 43:12,
49:4, 53:9, 62:4
**familiar** [3] - 11:15,
12:2, 13:20
**family** [1] - 29:20
**far** [5] - 11:3, 17:24,
42:19, 42:22, 52:8
**Farnan** [2] - 5:15, 5:18
**FARNAN** [5] - 2:14,
2:15, 5:16, 5:18,
5:22
**fast** [1] - 62:11
**faulting** [1] - 48:15
**FDA** [4] - 28:16, 30:5,
30:6, 30:8
**February** [1] - 27:10
**Federal** [7] - 11:12,
11:22, 16:8, 23:10,
24:2, 33:1, 65:15
**fee** [1] - 59:13
**Feldman** [9] - 6:19,
27:4, 32:1, 32:4,
32:10, 65:4, 65:7,
69:21, 70:1
**FELDMAN** [23] - 3:12,
3:20, 27:3, 28:8,
29:11, 29:13, 29:17,
30:2, 30:16, 65:7,
65:23, 68:17, 68:21,
69:23, 70:3, 70:12,
70:21, 71:10, 71:12,
71:14, 71:16, 71:19,
72:3
**fighting** [2] - 36:1,
51:19
**figure** [5] - 12:7,
13:19, 18:6, 35:15,
63:6
**file** [5] - 7:14, 7:18,
12:21, 21:2, 30:25
**filed** [7] - 7:3, 9:22,

30:22, 35:22, 41:11,
41:12, 66:23
**fill** [1] - 42:15
**final** [8] - 19:3, 19:18,
26:9, 26:12, 26:20,
56:5, 56:6
**financial** [1] - 63:15
**fine** [4] - 29:17, 36:10,
52:25, 62:25
**finish** [1] - 26:21
**FIRM** [1] - 4:2
**first** [19] - 7:19, 7:20,
10:16, 19:11, 19:14,
20:1, 20:8, 37:2,
37:16, 42:13, 42:22,
45:2, 46:16, 52:15,
53:10, 55:6, 55:9,
66:7, 68:17
**FLASTER** [2] - 3:16,
3:19
**Flaster** [2] - 6:11, 6:18
**flat** [2] - 57:21, 58:7
**flexibility** [1] - 42:3
**focused** [1] - 9:7
**folks** [1] - 5:15
**follow** [3] - 8:4, 16:14,
53:14
**following** [1] - 46:25
**foolhardy** [1] - 44:15
**footnote** [2] - 59:20,
60:10
**FOR** [1] - 1:2
**forced** [1] - 11:10
**form** [4] - 7:12, 7:15,
12:13, 25:18
**format** [1] - 53:14
**former** [4] - 14:17,
31:18, 31:19, 34:6
**formulation** [1] -
30:24
**formulations** [1] -
40:12
**forth** [2] - 13:1, 20:15
**forward** [2] - 7:3, 7:6
**fought** [1] - 63:6
**four** [2] - 19:9, 32:12
**frankly** [10] - 20:19,
23:24, 32:8, 48:14,
48:20, 51:2, 56:3,
58:21, 60:3, 61:14
**fraud** [7] - 8:15, 9:20,
10:17, 14:15, 14:20,
25:12
**fraudulent** [1] - 15:13
**free** [1] - 38:18
**Fresenius** [3] - 2:21,
5:18, 34:22
**front** [4] - 30:13,
39:25, 41:21, 46:7
**frustrated** [1] - 35:14

**full** [1] - 29:20
**funding** [1] - 62:6
**funny** [1] - 49:6
**futile** [1] - 32:23

## G

**gain** [1] - 15:13
**gained** [1] - 57:1
**game** [1] - 43:12
**general** [7] - 15:3,
15:14, 24:17, 45:2,
45:17, 69:8
**generally** [3] - 16:16,
17:6, 29:15
**generic** [1] - 20:24
**given** [3] - 8:6, 28:21,
37:7
**GMBH** [1] - 1:5
**GmbH** [1] - 2:6
**GOODRICH** [1] - 4:6
**grant** [1] - 72:9
**granting** [1] - 45:1
**granular** [1] - 38:1
**great** [3] - 30:24,
69:25, 72:15
**GREENBERG** [2] -
3:16, 3:19
**Greenberg** [2] - 6:11,
6:18
**GREGORY** [1] - 4:6
**Gregory** [1] - 6:2
**guess** [5] - 5:15,
22:24, 68:14
**Gunning** [1] - 1:24
**guys** [1] - 61:25

## H

**HAHN** [1] - 3:11
**hand** [4] - 21:10,
28:12, 47:5, 69:24
**handed** [1] - 70:1
**hands** [6] - 8:8, 8:24,
15:2, 21:1, 21:4,
55:15
**happy** [4] - 24:15,
47:5, 50:2, 50:4
**HARBER** [94] - 2:3,
7:22, 8:7, 8:11, 8:20,
8:23, 9:2, 9:6, 9:13,
9:18, 10:14, 10:20,
11:1, 11:5, 11:14,
11:18, 11:23, 12:4,
12:9, 12:19, 12:25,
13:4, 13:23, 14:3,
14:25, 15:24, 16:3,
16:5, 16:13, 16:24,
17:2, 17:18, 17:23,
18:5, 18:8, 18:13,

18:18, 18:24, 19:1, 19:8, 19:11, 19:14, 20:1, 20:5, 20:10, 20:18, 21:15, 22:1, 22:8, 22:12, 22:18, 22:21, 22:25, 23:8, 23:21, 24:21, 24:25, 25:6, 25:17, 26:7, 26:18, 29:16, 31:19, 31:23, 32:3, 32:6, 32:20, 34:1, 34:15, 42:16, 43:2, 43:16, 44:21, 44:25, 45:6, 45:9, 45:15, 45:17, 45:22, 46:1, 46:8, 47:16, 47:20, 48:18, 49:23, 50:2, 50:10, 50:12, 50:21, 50:24, 51:1, 51:6, 72:5, 72:11

**Harber** [3] - 5:12, 7:23, 47:2

**hard** [4] - 23:11, 24:6, 26:18, 37:6

**HARDIN** [1] - 2:18

**Hardin** [1] - 5:20

**hardly** [1] - 23:25

**head** [1] - 18:14

**heading** [1] - 51:2

**hear** [8] - 20:7, 27:1, 31:14, 33:14, 34:20, 51:18, 63:1, 64:23

**heard** [3] - 13:2, 20:8, 67:17

**hearing** [4] - 24:16, 50:18, 52:20, 72:16

**held** [1] - 57:4

**hello** [1] - 5:24

**help** [3] - 44:23, 62:21, 69:3

**helpful** [1] - 48:21

**high** [1] - 31:5

**higher** [2] - 60:11, 62:21

**highly** [1] - 56:17

**hold** [9] - 17:14, 23:1, 37:18, 38:12, 42:17, 42:18, 54:8

**Honor** [103] - 5:9, 5:16, 5:24, 6:4, 6:11, 7:22, 8:1, 8:11, 9:13, 12:10, 13:23, 15:22, 16:14, 18:14, 18:18, 20:19, 20:21, 21:15, 22:1, 23:21, 24:12, 24:15, 26:7, 26:18, 27:3, 27:5, 27:7, 27:20, 32:3, 32:10, 32:24, 33:12, 33:13, 33:14, 34:1, 34:15,

34:21, 34:23, 35:10, 35:20, 35:25, 36:13, 36:15, 36:17, 37:11, 37:15, 38:10, 39:6, 39:9, 40:7, 41:7, 42:4, 42:10, 42:16, 43:2, 43:16, 44:2, 44:15, 44:20, 46:9, 47:5, 47:9, 47:23, 49:9, 49:23, 49:24, 50:18, 51:20, 52:16, 53:7, 53:9, 53:11, 54:19, 55:6, 55:11, 55:14, 56:8, 56:15, 57:8, 57:16, 57:23, 57:25, 58:20, 59:6, 59:13, 61:14, 61:16, 62:19, 63:8, 64:18, 65:7, 65:8, 65:25, 66:4, 68:17, 69:23, 70:3, 70:16, 71:19, 72:3, 72:5, 72:11, 72:14

**Honor's** [1] - 44:7

**HONORABLE** [1] - 1:16

**hope** [1] - 41:1

**house** [4] - 65:12, 68:11, 68:15, 68:16

**hypothetical** [6] - 13:1, 36:15, 41:8, 44:7, 44:20, 52:3

**hypothetically** [1] - 36:2

**hypotheticals** [1] - 37:3

## I

**identical** [1] - 52:17

**identification** [2] - 35:5, 70:5

**identified** [9] - 13:10, 37:23, 38:21, 65:11, 66:25, 68:2, 68:4, 68:7, 68:25

**identify** [5] - 10:12, 35:3, 35:8, 65:17, 67:23

**ignore** [1] - 17:9

**Illinois** [2] - 2:19, 3:21

**illustrates** [1] - 44:2, 44:7

**imagine** [3] - 24:6, 40:5, 61:22

**immediately** [2] - 56:12, 57:17

**implication** [2] - 9:24, 26:8

**importantly** [1] - 57:2

**improper** [5] - 20:11, 23:24, 33:15, 41:13, 52:5

**improperly** [2] - 11:9, 24:20

**impurities** [4] - 30:21, 30:25, 31:6, 70:25

**IN** [3] - 1:1, 1:2, 1:5

**in-house** [4] - 65:12, 68:11, 68:15, 68:16

**inability** [1] - 34:5

**inadequate** [7] - 12:14, 13:20, 17:17, 17:25, 18:11, 33:21, 51:12

**inadequately** [2] - 9:12, 10:2

**inappropriate** [1] - 58:5

**Inc** [3] - 2:7, 2:12, 3:14

**INC** [1] - 1:6

**include** [4] - 11:15, 20:25, 31:3, 49:11

**included** [3] - 27:11, 27:17, 28:12

**including** [1] - 38:21

**incorrect** [1] - 35:20

**increased** [1] - 61:16

**incredibly** [2] - 24:3, 71:25

**indicate** [1] - 61:17

**indicated** [1] - 47:3

**indicative** [1] - 53:20

**indicia** [1] - 43:6

**individuals** [4] - 8:15, 9:21, 14:14, 54:5

**inequitable** [19] - 8:8, 8:12, 8:18, 8:24, 10:10, 11:19, 12:1, 15:2, 15:5, 15:15, 18:23, 19:13, 19:15, 20:25, 21:4, 23:12, 31:24, 34:24, 67:17

**inform** [1] - 57:12

**information** [9] - 28:21, 32:7, 56:2, 56:23, 57:20, 58:9, 63:25, 67:24

**infringement** [2] - 45:7, 48:3

**infusion** [1] - 30:10

**ingredient** [2] - 31:4, 31:8

**inherited** [1] - 19:6

**inheriting** [1] - 49:7

**initial** [3] - 19:3, 26:11, 49:16

**inject** [1] - 10:4

**injectable** [1] - 40:12

**injected** [3] - 8:14,

14:5, 36:2

**Innogenetics** [1] - 16:7

**instance** [2] - 38:10, 40:10

**instruction** [1] - 15:8

**insufficient** [2] - 16:11, 33:20

**intend** [2] - 29:3, 51:13

**intending** [1] - 43:8

**intention** [3] - 54:20, 55:2

**interested** [1] - 44:17

**interesting** [1] - 52:23

**INTERNATIONAL** [1] - 1:5

**International** [1] - 2:6

**interrelated** [1] - 66:6

**interrogatories** [3] - 17:5, 24:23, 26:11

**interrogatory** [7] - 19:1, 22:2, 25:8, 27:17, 55:20, 55:22, 55:23

**inundated** [1] - 21:20

**invalid** [2] - 12:17, 20:25

**invalidate** [1] - 36:11

**invalidates** [1] - 41:10

**invalidating** [3] - 36:5, 36:9, 47:13

**invalidity** [12] - 13:2, 13:6, 13:8, 19:2, 19:4, 19:18, 22:4, 28:19, 36:21, 37:24, 42:2

**investigate** [1] - 59:9

**investment** [2] - 63:16

**involved** [6] - 30:20, 65:13, 70:13, 70:17, 70:23, 71:7

**involves** [1] - 62:8

**Ir** [1] - 32:16

**irrelevant** [1] - 26:24

**issue** [59] - 8:8, 15:21, 16:5, 16:8, 17:2, 28:1, 28:5, 33:7, 34:2, 34:12, 34:16, 34:23, 34:24, 37:12, 37:13, 37:20, 39:10, 39:19, 40:5, 40:6, 40:8, 41:9, 41:21, 42:10, 42:11, 42:25, 43:4, 44:7, 44:9, 44:24, 48:21, 49:22, 49:24, 49:25, 50:12, 50:13, 53:5, 54:15, 55:6, 55:9, 55:14, 55:17, 55:19, 56:14,

57:10, 58:2, 65:5, 65:8, 66:7, 66:10, 66:11, 66:25, 67:10, 67:25, 69:5, 72:7

**issued** [2] - 67:13

**issues** [14] - 7:25, 16:24, 17:10, 44:16, 45:3, 47:21, 55:7, 55:8, 55:24, 58:2, 59:2, 63:4, 63:23, 69:10

**items** [1] - 48:6

## J

**James** [1] - 6:6

**JAMES** [2] - 3:7, 4:3

**January** [10] - 27:9, 28:7, 29:10, 64:8, 64:9, 71:10, 71:12, 71:13, 71:14, 71:16

**Jeff** [1] - 6:17

**JEFFREY** [1] - 3:21

**JENKINS** [1] - 3:3

**Jenkins** [1] - 6:5

**Jeremy** [1] - 6:11

**JEREMY** [1] - 3:16

**Jim** [1] - 5:24

**job** [2] - 28:21

**JOHN** [1] - 1:20

**joined** [4] - 6:6, 67:10, 67:18, 67:21

**joining** [1] - 5:11

**Judge** [13] - 25:18, 38:4, 38:9, 43:24, 45:13, 45:14, 46:3, 46:4, 49:6, 49:13, 53:23, 55:23, 66:16

**judge** [4] - 21:24, 23:17, 37:14, 40:23

**judgment** [2] - 13:17, 36:17

**July** [1] - 55:21

**jury** [2] - 15:8, 40:1

**justify** [1] - 48:25

## K

**Kabi** [1] - 2:21

**Katzenstein** [1] - 6:5

**KATZENSTEIN** [1] - 3:3

**KELLER** [1] - 1:19

**Kevin** [2] - 5:19, 34:21

**KEVIN** [1] - 2:18

**kind** [2] - 8:5, 50:15

**knowing** [1] - 26:1

**knowingly** [1] - 15:11

**knowledge** [1] - 67:16

**known** [1] - 9:23

knows [1] - 32:5
Krill [8] - 23:12, 29:18, 30:2, 30:4, 30:18, 31:19, 34:6, 67:19
KSR [1] - 53:11

## L

laid [1] - 8:4
LANE [1] - 3:6
language [3] - 41:15, 48:9, 48:16
last [7] - 22:22, 25:10, 34:2, 34:16, 43:3, 50:18, 65:5
late [8] - 18:16, 18:19, 21:5, 24:14, 27:13, 49:7, 57:2, 72:1
latest [2] - 20:15, 67:13
LATHAM [1] - 2:9
Latham [3] - 5:11, 5:13, 66:1
law [12] - 24:5, 24:13, 32:22, 32:25, 33:1, 33:9, 36:7, 36:8, 38:7, 39:17, 44:12, 57:25
LAW [1] - 4:2
lawyer [6] - 27:9, 30:17, 30:18, 44:18, 68:15, 68:16
lawyers [1] - 62:15
lay [1] - 53:4
leads [1] - 67:9
learn [2] - 60:19, 71:18
least [1] - 62:14
leave [1] - 43:3
left [4] - 35:2, 56:3, 56:7, 56:11
length [2] - 58:1, 58:11
LENNON [2] - 4:3, 5:24
Lennon [2] - 5:23, 5:25
lest [1] - 21:2
letter [13] - 7:18, 8:2, 8:5, 16:7, 17:17, 24:5, 37:12, 38:21, 42:15, 48:9, 54:17, 54:24, 70:8
letters [1] - 54:21
level [1] - 38:1
levels [1] - 31:5
LIABILITY [1] - 1:9
Liability [1] - 3:9
license [4] - 58:13, 63:17, 63:21, 63:22

licensing [3] - 57:8, 57:10, 57:11
limine [8] - 11:3, 12:7, 12:22, 13:14, 33:20, 41:12, 51:22, 51:24
limit [1] - 52:21
limitation [1] - 36:12, 36:23, 38:1, 38:2, 40:21, 40:22, 41:10, 41:19, 44:14, 48:8, 53:1, 53:20
limitations [6] - 13:22, 37:24, 38:4, 38:23, 40:10, 53:4
Limited [1] - 3:9
limited [6] - 28:5, 38:21, 43:5, 43:21, 47:2, 49:14
LIMITED [1] - 1:9
limits [2] - 17:21, 66:11
list [3] - 43:14, 49:3, 69:14
listed [2] - 50:7, 51:14
litigant [1] - 21:18
litigated [1] - 54:2
litigating [2] - 10:24, 16:18
litigation [9] - 16:2, 17:22, 18:10, 62:6, 62:7, 62:8, 62:9, 63:19, 64:2
lives [1] - 14:17
LLC [2] - 2:21, 4:2
LLP [8] - 1:19, 2:2, 2:9, 2:14, 2:18, 3:3, 3:6, 3:11
local [1] - 66:15
locate [1] - 69:21
LOESER [1] - 3:11
log [10] - 58:4, 58:10, 65:17, 66:5, 67:7, 68:3, 68:7, 68:20, 69:12
logged [1] - 70:10
logs [4] - 65:9, 65:10, 65:20, 69:22
look [5] - 13:16, 18:19, 43:13, 53:15, 62:16
looked [1] - 35:7
looking [4] - 23:15, 38:15, 47:10, 68:21
looks [2] - 62:13, 62:15
loop [1] - 8:5
lose [1] - 9:15
loss [1] - 23:20
low [3] - 30:25, 31:5, 70:25
lying [2] - 15:11, 51:9

lyophilized [1] - 55:10

## M

MAHAFFY [14] - 2:4, 59:13, 60:3, 60:13, 60:17, 60:22, 60:25, 61:3, 61:7, 61:14, 61:22, 62:2, 62:25, 64:9
Mahaffy [2] - 5:12, 59:13
mail [1] - 70:6
main [3] - 59:15, 63:21, 69:9
maintain [1] - 14:8
March [4] - 34:17, 52:17, 52:20, 67:13
Mark [1] - 6:7
MARX [1] - 3:6
material [3] - 60:4, 60:5, 60:6
materials [1] - 55:10
matter [4] - 12:13, 13:5, 24:17, 59:21
McCanty [6] - 31:9, 65:11, 68:18, 69:15, 70:15, 71:5
McKenzie [1] - 30:17
mean [30] - 8:14, 9:10, 10:18, 12:1, 13:13, 13:16, 13:19, 16:6, 20:18, 20:22, 20:23, 22:2, 22:6, 23:1, 23:4, 23:23, 25:12, 25:19, 26:24, 32:6, 33:18, 34:4, 39:22, 43:12, 44:21, 48:10, 54:11, 60:14, 61:14, 61:23
meant [1] - 37:14
meat [1] - 36:16
mechanism [1] - 53:23
media [1] - 57:14
meet [6] - 13:13, 38:2, 55:18, 57:17, 57:19, 58:23
meeting [1] - 53:3
meetings [1] - 30:5
meets [2] - 36:22, 40:20
mention [1] - 29:14
merely [1] - 59:20
messy [1] - 62:17
met [1] - 57:24
MICHELLE [1] - 2:10
Michelle [1] - 5:13
middle [1] - 18:10
might [4] - 29:24,

35:13, 49:4, 62:16
mind [1] - 49:24
minimal [1] - 64:12
minute [1] - 25:10
misleading [1] - 15:12
misreading [1] - 43:11
misspoke [1] - 30:3
misunderstanding [1] - 37:20
MITTENDORF [1] - 3:6
molecule [3] - 41:3, 41:4, 41:6
month [1] - 59:3
months [2] - 19:9, 55:16
motion [26] - 7:14, 7:15, 11:2, 11:6, 11:8, 12:5, 12:22, 13:14, 13:17, 14:9, 21:2, 28:2, 33:7, 33:13, 33:20, 34:25, 35:22, 41:11, 41:12, 41:13, 51:22, 68:25, 71:17, 71:23
motions [8] - 7:3, 7:4, 10:5, 12:6, 13:21, 21:21, 51:24, 51:25
motivate [1] - 41:15
motivated [1] - 39:2
motivation [5] - 36:11, 40:15, 40:16, 48:8, 53:2
motivations [1] - 55:3
move [22] - 8:1, 8:10, 9:1, 9:2, 9:7, 9:8, 9:11, 9:15, 9:23, 9:25, 10:2, 10:22, 12:12, 13:7, 15:21, 32:19, 32:20, 33:5, 36:21, 47:18, 49:21, 57:2
moved [4] - 21:6, 23:11, 32:17, 41:20
moves [1] - 33:1
moving [1] - 12:18
MR [204] - 5:9, 5:16, 5:18, 5:22, 5:24, 6:10, 6:14, 6:17, 6:21, 7:22, 8:7, 8:11, 8:20, 8:23, 9:2, 9:6, 9:13, 9:18, 10:14, 10:20, 11:1, 11:5, 11:14, 11:18, 11:23, 12:4, 12:9, 12:19, 12:25, 13:4, 13:23, 14:3, 14:25, 15:24, 16:3, 16:5, 16:13, 16:24, 17:2, 17:18, 17:23, 18:5, 18:8, 18:13, 18:18, 18:24,

19:1, 19:8, 19:11, 19:14, 20:1, 20:5, 20:10, 20:18, 21:15, 22:1, 22:8, 22:12, 22:18, 22:21, 22:25, 23:8, 23:21, 24:21, 24:25, 25:6, 25:17, 26:7, 26:18, 27:3, 28:8, 29:11, 29:13, 29:16, 29:17, 30:2, 30:16, 31:19, 31:23, 32:3, 32:6, 32:20, 34:1, 34:15, 34:21, 35:10, 35:20, 37:2, 37:5, 37:11, 37:15, 37:19, 37:22, 38:14, 38:17, 38:25, 39:3, 39:6, 39:9, 39:14, 39:23, 40:2, 40:6, 41:1, 41:7, 41:18, 41:24, 42:7, 42:9, 42:12, 42:16, 43:2, 43:16, 44:1, 44:5, 44:19, 44:21, 44:25, 45:6, 45:9, 45:15, 45:17, 45:22, 46:1, 46:8, 46:9, 46:12, 46:16, 47:9, 47:16, 47:17, 47:20, 48:14, 48:18, 49:9, 49:23, 50:2, 50:10, 50:12, 50:21, 50:24, 51:1, 51:6, 51:20, 52:9, 52:15, 54:10, 54:19, 55:2, 55:6, 55:14, 57:3, 57:7, 58:16, 58:19, 59:6, 59:13, 60:3, 60:13, 60:17, 60:22, 60:25, 61:3, 61:7, 61:14, 61:22, 62:2, 62:25, 63:7, 63:13, 64:4, 64:7, 64:9, 64:10, 64:18, 64:22, 65:2, 65:4, 65:7, 65:23, 65:25, 66:19, 67:3, 67:6, 67:9, 67:12, 68:4, 68:12, 68:17, 68:21, 68:24, 69:23, 70:3, 70:12, 70:21, 71:10, 71:12, 71:14, 71:16, 71:19, 72:3, 72:5, 72:11, 72:14
MS [1] - 6:4
mutually [1] - 48:1
Mylan [3] - 4:8, 5:25, 6:1

## N

name [2] - 68:5, 68:6

**named** [1] - 14:14
**names** [3] - 8:15, 29:14, 29:15
**narrow** [2] - 48:1, 48:5
**narrowing** [7] - 34:18, 35:6, 35:24, 47:23, 50:15, 50:19
**necessarily** [1] - 24:10
**necessary** [1] - 21:11
**need** [7] - 21:12, 42:3, 48:18, 58:4, 65:17, 70:24, 71:18
**needed** [1] - 25:23
**needs** [1] - 32:10
**negotiating** [1] - 58:2
**negotiation** [1] - 57:22
**negotiations** [1] - 59:17
**Nelson** [2] - 5:19, 34:21
**NELSON** [53] - 2:18, 34:21, 35:10, 35:20, 37:2, 37:5, 37:15, 37:19, 37:22, 38:14, 38:17, 38:25, 39:3, 39:6, 39:9, 39:14, 39:23, 40:2, 40:6, 41:1, 41:7, 41:18, 41:24, 42:7, 42:9, 42:12, 44:1, 44:5, 44:19, 47:9, 47:17, 51:20, 52:9, 52:15, 54:10, 54:19, 55:2, 55:6, 55:14, 57:3, 57:7, 58:16, 58:19, 59:6, 63:7, 63:13, 64:4, 64:7, 64:10, 64:18, 65:2, 65:4, 72:14
**never** [3] - 13:2, 14:13, 36:12
**new** [6] - 7:4, 41:21, 46:24, 47:17, 48:25, 50:23
**New** [2] - 2:10
**news** [1] - 57:13
**newspaper** [1] - 60:19
**next** [7] - 15:21, 33:25, 34:14, 55:5, 57:6, 57:7, 64:17
**NO** [1] - 1:10
**nobody** [1] - 40:18
**none** [1] - 30:13
**nonobviousness** [4] - 43:23, 59:19, 59:23, 61:18
**Noreika** [1] - 45:13
**normally** [2] - 16:22, 62:13
**nothing** [4] - 63:17,

63:23, 70:6, 72:5
**notice** [10] - 11:23, 11:25, 14:19, 17:12, 24:10, 27:24, 27:25, 29:5, 29:6, 29:7
**November** [4] - 55:17, 55:18, 55:19, 55:21
**nowhere** [1] - 8:16
**number** [1] - 42:14

**O**

**o'clock** [1] - 1:14
**object** [1] - 41:5
**objections** [2] - 13:17, 66:14
**obligation** [1] - 57:13
**obvious** [2] - 29:24, 46:25
**obviously** [4] - 29:5, 32:3, 32:5, 42:20
**obviousness** [4] - 43:6, 43:19, 46:21, 53:12
**occurred** [4] - 64:15, 67:18, 67:21, 69:2
**OF** [1] - 1:2
**office** [1] - 31:10
**Office** [9] - 14:21, 28:14, 28:17, 28:20, 29:22, 30:7, 30:14, 31:12, 32:8
**officer** [1] - 29:19
**Official** [1] - 1:25
**once** [1] - 65:10
**one** [53] - 6:10, 7:4, 7:13, 9:9, 9:11, 10:5, 10:12, 13:9, 14:16, 16:4, 16:25, 20:15, 22:4, 26:13, 28:15, 29:9, 29:10, 29:11, 29:18, 29:22, 30:22, 33:25, 34:13, 38:12, 38:22, 38:23, 39:10, 40:10, 42:2, 42:17, 43:3, 43:10, 43:17, 44:3, 44:4, 45:16, 46:5, 46:19, 46:22, 47:20, 48:11, 50:15, 52:16, 55:11, 57:7, 58:15, 59:15, 63:7, 66:3, 67:13, 69:7, 70:9, 72:9
**One** [1] - 17:2
**ones** [3] - 37:22, 55:20, 69:13
**ongoing** [2] - 25:9, 62:8
**open** [5] - 20:22, 43:8, 56:3, 56:7, 56:12

**operates** [1] - 66:17
**operating** [1] - 66:22
**operative** [1] - 20:13
**opinion** [3] - 12:20, 12:21, 60:9
**opinions** [2] - 28:4, 47:17
**opportunity** [2] - 22:22, 54:24
**opposed** [1] - 11:2
**order** [47] - 7:5, 7:12, 7:15, 7:17, 7:25, 8:1, 8:4, 8:6, 11:3, 21:13, 21:17, 22:23, 25:15, 25:18, 26:4, 29:14, 37:1, 37:2, 37:4, 38:16, 38:18, 38:20, 39:8, 39:24, 42:6, 42:20, 42:23, 42:25, 45:1, 46:2, 47:23, 48:7, 49:13, 49:18, 49:22, 50:8, 51:7, 51:15, 52:12, 52:16, 57:4, 57:5, 66:16, 71:5, 72:8
**ordered** [1] - 34:17
**ordering** [1] - 50:19
**orderly** [1] - 17:7
**orders** [1] - 6:25
**ordinary** [2] - 39:1, 66:13
**original** [4] - 33:21, 59:23, 59:24, 60:15
**ORMEROD** [2] - 3:3, 6:4
**Ormerod** [2] - 6:3, 6:5
**otherwise** [2] - 8:25, 15:12
**ought** [1] - 15:19
**outside** [2] - 54:3, 54:21
**outstanding** [1] - 41:25

**P**

**P.C** [2] - 3:16, 3:19
**p.m** [3] - 1:14, 5:4, 72:16
**page** [1] - 62:12
**pages** [4] - 12:17, 35:12, 35:15, 35:22
**paragraph** [7] - 42:19, 42:22, 49:20, 49:21, 54:7, 54:25
**paragraphs** [1] - 50:7
**PARKS** [1] - 3:11
**part** [6] - 7:4, 18:17, 21:16, 32:16, 46:1, 54:14

**particular** [2] - 13:12, 69:13
**particularity** [2] - 23:10, 32:21
**particularized** [2] - 33:4, 33:16
**particularly** [1] - 28:2
**parties** [12] - 17:4, 19:17, 27:19, 31:21, 45:3, 47:24, 55:18, 57:18, 57:24, 58:1, 62:7, 66:15
**party** [19] - 9:24, 10:1, 10:4, 13:13, 15:9, 15:10, 17:8, 17:12, 20:22, 21:1, 21:4, 21:8, 26:10, 26:16, 32:25, 33:2, 33:10, 69:1, 69:18
**passed** [1] - 71:23
**Patent** [10] - 14:21, 15:12, 28:14, 28:17, 28:20, 29:21, 30:7, 30:13, 31:12, 32:7
**patent** [20] - 7:5, 7:12, 12:17, 15:13, 27:8, 30:17, 30:18, 30:23, 31:3, 31:7, 46:25, 63:18, 63:23, 63:24, 67:15, 69:16, 70:22, 71:1, 71:4, 71:5
**patents** [16] - 20:25, 29:21, 29:22, 29:25, 30:20, 30:23, 31:11, 38:3, 59:20, 61:18, 65:14, 66:23, 67:12, 69:14, 70:14, 71:8
**patents-in-suit** [1] - 67:12
**paying** [2] - 47:11, 63:19
**Pearl** [5] - 65:8, 65:9, 68:18, 69:2, 70:9
**pending** [1] - 71:1
**people** [5] - 14:15, 19:24, 21:22, 45:12, 66:22
**perfectly** [2] - 27:8, 27:21
**perhaps** [1] - 32:24
**period** [1] - 66:23
**permissible** [1] - 38:8
**permitted** [2] - 22:24, 39:15
**permutation** [1] - 10:3
**person** [3] - 39:1, 71:4, 71:18
**personal** [1] - 71:24
**perspective** [2] - 72:10, 72:13

**pertinent** [1] - 14:22
**PHARMA** [1] - 1:9
**Pharma** [1] - 3:9
**PHARMACEUTICAL S** [2] - 1:4, 1:6
**Pharmaceuticals** [3] - 2:6, 2:12, 4:8
**philosophical** [1] - 48:23
**picked** [1] - 66:22
**pigeonhole** [1] - 53:16
**place** [4] - 7:8, 11:8, 27:9, 34:18
**placed** [1] - 13:22
**Plaintiff** [2] - 2:6, 2:21
**plaintiff** [3] - 35:14, 41:16, 72:5
**plaintiff's** [2] - 43:5, 72:10
**plaintiffs** [16] - 7:20, 7:24, 9:7, 33:19, 33:23, 45:6, 47:25, 49:2, 54:13, 54:17, 55:16, 55:19, 57:5, 57:12, 57:16, 59:18
**Plaintiffs** [1] - 1:7
**play** [1] - 49:16
**plead** [2] - 11:17, 27:6
**pleaded** [6] - 11:9, 11:16, 20:12, 22:15, 23:3, 23:10
**pleading** [25] - 10:19, 10:21, 10:22, 11:21, 12:2, 13:5, 13:12, 13:20, 14:4, 14:7, 15:9, 15:15, 18:1, 18:12, 23:18, 24:3, 24:9, 27:22, 27:23, 32:21, 33:4, 33:9, 33:16, 33:20, 33:22
**pleadings** [1] - 13:18
**pled** [7] - 9:12, 10:3, 10:17, 11:7, 11:18, 15:17, 24:19
**plowing** [1] - 69:12
**point** [29] - 9:10, 13:3, 13:15, 13:24, 13:25, 14:1, 14:2, 14:3, 14:22, 16:14, 19:19, 24:7, 24:13, 24:14, 26:25, 28:18, 32:9, 33:5, 35:5, 43:3, 44:2, 44:7, 51:1, 51:3, 56:4, 57:23, 59:15, 63:7, 66:6
**pointed** [2] - 27:5, 61:16
**points** [2] - 43:16, 50:3
**police** [1] - 52:24

**portion** [2] - 15:16, 28:13
**portions** [6] - 16:2, 16:10, 18:11, 28:2, 28:12, 70:19
**POSA** [1] - 39:4
**position** [4] - 30:6, 56:1, 56:5, 56:6
**positions** [3] - 48:3, 51:23, 51:24
**possible** [2] - 62:20, 64:18
**possibly** [2] - 26:23, 40:9
**practice** [2] - 16:15, 24:17
**precedent** [1] - 53:18
**predicate** [2] - 28:5, 28:10
**prefer** [1] - 33:15
**preference** [1] - 8:2
**prejudice** [8] - 25:25, 33:18, 34:4, 34:5, 34:9, 54:7, 56:15, 56:22
**prejudiced** [5] - 26:3, 26:4, 31:17, 34:4, 51:10
**prejudices** [1] - 14:21
**premise** [1] - 28:20
**present** [3] - 9:16, 31:22, 34:7
**presented** [2] - 13:17, 30:5
**press** [1] - 64:4
**presumption** [4] - 15:8, 28:18, 28:19, 28:24
**pretrial** [2] - 11:3, 51:7
**pretty** [2] - 35:2, 68:1
**previous** [1] - 52:16
**previously** [1] - 52:4
**prices** [1] - 63:18
**prima** [5] - 43:6, 46:21, 46:22, 46:23
**primarily** [1] - 41:25
**privilege** [11] - 62:17, 65:9, 65:10, 65:16, 65:17, 65:20, 67:7, 68:3, 68:19, 68:20, 69:22
**privileged** [3] - 67:1, 67:25, 69:16
**probative** [4] - 57:1, 63:5, 64:2, 64:12
**problem** [11] - 14:21, 18:17, 36:16, 36:18, 36:19, 36:25, 38:17, 39:21, 49:7, 52:2, 52:13

**procedural** [2] - 41:13, 50:3
**procedurally** [1] - 12:7
**procedure** [5] - 7:11, 10:8, 11:13, 13:7, 17:13
**Procedure** [1] - 11:22
**procedures** [1] - 7:8
**proceed** [5] - 14:10, 17:2, 26:14, 26:15, 33:16
**proceeded** [1] - 66:14
**proceedings** [1] - 5:3
**proceeds** [1] - 54:3
**process** [3] - 66:12, 66:13, 66:14
**produce** [5] - 27:13, 60:15, 60:23, 64:14, 72:1
**produced** [6] - 60:6, 60:14, 60:16, 60:25, 67:4, 67:6
**product** [5] - 30:12, 40:15, 58:2, 63:14, 69:9
**proof** [1] - 45:4
**proper** [14] - 10:8, 11:6, 11:8, 13:7, 14:9, 15:15, 20:14, 22:14, 26:10, 32:24, 52:1, 53:25, 54:1, 58:10
**properly** [9] - 8:13, 13:10, 15:17, 15:18, 16:17, 24:18, 24:19, 28:21, 57:24
**properties** [4] - 40:19, 40:20, 40:21, 40:24
**proportionality** [2] - 66:10, 69:5
**proposed** [11] - 6:24, 38:15, 38:16, 38:18, 38:19, 42:23, 45:1, 48:7, 50:8, 51:15, 52:16
**propound** [1] - 21:8
**prosecuted** [1] - 70:14
**prosecuting** [1] - 31:9
**prosecution** [6] - 65:14, 67:15, 69:3, 69:13, 69:16, 71:7
**protective** [1] - 29:14
**provide** [4] - 56:16, 56:22, 58:8, 65:20
**provided** [2] - 27:24, 47:11
**provides** [1] - 12:6
**providing** [1] - 58:9
**provisions** [3] - 61:24, 62:4, 62:6

**pull** [2] - 41:5, 41:9
**purpose** [9] - 16:20, 38:22, 39:16, 39:17, 43:22, 48:23, 61:19, 62:22, 69:14
**purposes** [1] - 36:5
**pursuant** [1] - 13:22
**put** [20] - 12:14, 13:1, 17:4, 17:10, 23:1, 26:9, 26:10, 27:22, 29:2, 37:9, 39:25, 45:3, 45:6, 45:9, 45:19, 46:20, 47:1, 51:7, 51:12, 58:6
**puts** [1] - 10:1
**putting** [2] - 22:14, 53:18

## Q

**questioning** [1] - 59:16
**quickly** [1] - 61:7
**quite** [3] - 58:21, 62:10, 64:10

## R

**raise** [7] - 11:21, 24:10, 49:3, 53:7, 55:16, 71:20
**raised** [9] - 9:19, 46:5, 48:25, 50:3, 55:14, 56:14, 57:15, 57:17, 63:14
**raises** [1] - 63:4
**raising** [3] - 51:1, 51:11, 63:16
**rate** [8] - 59:4, 59:10, 59:24, 60:11, 62:21, 63:9, 63:15, 63:16
**rates** [3] - 59:7, 61:16, 64:1
**re** [1] - 56:14
**re-raised** [1] - 56:14
**read** [4] - 35:15, 60:19, 65:15, 70:15
**reading** [1] - 38:11
**real** [2] - 28:17, 45:24
**reality** [1] - 29:6
**realize** [1] - 24:14
**really** [6] - 7:1, 54:12, 65:18, 66:2, 66:4, 70:4
**reason** [4] - 32:16, 47:22, 54:12, 58:21
**reasonable** [2] - 39:5, 53:3, 54:17
**reasons** [5] - 9:6, 59:8, 59:10, 66:2,

66:5
**rebuild** [1] - 46:23
**rebuts** [1] - 43:14
**rebuttal** [2] - 46:14, 46:16
**rebutting** [1] - 32:9
**receive** [1] - 21:19
**recipient** [1] - 68:5
**recollection** [1] - 60:10
**record** [3] - 7:10, 29:2, 34:3
**records** [1] - 42:2
**redact** [1] - 70:19
**refer** [2] - 27:18, 38:6
**reference** [6] - 19:24, 36:22, 38:20, 41:3, 41:10, 47:13
**references** [40] - 30:9, 35:3, 35:8, 35:13, 35:16, 35:23, 36:1, 36:4, 36:7, 36:9, 36:10, 36:13, 36:21, 37:16, 37:22, 38:2, 38:6, 38:8, 38:9, 39:7, 39:16, 40:11, 40:14, 44:11, 44:12, 44:13, 46:24, 47:1, 47:10, 48:1, 50:17, 51:14, 52:11, 52:18, 52:19, 53:2, 53:19, 62:24
**refused** [2] - 57:21, 58:7
**regarding** [4] - 27:7, 58:2, 58:13, 69:16
**regardless** [2] - 23:23, 32:25
**regular** [1] - 69:11
**regularly** [1] - 7:2
**regulatory** [1] - 63:23
**reincorporate** [1] - 55:24
**relate** [3] - 53:2, 53:19, 69:13
**related** [2] - 12:3, 62:6
**relates** [1] - 34:2
**relating** [1] - 34:16
**release** [1] - 64:5
**relevance** [7] - 15:17, 59:17, 62:20, 66:9, 67:9, 69:1
**relevant** [10] - 15:3, 56:17, 56:19, 56:20, 58:20, 59:1, 61:12, 61:15, 61:20, 66:23
**reliance** [1] - 49:12
**relief** [5] - 7:16, 21:19, 22:14, 37:16, 72:9
**relies** [1] - 59:22

**relieve** [1] - 25:25
**rely** [8] - 30:10, 38:20, 46:21, 46:24, 50:16, 51:13, 59:11, 61:19
**relying** [2] - 59:18, 62:22
**remain** [1] - 15:14
**remainder** [2] - 42:24, 49:21
**remember** [1] - 19:15
**reopen** [1] - 48:19
**repeatedly** [2] - 29:21, 54:21
**reply** [20] - 31:15, 39:11, 41:25, 43:4, 43:17, 43:18, 43:21, 43:25, 44:1, 44:5, 44:6, 44:23, 45:14, 45:17, 45:18, 45:24, 46:5, 48:21, 48:22, 49:1
**replying** [2] - 43:18, 43:22
**report** [50] - 9:19, 10:24, 11:24, 14:6, 15:2, 15:16, 15:20, 16:1, 16:2, 16:10, 16:16, 16:21, 16:23, 17:10, 18:11, 19:25, 20:4, 20:8, 20:13, 22:10, 22:14, 24:24, 27:25, 28:3, 28:12, 28:13, 29:4, 32:13, 35:12, 37:9, 37:23, 39:11, 43:18, 46:12, 47:3, 47:4, 52:4, 52:19, 53:24, 54:3, 54:9, 58:18, 60:2, 61:1, 61:4, 61:9, 61:10, 62:24, 64:19
**Reporter** [1] - 1:25
**reports** [34] - 11:6, 28:23, 35:21, 35:24, 36:3, 41:25, 43:4, 43:17, 43:21, 43:25, 44:1, 44:5, 44:6, 44:24, 45:2, 45:3, 45:7, 45:10, 45:14, 45:17, 45:19, 46:19, 47:2, 49:11, 51:13, 53:8, 55:25, 56:5, 56:9, 56:13, 56:16, 59:2, 67:16
**representing** [2] - 5:10, 66:1
**reputable** [1] - 37:8
**request** [4] - 21:19, 22:13, 37:16, 55:9
**requested** [5] - 7:16, 60:4, 60:5, 61:5,

61:9
**requests** [1] - 66:13
**require** [7] - 23:11, 35:5, 35:6, 64:15, 66:21, 67:22, 71:25
**required** [4] - 18:23, 25:19, 64:14, 66:5
**requirement** [2] - 19:3, 53:12
**requirements** [8] - 7:10, 7:11, 13:12, 17:3, 17:9, 24:3, 24:9, 33:9
**reservation** [4] - 41:14, 41:19, 41:24, 48:16
**reservations** [1] - 48:10
**reserve** [1] - 41:20
**resolved** [2] - 44:25, 49:20
**resonates** [1] - 17:20
**respect** [2] - 66:11, 67:25
**respond** [3] - 19:20, 21:12, 33:5
**responding** [1] - 43:5
**response** [5] - 18:23, 42:2, 48:25, 49:2, 54:16
**responses** [7] - 19:1, 19:23, 39:11, 48:3, 55:20, 55:22, 55:23
**responsive** [1] - 45:18
**result** [1] - 46:25
**review** [4] - 31:2, 62:14, 62:17, 62:18
**reviewing** [1] - 62:10
**revised** [10] - 7:4, 7:5, 7:17, 59:19, 60:20, 61:5, 61:8, 61:9, 64:3
**revisit** [1] - 34:12
**rigid** [1] - 53:14
**road** [5] - 10:4, 12:15, 13:14, 21:3, 54:15
**ROLLO** [2] - 3:12, 3:20
**Rollo** [1] - 6:18
**room** [1] - 54:2
**ROSATI** [1] - 4:6
**round** [5] - 45:3, 45:18, 46:19, 47:2, 49:13
**rounds** [2] - 43:20, 45:2
**routinely** [1] - 24:18
**royalty** [6] - 59:24, 61:16, 62:21, 63:9, 63:14, 63:16

**Rule** [7] - 11:12, 12:3, 13:16, 13:21, 13:22, 16:11, 33:2
**rule** [7] - 11:15, 12:2, 12:5, 12:11, 13:16, 25:3, 49:16
**ruled** [1] - 7:7
**rules** [6] - 22:20, 23:22, 49:7, 66:16, 66:20, 67:22
**Rules** [3] - 11:22, 23:10, 65:15
**ruling** [1] - 44:8
**run** [4] - 15:4, 24:9, 42:3, 51:8

## S

**sandbagged** [1] - 41:17
**sandbagging** [1] - 27:14
**sat** [1] - 47:6
**save** [1] - 50:20
**schedule** [2] - 25:19, 27:19
**scheduling** [8] - 21:13, 21:17, 22:23, 25:14, 46:2, 49:17, 57:4, 57:5
**SCHIFF** [1] - 2:18
**Schiff** [1] - 5:19
**science** [1] - 29:19
**scope** [4] - 17:22, 44:6, 50:16, 54:3
**seal** [1] - 70:15
**seated** [1] - 5:7
**second** [7] - 15:23, 17:14, 19:22, 34:2, 34:16, 37:12, 38:12, 42:17, 42:19, 46:18, 49:5, 49:25, 54:25, 55:21, 66:3, 66:9, 70:22
**secondary** [7] - 43:5, 43:22, 45:19, 55:24, 56:6, 59:2, 59:23
**see** [12] - 6:13, 7:20, 17:15, 23:16, 23:19, 28:1, 56:5, 56:6, 69:19, 70:3, 70:4
**seeing** [1] - 48:2
**seem** [1] - 33:22
**sent** [1] - 48:9
**sentence** [2] - 8:23, 10:12
**separate** [1] - 19:3
**seriously** [1] - 12:1
**serve** [3] - 18:22, 22:1, 22:2

**served** [7] - 11:24, 19:1, 19:17, 24:24, 25:4, 25:7, 25:8
**serving** [1] - 25:3
**set** [3] - 20:15, 30:22, 55:21
**several** [4] - 25:21, 25:22, 46:9, 62:15
**Shaun** [2] - 5:12, 59:13
**SHAUN** [1] - 2:4
**Shaw** [1] - 5:8
**SHAW** [3] - 1:19, 1:20, 5:9
**Sherry** [1] - 6:18
**SHERRY** [2] - 3:12, 3:20
**short** [1] - 30:10
**shot** [1] - 18:17
**show** [13] - 18:3, 18:9, 32:22, 36:11, 37:24, 40:16, 40:19, 42:2, 53:8, 63:19, 63:20, 64:2, 69:14
**showed** [3] - 38:2, 53:1, 53:19
**showing** [4] - 52:1, 53:2, 59:1, 63:21
**side** [8] - 17:7, 27:2, 31:15, 34:20, 50:3, 51:18, 54:4, 63:2
**sided** [1] - 35:4
**sides** [1] - 34:18
**sideshow** [1] - 32:16
**sign** [2] - 32:13, 39:8, 39:24
**significant** [2] - 63:15, 64:13
**signing** [1] - 42:5
**simply** [5] - 20:18, 56:16, 56:22, 58:6, 63:9
**single** [4] - 20:24, 32:9, 67:15, 67:18
**sitting** [1] - 55:15
**situation** [5] - 20:23, 21:2, 41:8, 47:10, 47:15
**six** [1] - 65:9
**skill** [1] - 39:1
**SLAYBACK** [1] - 1:9
**Slayback** [2] - 3:9, 6:6
**Sleet** [5] - 43:24, 45:14, 46:3, 46:4, 66:17
**Sleet's** [3] - 25:18, 49:6, 49:13
**smart** [1] - 45:11
**SMITH** [1] - 3:3
**Smith** [1] - 6:5

**sometime** [1] - 64:10
**somewhat** [1] - 35:14
**somewhere** [1] - 60:19
**SONSINI** [1] - 4:6
**soon** [3] - 9:19, 20:10, 58:24
**sorry** [8] - 6:13, 23:21, 30:2, 37:14, 37:19, 38:10, 58:14, 58:16
**sort** [4] - 46:23, 52:1, 53:4, 61:17
**sorts** [2] - 63:4, 69:10
**sought** [1] - 22:4
**sounds** [2] - 10:11, 26:4
**specific** [19] - 7:15, 8:14, 8:15, 9:20, 9:22, 10:9, 10:15, 10:16, 11:19, 13:12, 21:3, 24:12, 25:11, 33:8, 36:12, 37:24, 43:21, 53:17
**specifically** [3] - 12:6, 32:9, 54:24
**specificity** [1] - 10:13
**spelled** [1] - 54:24
**spend** [1] - 64:1
**spoken** [1] - 43:4
**stability** [2] - 30:25, 31:5
**stage** [5] - 11:2, 16:1, 17:10, 24:19, 71:25
**stand** [1] - 62:11
**start** [3] - 5:15, 6:24, 8:7
**started** [1] - 55:11
**statement** [1] - 28:11
**statements** [1] - 43:7
**STATES** [1] - 1:1
**step** [2] - 13:9, 53:10
**Steven** [3] - 6:18, 27:3, 65:7
**STEVEN** [2] - 3:12, 3:20
**sticklers** [1] - 66:19
**still** [7] - 33:8, 36:3, 39:15, 41:25, 56:3, 58:20, 64:18
**stories** [1] - 31:13
**story** [3] - 28:15, 39:13, 39:14
**strategy** [1] - 71:7
**stricken** [3] - 15:4, 15:19, 47:7
**strike** [23] - 9:2, 9:7, 9:23, 10:2, 10:22, 11:6, 11:8, 12:18, 13:7, 14:9, 21:6, 22:10, 24:18, 28:2,

33:7, 33:14, 41:11, 47:18, 51:22, 51:25, 62:23, 64:19, 64:22
**strikes** [1] - 41:15
**striking** [2] - 16:9, 42:22
**stringent** [1] - 24:3
**struck** [3] - 16:1, 16:12, 18:10
**stuff** [5] - 31:6, 58:22, 63:11, 67:19, 67:20
**submitted** [7] - 27:25, 29:11, 29:19, 30:18, 55:19, 56:1, 61:8, 65:9
**substance** [1] - 52:7
**substantive** [1] - 70:13
**success** [2] - 39:5, 53:3
**sudden** [1] - 52:17, 52:20
**Sue** [7] - 65:8, 65:9, 68:18, 69:2, 69:15, 71:2, 71:6
**sue** [1] - 69:6
**Sue's** [1] - 66:5
**sufficiency** [2] - 11:20, 14:4
**sufficient** [3] - 16:22, 21:10, 56:25
**suit** [1] - 67:12
**supplement** [1] - 25:9
**supplemental** [2] - 55:19, 55:21
**support** [2] - 51:23, 69:1
**suppose** [3] - 13:13, 24:7, 41:3
**supposed** [3] - 11:21, 35:15, 67:23
**Supreme** [2] - 53:11, 53:18
**switch** [1] - 54:11
**sympathetic** [2] - 49:1, 50:22
**sympathize** [1] - 49:9

## T

**table** [3] - 17:5, 51:12, 58:6
**talks** [2] - 30:14, 36:8
**tee** [1] - 18:2
**teeing** [1] - 54:13
**telephone** [1] - 6:25
**ten** [2] - 48:4, 62:14
**terms** [1] - 43:4
**test** [1] - 30:20
**testified** [2] - 28:7,

28:9
**testimony** [3] - 27:11, 28:6, 70:15
**Teva** [4] - 2:6, 5:10, 5:11, 59:14
**TEVA** [1] - 1:4
**textbook** [1] - 41:5
**THE** [201] - 1:1, 1:2, 4:2, 5:6, 5:14, 5:17, 5:21, 5:23, 6:3, 6:8, 6:13, 6:15, 6:20, 6:22, 8:3, 8:10, 8:18, 8:22, 9:1, 9:4, 9:10, 9:14, 10:11, 10:18, 10:21, 11:2, 11:12, 11:17, 11:20, 11:25, 12:5, 12:16, 12:20, 13:1, 13:15, 14:1, 14:23, 15:23, 15:25, 16:4, 16:12, 16:20, 17:1, 17:14, 17:20, 17:24, 18:6, 18:9, 18:16, 18:19, 18:25, 19:6, 19:10, 19:12, 19:22, 20:3, 20:7, 20:17, 21:7, 21:16, 22:6, 22:9, 22:16, 22:19, 22:23, 23:4, 23:15, 24:20, 24:22, 25:2, 25:14, 26:2, 26:15, 27:1, 28:4, 29:8, 29:12, 30:1, 30:15, 31:14, 31:22, 32:1, 32:5, 32:19, 33:17, 34:3, 34:19, 35:1, 35:11, 36:25, 37:4, 37:6, 37:14, 37:18, 37:21, 38:12, 38:15, 38:19, 39:1, 39:4, 39:8, 39:13, 39:21, 39:24, 40:4, 40:25, 41:2, 41:14, 41:23, 42:5, 42:8, 42:11, 42:13, 42:17, 43:9, 43:24, 44:3, 44:18, 44:23, 45:5, 45:8, 45:11, 45:16, 45:21, 45:23, 46:3, 46:10, 46:14, 47:19, 48:13, 48:15, 48:20, 49:15, 50:1, 50:5, 50:11, 50:20, 50:22, 50:25, 51:5, 51:17, 52:6, 52:14, 54:6, 54:11, 54:23, 55:5, 55:12, 56:24, 57:4, 58:14, 58:17, 59:4, 59:12, 60:1, 60:10, 60:14, 60:18, 60:23, 61:2, 61:4, 61:12,

61:20, 61:25, 62:23, 63:1, 63:11, 64:3, 64:6, 64:11, 64:21, 64:25, 65:3, 65:6, 65:22, 65:24, 66:18, 66:25, 67:4, 67:8, 67:11, 68:2, 68:11, 68:13, 68:19, 68:23, 69:20, 69:25, 70:2, 70:11, 70:19, 71:9, 71:11, 71:13, 71:15, 71:17, 71:22, 72:4, 72:6, 72:12, 72:15
**themselves** [1] - 58:25
**theory** [5] - 13:2, 13:5, 13:10, 13:11, 14:13
**therefore** [5] - 15:3, 15:19, 26:13, 28:1, 65:14
**they've** [6] - 25:13, 31:1, 42:13, 51:8, 60:5, 65:8
**thinks** [1] - 54:14
**third** [8] - 16:8, 37:13, 42:11, 47:2, 49:13, 49:22, 54:7, 66:9
**thousands** [1] - 70:8
**three** [10] - 19:16, 38:3, 39:4, 45:2, 46:25, 48:6, 55:7, 66:2, 66:4
**threw** [1] - 8:5
**Thursday** [1] - 1:13
**ticked** [1] - 48:6
**timeliness** [1] - 66:7
**timely** [1] - 27:21
**timing** [7] - 19:16, 20:20, 22:25, 27:7, 56:9, 56:11
**today** [4] - 5:19, 6:1, 6:6, 7:1
**took** [2] - 21:14, 37:8
**tooth** [1] - 52:25
**top** [2] - 18:14, 67:22
**topic** [1] - 57:6
**TQ** [1] - 67:25
**transaction** [1] - 58:11
**transcript** [4] - 35:7, 65:13, 70:16, 72:8
**transcripts** [1] - 47:5
**treated** [1] - 34:8
**trial** [8] - 11:3, 12:21, 12:22, 29:3, 40:2, 46:4, 46:7, 51:8
**trier** [1] - 29:1
**true** [2] - 43:13, 69:3
**truth** [1] - 28:15
**try** [3] - 44:15, 51:7, 53:16
**trying** [9] - 12:7,

12:23, 13:19, 13:24, 14:1, 14:2, 18:6, 63:5, 68:13
**turn** [1] - 42:24
**turned** [1] - 49:24
**turning** [1] - 29:12
**twice** [1] - 66:20
**two** [23] - 6:24, 8:15, 9:6, 9:20, 10:9, 10:12, 11:19, 14:14, 16:24, 19:16, 19:24, 20:6, 25:12, 29:8, 29:9, 31:13, 32:12, 39:1, 43:16, 43:19, 58:1, 61:10, 69:7
**two-sentence** [1] - 10:12
**type** [1] - 34:25

## U

**U.S.D.C.J** [1] - 1:16
**unclean** [3] - 8:24, 21:1, 21:4
**under** [7] - 11:21, 12:3, 16:11, 22:13, 22:19, 22:23, 49:6
**unduly** [1] - 64:14
**unfair** [1] - 59:11
**unfairly** [1] - 26:3
**unfortunate** [1] - 56:11
**UNITED** [1] - 1:1
**unless** [2] - 15:21, 31:3
**unlike** [1] - 45:23
**unrelated** [1] - 63:12
**untimely** [2] - 23:7, 71:23
**up** [23] - 6:25, 16:14, 18:2, 23:24, 28:12, 34:12, 37:18, 41:9, 42:18, 43:8, 47:18, 50:23, 54:14, 59:5, 59:7, 59:11, 59:16, 63:9, 64:1, 69:24, 71:3
**updated** [2] - 27:17, 60:20
**upend** [1] - 17:13
**upside** [1] - 69:18
**USA** [1] - 2:21

## V

**Valerie** [1] - 1:24
**validity** [8] - 15:3, 15:8, 15:14, 28:19, 28:24, 32:11, 45:9
**value** [5] - 57:1, 63:5,

63:17, 63:22, 64:13
**variety** [1] - 59:8
**various** [4] - 35:12, 53:1, 59:1, 61:24
**vehemently** [2] - 32:4, 32:6
**vehicle** [1] - 53:25
**version** [1] - 60:20
**view** [13] - 8:12, 11:7, 15:5, 15:16, 20:13, 20:19, 20:21, 22:13, 32:15, 32:25, 33:8, 41:12, 51:21
**viewed** [1] - 41:8
**violate** [1] - 29:13
**vs** [1] - 1:8

## W

**wait** [11] - 6:15, 25:10, 26:15, 41:23, 43:13, 43:24, 44:3, 49:5, 56:4
**waited** [1] - 51:10
**waive** [1] - 10:23
**wants** [4] - 21:4, 33:12, 33:14, 46:20
**Washington** [1] - 2:4
**waste** [1] - 54:14
**WATKINS** [1] - 2:9
**Watkins** [3] - 5:11, 5:13, 66:1
**website** [1] - 7:12
**weeds** [1] - 51:10
**week** [2] - 20:5, 20:12
**weeks** [6] - 19:16, 20:1, 20:6, 24:25, 25:21, 25:22
**whatnot** [1] - 30:25
**whole** [5] - 16:20, 28:13, 28:15, 52:18, 53:15
**willfully** [1] - 15:11
**WILLIAMS** [1] - 2:2
**Williams** [2] - 7:23, 59:14
**willing** [1] - 32:12
**Wilmington** [1] - 1:13
**WILSON** [1] - 4:6
**WINDELS** [1] - 3:6
**Windels** [1] - 6:7
**window** [1] - 67:14
**wishes** [1] - 12:11
**withhold** [1] - 65:16
**witness** [4] - 28:6, 28:8, 30:15, 30:16
**witnesses** [4] - 28:10, 29:8, 29:9, 56:9
**word** [4] - 17:16, 35:18, 59:9, 59:11

words [2] - 8:24, 15:11
**worry** [1] - 40:4
**written** [1] - 55:25
**wrote** [1] - 20:11

## Y

**Yates** [3] - 29:23, 30:1, 30:14
**Yates'** [4] - 15:2, 27:25, 28:4, 28:23
**year** [1] - 7:5
**York** [1] - 2:10
**York)** [1] - 2:10

# EXHIBIT B

1

1                 IN THE UNITED STATES DISTRICT COURT

2                 IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4
        TEVA PHARMACEUTICALS          :   CIVIL ACTION
5       INTERNATIONAL GMBH,           :
        CEPHALON, IN., and EAGLE      :
6       PHARMACEUTICALS, INC.,        :
                                      :   Redacted Version
7                    Plaintiffs,      :
                                      :
8           vs.                       :
                                      :
9       SLAYBACK PHARMA LIMITED       :
        LIABILITY COMPANY, et al.,    :
10                                    :
                     Defendants.   :   NO. 17-1154-CFC
11

12                              - - -

13                              Wilmington, Delaware
                                Thursday, May 16, 2019
14                              3:34 o'clock, p.m.

15                              - - -

16      BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

17                              - - -

18      APPEARANCES:

19
                    SHAW KELLER LLP
20                  BY:  JOHN W. SHAW, ESQ.

21
                              -and-
22

23

24
                                     Valerie J. Gunning
25                                   Official Court Reporter

APPEARANCES (Continued):


WILLIAMS & CONNOLLY LLP
BY:  DAVID I. BERL, ESQ.
ADAM HARBER, ESQ., and
SHAUN P. MAHAFFY, ESQ.
(Washington, D.C.)


Counsel for Plaintiff
Teva Pharmaceuticals International GmbH
& Cephalon, Inc.


LATHAM & WATKINS LLP
BY:  DANIEL G. BROWN, ESQ. and
MICHELLE L. ERNST, ESQ.
(New York, New York).


Counsel for Defendant
Eagle Pharmaceuticals, Inc.


FARNAN LLP
BY:  BRIAN FARNAN, ESQ.


-and-


SCHIFF HARDIN LLP
BY:  KEVIN M. NELSON, ESQ.
(Chicago, Illinois)


Counsel for Defendant and Counterclaim
Plaintiff Fresenius Kabi USA LLC

---

**APPEARANCES (Continued):**


THE DEVLIN LAW FIRM LLC
BY:  JAMES M. LENNON, ESQ.


-and-


WILSON SONSINI GOODRICH & ROSATI
BY:  DENNIS GREGORY, ESQ.


Counsel for Defendant
Mylan Pharmaceuticals


- - -

---

3

APPEARANCES (Continued):


SMITH, KATZENSTEIN & JENKINS LLP.
BY:  EVE H. ORMEROD, ESQ.


-and-


WINDELS MARX LANE & MITTENDORF LLP
BY:  JAMES P. BARABAS, ESQ.


Counsel for Defendant
Slayback Pharma Limited Liability Company,
et al.


HAHN LOESER & PARKS LLP
BY:  STEVEN FELDMAN, ESQ. and
SHERRY L. ROLLO, ESQ.

Counsel for Defendant
Apotex Inc. and Apotex Corp.


FLASTER GREENBERG P.C.
BY:  JEREMY S. COLE, ESQ.


-and-


FLASTER GREENBERG P.C.
BY:  STEVEN E. FELDMAN, ESQ.,
SHERRY L. ROLLO, ESQ. and
JEFFREY A. COHEN, ESQ.
(Chicago, Illinois)

Counsel for Defendant Apotex

---

5

1       P R O C E E D I N G S

3       (Proceedings commenced in the courtroom,
4   beginning at 3:34 p.m.)

6       THE COURT:  All right.  Good afternoon.  Please
7   be seated.
8       Mr. Shaw?
9       MR SHAW:  Good afternoon, Your Honor.  I'm here
10  representing Teva and Eagle.
11      Joining me for Teva from Latham & Watkins, David
12  Berl, Adam Harber and Shaun Mahaffy, and for Eagle from
13  Latham & Watkins, Dan Brown and Michelle Ernst.
14      THE COURT:  Good afternoon.  All right.  We have
15  folks here.  Let's start with, I guess, Mr. Farnan.
16      MR FARNAN:  Good afternoon, Your Honor.
17      THE COURT:  Good afternoon.
18      MR FARNAN:  Brian Farnan on behalf of Fresenius.
19  With me today is Kevin Nelson from Schiff
20  Hardin.
21      THE COURT:  All right.
22      MR FARNAN:  Thank you.
23      THE COURT:  Thank you.  And Mr. Lennon?
24      MR. LENNON:  Hello again, Your Honor.  Jim
25  Lennon on behalf of Mylan.

6

1    With me today on behalf of Mylan is Dennis
2  Gregory.
3    THE COURT:  Thank you.  Ms. Ormerod?
4    MS. ORMEROD:  Good afternoon, Your Honor.  Eve
5  Ormerod of Smith, Katzenstein & Jenkins on behalf of
6  Slayback, and I am joined today by James Barabas from
7  Windels Mark.
8    THE COURT:  Thank you.  All right.  Is that
9  everybody?
10    MR. COLE:  One more.  Good afternoon, Your
11  Honor.  I'm Jeremy Cole from Flaster Greenberg on behalf of
12  the Apotex defendants.
13    THE COURT:  I see.  Sorry.
14    MR. COLE:  That's okay.
15    THE COURT:  All right.  Thank you.  Wait.  Are
16  you with --
17    MR. COLE:  And I've got Jeff Cohen also from
18  Flaster Greenberg as well as Sherry Rollo and Steven
19  Feldman.
20    THE COURT:  Okay.
21    MR. COHEN:  Good afternoon.
22    THE COURT:  Good afternoon.  Is that everybody
23  then?  That is everybody.  Okay.  All right.
24    Let's start with, I've got the two proposed
25  orders.  Just, by the way, this came up in a telephone

7

1  conference.  So earlier today, this is really for the --
2  well, you all appear probably regularly.
3    Just going forward, the motions, somebody filed
4  one of the motions, which is the new, part of the revised,
5  April of this year revised patent order, and so if you could
6  do that for all discovery disputes going forward.
7    Have I already ruled that the April 22, 2019
8  procedures are in place in this case?  All right.  So why
9  don't I do that.
10    So for the record, the briefing requirements,
11  discovery procedure requirements that are in the April 22nd,
12  2019 form patent order on the website will apply in this
13  case.  And there's one caveat though already, which is when
14  you file the motion for disputes like this, if you can
15  attach to that motion the order that has the specific form
16  of relief requested, I would appreciate that.  All right?
17  That's not in the revised order, but in the revised order it
18  says file it with a letter.  All right?  All right.
19    So then let's get to the first dispute, which is
20  the -- let's see.  Let's go with the plaintiffs first.  All
21  right.
22    MR. HARBER:  Good afternoon, Your Honor.
23  Adam Harber from Williams & Connolly on behalf of the
24  plaintiffs.
25    I can take the issues in whatever order Your

8

1  Honor would like or I can just move in the order that
2  they're in our letter if you have no preference.
3    THE COURT:  Well, you know, I don't know why the
4  defendants didn't follow the order you laid out in your
5  letter.  It kind of threw me for a loop.  I'm curious why.
6  Given that, you can go in whatever order you want.
7    MR. HARBER:  Okay.  So I will start with the
8  inequitable conduct/unclean hands issue which applies in the
9  case.
10    THE COURT:  Did you move to dismiss?
11    MR. HARBER:  We didn't, Your Honor, because
12  there wasn't a -- in our view, there wasn't an inequitable
13  conduct allegation that was properly in their answer.  I
14  mean, in this case they have injected a specific allegation
15  alleging fraud against two specific individuals whose names
16  appear nowhere in their amended answer.
17    So --
18    THE COURT:  Do they allege inequitable conduct
19  in the answer?
20    MR. HARBER:  In Apotex's answer only, the 28th
21  additional defense --
22    THE COURT:  Right.
23    MR. HARBER:  -- is a sentence that says, that
24  contains the words inequitable conduct and unclean hands,
25  but there's otherwise no detail.

9

1    THE COURT:  You didn't move to dismiss?
2    MR. HARBER:  We didn't move to dismiss or strike
3  that.
4    THE COURT:  Right.  So why should I be dealing
5  with this now?
6    MR. HARBER:  I think for two reasons if we're
7  focused on the facts that plaintiffs didn't move to strike
8  or move to dismiss the answer at the time.
9    One is --
10    THE COURT:  No.  I mean my point is that you
11  didn't move to dismiss.  One of your arguments is it was
12  inadequately pled.  Right?
13    MR. HARBER:  That's correct, Your Honor.
14    THE COURT:  All right.  And now, but you didn't
15  move to dismiss.  Fair enough.  You didn't lose your right
16  to argue, you know, later on that you can't present it.  So
17  why now?
18    MR. HARBER:  Because their -- we now have and we
19  raised it as soon as we had it an expert report that alleges
20  a specific allegation based on fraud against two specific
21  individuals in the case, and so whatever was in that answer
22  that Apotex filed certainly wasn't the specific allegations
23  which we wouldn't have known to move to strike or dismiss,
24  and the implication of saying that if a party doesn't
25  move -- you know, go through the 50 affirmative defenses

1 that a party puts in its answer at the time and in every

2 case move to strike or dismiss them for being inadequately

3 pled, that they have closed the door to any permutation of

4 that defense that a party may inject down the road is

5 essentially going to create one of these motions in every

6 case.

7 　　　So we think it's not -- A, we don't think it's

8 the proper procedure.  But, B, even if it was, whatever it

9 was that was in their amended answer is not the two specific

10 inequitable conduct allegations.

11 　　　THE COURT:  Well, it sounds like you just said a

12 one or two-sentence thing.  It doesn't identify anything

13 with specificity.

14 　　　MR. HARBER:  That's right.  But they have to,

15 and they are alleging a specific -- they are now for the

16 first time in the case alleging a specific allegation of

17 fraud, and that allegation of fraud has to be pled.

18 　　　THE COURT:  I'm confused.  I mean, you know,

19 they alleged that you allege in a pleading.

20 　　　MR. HARBER:  Right.

21 　　　THE COURT:  So they alleged in a pleading and

22 you didn't move to strike or dismiss the pleading.  Right?

23 And you don't waive your ability to challenge that defense,

24 but why in the context of an expert report are we litigating

25 this?

1 　　　MR. HARBER:  Because --

2 　　　THE COURT:  At this stage as opposed to a motion

3 in limine on the eve of trial, as far as a pretrial order?

4 I don't understand.

5 　　　MR. HARBER:  Well, because we think it's a

6 proper motion to strike.  They have in their expert reports

7 a defense that in our view was not adequately pled and the

8 proper place to deal with that is in a motion to strike.

9 　　　I ask that those improperly pleaded allegations

10 come out of the case before we're forced to go through

11 expert --

12 　　　THE COURT:  So what Federal Rule of Civil

13 procedure is this?

14 　　　MR. HARBER:  It would just be, they can't -- I'm

15 not familiar with the rule, but they can't include in the

16 case an allegation that they have not pleaded.

17 　　　THE COURT:  They did plead it.

18 　　　MR. HARBER:  But they have not pled the -- there

19 are two specific inequitable conduct allegations.

20 　　　THE COURT:  Your argument is the sufficiency of

21 the pleading, so when are you supposed to raise that under

22 the Federal Rules of Civil Procedure?

23 　　　MR. HARBER:  Our belief is we were not on notice

24 until they served their expert report.

25 　　　THE COURT:  You were on notice they had an

1 inequitable conduct defense.  I mean, seriously, just tell

2 me in the rule where, you know, I'm familiar with pleading

3 related arguments under Rule 12.

4 　　　MR. HARBER:  Right.

5 　　　THE COURT:  There's a motion.  The rule

6 specifically provides for it.  I'm aware of motions in

7 limine.  I'm just trying to figure out procedurally why

8 we're dealing with this now.

9 　　　MR. HARBER:  I don't know what to say, Your

10 Honor, other than what I've already said, which is there

11 wasn't -- the rule that the Court wishes to create is that

12 in every case we have to go through and move at the time on

13 all 50 defenses that as a matter of form these defendants

14 put in their cases but which are clearly inadequate to

15 allege something down the road, we can do that.

16 　　　THE COURT:  Let's say your expert said that the

17 patent was invalid because it had too many pages.  Are you

18 moving to strike that?

19 　　　MR. HARBER:  I don't --

20 　　　THE COURT:  Isn't that his opinion?  You can

21 argue his opinion what we get to trial or you can file a

22 motion in limine when we get to trial and we deal with it

23 then.  I'm just trying to understand why we're dealing with

24 it now.

25 　　　MR. HARBER:  Well, because their --

1 　　　THE COURT:  So a hypothetical.  He put forth a

2 theory of invalidity you never heard of.  What do you do at

3 that point?

4 　　　MR. HARBER:  I think in that case it wouldn't be

5 a matter of pleading, it would be if there was a theory of

6 invalidity that wasn't in the invalidity contentions, the

7 proper procedure for that would be to move to strike

8 something that wasn't in the invalidity contentions.  But

9 what we're dealing with here is one step beyond that, where

10 it's not just a theory that wasn't properly identified in

11 contentions.  It's a -- it's a theory that carries with it

12 specific particular pleading requirements that the other

13 party didn't meet.  So I mean, I suppose we can do this as a

14 motion in limine down the road.

15 　　　THE COURT:  Can you point to me anything in the

16 rule -- I mean, let's look at Rule 12.  Defenses and

17 objections, when and how presented.  Motion for judgment on

18 the pleadings.

19 　　　I mean, I'm just trying to figure out, you're

20 saying this is an inadequate pleading.  I'm familiar that

21 Rule 12 allows for such motions to be brought.  Aren't there

22 time limitations placed on that pursuant to Rule 12?

23 　　　MR. HARBER:  Yes, but, Your Honor, again, I

24 appreciate the point you're trying to make, but I think our

25 point --

14

1         THE COURT:  I'm not trying to make a point.  I'm

2  trying to understand your point.

3         MR. HARBER:  Well, our point is it's not that

4  it's -- we are not attacking the sufficiency of the pleading

5  as such.  We are saying that the defense that was injected

6  into the case in the expert report is not a defense that

7  there is correspondingly, correspondingly adequate pleading

8  for them to maintain in the case.  And we believe the

9  proper way to address that is in a motion to strike so

10  that we don't have to proceed through expert discovery and

11  take our time cross-examining their expert and adduce

12  evidence, and when this wasn't even during fact discovery,

13  they never advised us that this was a theory they had in the

14  case.  They had not named these two individuals anywhere as

15  people they believed committed fraud.

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████

23         THE COURT:  Okay.  Anything else on that

24  argument?

25         MR. HARBER:  The other argument that I take the

15

1  defendants to be making is that the allegations in Dr.

2  Yates' report that go to inequitable conduct/unclean hands

3  are somehow relevant to general validity and therefore

4  shouldn't be stricken even if the Court finds they can't run

5  an inequitable conduct defense, and that in our view just

6  isn't correct.

7         The cases they cite on this are cases dealing

8  with the presumption of validity jury instruction.  They are

9  not cases that say that a party without adequate pleading

10  can accuse another party of having engaged in, and to use

11  the words that their expert used, knowingly, willfully lying

12  or otherwise misleading the Patent Examiner in an apparently

13  fraudulent effort to gain patent approval.  That is not a

14  general validity defense that should remain in the case

15  absent a proper pleading of inequitable conduct.  And so

16  it's our view that these, that this portion of the report

17  is -- bears no relevance, it wasn't properly pled, it wasn't

18  properly before in the case during fact discovery as it

19  ought to have been, and it therefore should be stricken from

20  the expert report now.

21         I can move on to the next issue unless Your

22  Honor --

23         THE COURT:  No, no.  Just give me a second.

24         MR. HARBER:  Okay.

25         THE COURT:  Do you know of any case where a

16

1  Court struck an expert report at this stage in the

2  litigation, or portions of the expert report?

3         MR. HARBER:  Yes.

4         THE COURT:  All right.  And which one?

5         MR. HARBER:  I believe it's not on this issue,

6  but I mean in the -- the cases that we've cited, just to use

7  examples of what's in our letter, the Innogenetics case that

8  we've cited on the third issue in our brief is the Federal

9  Circuit affirming a Court, the District Court striking an

10  expert's report, portions of an expert report as

11  insufficient under Rule 26, I believe.

12         THE COURT:  When was it struck?

13         MR. HARBER:  I don't have the exact details.  I

14  can follow up, Your Honor, on this point.  It's my

15  understanding, it has been my practice that this is, this is

16  generally done when the expert report contains something

17  that's not properly disclosed.

18         You know, for example, I'm litigating cases

19  right now in California --

20         THE COURT:  I thought the whole purpose of the

21  expert report is when he or she does disclose, and then

22  normally the battle is whether there was a sufficient

23  disclosure in the report.

24         MR. HARBER:  That is -- there are two issues.

25  That's certainly one.

17

1         THE COURT:  Yes.

2         MR. HARBER:  One issue though is you proceed

3  through -- for example, Delaware has contention requirements

4  where the parties have to put their contentions on the

5  table, they have to answer interrogatories, they have to

6  disclose generally what their contentions are to the other

7  side so that there can be an orderly taking of fact

8  discovery, and so if it were the case that a party could

9  ignore all of those requirements and then get to the expert

10  report stage and then put in on issues where they had the

11  burden like this a bunch of contentions and allegations that

12  the other party wasn't on notice of during fact discovery,

13  that would upend that procedure of contentions.

14         THE COURT:  All right.  Hold on a second.

15         Well, is there any discovery?  I don't see the

16  word contention.  Maybe it's in here.  Is there any

17  discussion in your letter about inadequate contentions?

18         MR. HARBER:  Well, that is not the basis -- I

19  was using that as an example --

20         THE COURT:  That actually resonates with me, so

21  I get that.  That's why we have contentions and that limits

22  the scope of litigation, and that I have seen.

23         MR. HARBER:  Right.

24         THE COURT:  But you didn't argue that as far as

25  I can tell.  All you're arguing is there was an inadequate

18

1   pleading at the very beginning of the case and that somehow
2   now we can tee that up. That's what I'm getting at, can you
3   show me any case? Don't get defensive. I'm not being
4   critical of you.
5           MR. HARBER: Right.
6           THE COURT: I'm trying to figure out the right
7   thing.
8           MR. HARBER: Yes.
9           THE COURT: Okay. So can you show me a case
10  that says, hey, in the middle of litigation, a Court struck
11  portions of an expert report because of an inadequate
12  pleading?
13          MR. HARBER: I'm not aware of those off the
14  top of my head. If Your Honor would like, we can collect
15  those.
16          THE COURT: I think it's too late. You get your
17  shot. That's part of the problem here.
18          MR. HARBER: Well, no, Your Honor. I think --
19          THE COURT: Look, it's too late if you don't
20  have a case.
21          So let me ask this then: How about in
22  discovery? Did you serve any discovery that would have
23  required in response a contention about inequitable conduct?
24          MR. HARBER: Yes.
25          THE COURT: All right. And what were those?

19

1           MR. HARBER: We served interrogatory responses
2   asking for their invalidity defenses, and there was a
3   separate requirement to give both initial and then final
4   invalidity contentions.
5           Now --
6           THE COURT: I inherited this case. Where are we
7   on contentions?
8           MR. HARBER: Those are done because we're now
9   four months into expert discovery.
10          THE COURT: Okay.
11          MR. HARBER: The first --
12          THE COURT: So was there a contention made about
13  inequitable conduct?
14          MR. HARBER: The first time that a contention
15  was made about inequitable conduct, I don't remember the
16  exact timing. I believe it was two or three weeks after the
17  close of fact discovery, which is when the parties served
18  their final contentions, so we got their final invalidity
19  contentions at that point. But by then, there was no
20  ability for us to take any discovery to respond to any of
21  the contentions they were making.
22          THE COURT: So we'll get to that in a second.
23          Did the contention responses or the contentions
24  made, did they reference the two people that are in the
25  expert report?

20

1           MR. HARBER: Yes, for the first time, weeks
2   after the close of fact discovery.
3           THE COURT: But it's before you got the expert
4   report?
5           MR. HARBER: Yes. I believe it was the week
6   before or two weeks before.
7           THE COURT: You didn't hear about it in the
8   expert report. You actually heard about it first in their
9   contentions?
10          MR. HARBER: And I believe as soon as we got the
11  contentions, we wrote them and said this is improper. This
12  wasn't something that you pleaded. And then when we a week
13  later got the expert report, in our view, the operative
14  document for determining what was or wasn't proper was that
15  one because that was the latest document that set forth
16  their defenses.
17          THE COURT: Okay. Anything else?
18          MR. HARBER: No. I mean, I would simply say,
19  Your Honor, that the -- frankly, it's so, in our view, I
20  understand the timing concern and the timing question from
21  Your Honor, but in our view, it's so elemental in these
22  cases that a party can't -- I mean, to open the door to --
23  I mean, what this will do is create a situation in which
24  every single generic defendant in these cases will now
25  include the patents are invalid for inequitable conduct and

21

1   unclean hands, and then in every case the party will have to
2   then file a motion, because lest they be in a situation down
3   the road where when there's a specific defense on
4   inequitable conduct or unclean hands that the party wants to
5   make, they would be told, well, it's too late. You should
6   have moved to strike --
7           THE COURT: I disagree with you. Here's what I
8   think. I think what a party will do is, they will propound
9   discovery and make sure that before the end of fact
10  discovery they have in hand sufficient portion of the
11  contentions that they know they can develop the necessary
12  factual discovery they need to to respond to it.
13          Was the scheduling order in this case -- it was
14  created before I took over?
15          MR. HARBER: It was, Your Honor.
16          THE COURT: I was no part of that. My
17  scheduling order doesn't contemplate that, and as a
18  litigant, I wouldn't allow for it. So I don't think we will
19  receive -- if I decline your request for relief here, I do
20  not think the answer would be, I'm going to now be inundated
21  with motions to dismiss. I think the answer is going to be,
22  people are going to be careful when they engage in
23  contention discovery to make sure they know what the
24  contentions are, and as a judge, I would make sure they get
25  it.

22

1        MR. HARBER: But, Your Honor, we did serve -- I

2   mean, to be clear, we did serve an interrogatory during fact

3   discovery, at the very beginning of fact discovery, that

4   sought their invalidity defenses. They didn't -- this one

5   wasn't in it until after discovery had closed.

6        THE COURT: So did you come to me? I mean, that

7   I can understand.

8        MR. HARBER: We're coming to you now.

9        THE COURT: Well, no. You're coming to me to

10   strike an expert report. That's what you are coming to me

11   for.

12        MR. HARBER: Right, but that would be the

13   request under -- for the contentions, that is our view the

14   proper relief for putting something in an expert report that

15   wasn't pleaded and that wasn't disclosed.

16        THE COURT: It was disclosed. You just told me

17   it was disclosed.

18        MR. HARBER: Not during fact discovery.

19        THE COURT: But it had to be disclosed under the

20   rules. Right?

21        MR. HARBER: No. It was disclosed at the very

22   last opportunity they had to disclose it.

23        THE COURT: But under the scheduling order, I

24   guess they were permitted to do that. Right?

25        MR. HARBER: I think the timing of that didn't

23

1   mean that they could hold a defense and put it in at that

2   time and deny us fact discovery on it if that was something

3   that should have been pleaded earlier.

4        THE COURT: Well, I don't know that. I mean, I

5   thought you just told me that they alleged it in their

6   contentions and you didn't allege the contention was

7   untimely.

8        MR. HARBER: Because we think that the clearer

9   argument here is that they're attempting to allege a defense

10   that wasn't particularly as the Federal Rules

11   require. And it is hard for us to have moved and said, you

12   can't accuse Dr. Krill of inequitable conduct earlier

13   because that wasn't what's in their -- that wasn't what was

14   in their answer.

15        THE COURT: Now, I'm looking for any -- you

16   know, I don't see any cases in your briefing that tell

17   me, that give me any comfort that any judge has ever done

18   this that is in the right context. You made a pleading

19   argument. That's all I see in your brief, and I'm just at a

20   loss.

21        MR. HARBER: Okay. I'm sorry, Your Honor. You

22   know, again in this case we believe that the rules are clear

23   regardless of the context. I mean, it's not something that

24   comes up, because frankly, it's such an improper thing to

25   do, it's hardly something that would be before courts all of

24

1   the time.

2        It's clear that there are, from the Federal

3   Circuit on down, incredibly stringent pleading requirements

4   for these defenses. Apotex doesn't contest that in their

5   letter, it's so clear that that is the law.

6        So it's hard for me to imagine what the case

7   would be that deals with this, but I suppose our point

8   on this is in the brief. We believe that it would be an

9   end run around the pleading requirements and not something

10   that we necessarily would have been on notice to raise

11   earlier.

12        Again, if Your Honor would like specific case

13   law, I understand your point about the briefing being too

14   late at this point. Of course, we didn't realize that this

15   would be a concern that Your Honor had. We're happy to

16   address it after the hearing if it is, because we think it

17   is a general -- as a matter of general practice, Courts

18   routinely strike things that weren't properly disclosed,

19   that weren't properly pled at this stage.

20        THE COURT: So I get the improperly disclosed.

21        MR. HARBER: Right.

22        THE COURT: You've said it was in the contention

23   interrogatories, in the contention, and that you've said

24   they were served before the expert report. Right?

25        MR. HARBER: Weeks after the close of fact

25

1   discovery.

2        THE COURT: So, but you've also told me that

3   they didn't break a rule by serving the contentions when

4   they did, that that was contemplated they would be served

5   after the close of fact discovery.

6        MR. HARBER: Right, but that's different.

7   Saying that the contentions will be served then is different

8   from saying that because we've served an interrogatory, you

9   have an ongoing duty to supplement, you can't -- it is not

10   the case that they can wait until the last minute after fact

11   discovery has closed to tell us that they have specific

12   fraud allegations against two of our employees. I mean,

13   that's what they've done.

14        THE COURT: Why would you agree to a scheduling

15   order that have contentions that would come after the close

16   of fact discovery?

17        MR. HARBER: I can't recall whether that was

18   something in Judge Sleet's at the time form order, whether

19   it was something -- what schedule required that. I mean, in

20   this case, for example, I know that the defendants asked for

21   several extra weeks on that deadline and we extended their

22   deadline for several extra weeks for them because they

23   needed additional time to do those contentions.

24        You know, I don't -- I don't think that that,

25   whatever the case is, that doesn't relieve the prejudice of

26

1  us not knowing that during fact discovery.
2          THE COURT:  I'm not saying you're not
3  prejudiced.  The question would be whether you are unfairly
4  prejudiced.  But it sounds like you agreed to an order that
5  allowed for contentions to come after the close of fact
6  discovery.
7          MR. HARBER:  Right.  But, Your Honor the
8  implication of what you are saying was because that's the
9  date for final contentions, whatever they put in there is
10  proper, is that no party would ever have to put anything in
11  their initial contentions or answer interrogatories, because
12  as long as it's in their final contentions that's all good,
13  and therefore that's the way every one of these cases would
14  proceed, which is --
15          THE COURT:  Wait.  It would proceed only that
16  way if a party agreed to allow the deadline to come after
17  the fact discovery.
18          MR. HARBER:  But, Your Honor, it's a hard
19  question in these cases because what defendants would say
20  is, well, how come can we do final contentions before we
21  finish taking depositions?
22          How can we -- so it's -- it's a constant
23  balance, but I think it doesn't -- that date can't possibly
24  mean that everything that happens before that is irrelevant.
25  And that's our only point.

27

1          THE COURT:  All right.  Let's hear from the
2  other side.
3          MR. FELDMAN:  Good afternoon Your Honor.  Steven
4  Feldman on behalf of the Apotex defendants.
5          As Your Honor pointed out, and it was admitted,
6  we did plead it.  It was also in the contentions.
7          Regarding the timing, Your Honor, just to be
8  perfectly clear here, the critical deposition of the patent
9  lawyer didn't take place until January.  Okay.  And then
10  when the contentions were due was early February, and that's
11  when it was included.  But it was based on that testimony
12  elicited in discovery, but that discovery, they didn't
13  produce them until very late in the case, and that's when it
14  all happened.  It's not like we were sandbagging, something
15  like that.
16          When the facts became apparent in that
17  deposition, we included them.  We updated our interrogatory
18  to refer to the contentions and it was all within the
19  schedule that was agreed to by the parties.
20          So based on that, Your Honor, I think that we're
21  perfectly timely.  You know, if they ask to take every
22  allegation from the contentions and put it in the pleading,
23  amend the pleading, we can certainly do that if it would
24  make them feel better.  They were provided notice of it, and
25  notice before Dr. Yates' expert report was submitted.  So

28

1  therefore, I just don't see what the issue is here,
2  particularly in the context of a motion to strike portions
3  of an expert report.
4          THE COURT:  And Dr. Yates' opinions on this
5  issue, they are limited in their factual predicate to the
6  testimony of the witness that you just described who
7  testified in January.  Is that correct?
8          MR. FELDMAN:  There's also a witness who
9  testified I believe in December, but it's both of those,
10  both of those witnesses, the predicate for it.
11          And just to be clear, you know, every statement,
12  they included portions of his expert report.  I can hand up
13  the whole expert report.  Every portion is not just to
14  defraud.  It's just that they didn't tell the Patent Office
15  the whole story or the truth.  They were telling one thing
16  to the FDA concerning certain facts and they were telling
17  something else to the Patent Office, and that's the real
18  point.  And that goes directly to the presumption of
19  validity, invalidity, because the presumption of validity is
20  built upon the premise that the Patent Office was allowed to
21  do its job properly and given the information to do its job,
22  and when that wasn't the fact, and we can demonstrate it and
23  we have demonstrated it in Dr. Yates' reports, in our
24  contentions, then that presumption of validity is basically
25  decimated, and what happens is, is that the Courts allow,

29

1  the trier of fact is allowed to determine the facts based on
2  in the record that gets put in.
3          And that's what we intend to do at trial.
4  That's what this expert report is designed to do.  They're
5  clearly on notice of all of these things and obviously it
6  bothers them, but the reality is they're on notice and they
7  have been on notice.
8          THE COURT:  And the two witnesses, who are the
9  two witnesses?  Tell me about them again.  One in December,
10  one in January.
11          MR. FELDMAN:  Yes.  So one submitted --
12          THE COURT:  You were turning around.
13          MR. FELDMAN:  I don't want to violate any
14  protective order, give names or whatever.  I can mention
15  names or I can describe them generally?
16          MR. HARBER:  Yes.



30

32

1    THE COURT:  Mr. Feldman just described the
2  factual basis.  Did that come out at the deposition?
3    MR. HARBER:  Obviously, Your Honor, we
4  vehemently disagree with what Mr. Feldman said about -- -
5    THE COURT:  You say obviously.  Who knows?
6    MR. HARBER:  Well, I mean, we vehemently
7  disagree.  All of the information was before the Patent
8  Office, and frankly, without getting into the details of
9  specifically rebutting every single factual point
10  Mr. Feldman just said, the only fact that Your Honor needs
11  to know about the validity of these arguments is that only
12  two of the four defendants in this case were even willing
13  to sign onto the expert report in which this was
14  articulated.
15    So this is, in our view, these are just -- it's
16  a complete sideshow.  Ir is baseless.  Part of the reason
17  why they may not have moved to amend this is because they
18  know that that would be, that --
19    THE COURT:  Move to amend?
20    MR. HARBER:  Move to amend their answer to
21  actually pleading with particularity, I apologize, is
22  because the law on this would so clearly show that their
23  allegations were futile.
24    Perhaps, Your Honor, what the proper thing to do
25  here is, it is our view the law, regardless of when a party

31

33

1  moves, there has to be -- the case law from the Federal
2  Circuit and Rule 9(b) says that for a party to be
3  articulating these, these defenses in a case, there has to
4  be a particularized pleading that asserts them.  And so if
5  they want to move to amend at this point and we can respond
6  to that, maybe that is the answer that gets around the
7  motion to strike and then the issue can come before the
8  Court.  But it is still our view that there are specific
9  pleading requirements extremely well developed in the law
10  about when a party can assert these defenses, and they have
11  not complied with them in this case.
12    And whether, what Your Honor wants to do is a
13  motion -- if Your Honor doesn't want to do a motion to
14  strike or wants to hear more, or however Your Honor would
15  prefer it, we believe it's improper to allow these to
16  proceed in the case without that particularized pleading.
17    THE COURT:  All right.  I'm going to deny the
18  application on this.  I mean, it's without prejudice.  If
19  the plaintiffs think there was some other basis on which to
20  address insufficient pleading or in a motion in limine,
21  there's apparently an inadequate basis based on the original
22  pleading.  That does not seem to me to be a discovery
23  dispute.  And so anyway the burden is on the plaintiffs, and
24  I'm going to deny the application.
25    Let's go to the next one.

34

1          MR. HARBER:  All right.  Thank you, Your Honor.
2          The second issue relates to the last time we --
3          THE COURT:  For the record, I don't think you're
4   prejudiced.  I mean, you have not demonstrated prejudice to
5   me.  The articulated prejudice was the inability to speak
6   with Dr. Krill, who is a former employee, and you were
7   present at the deposition.
8          So, again, just if it were to be treated as a
9   discovery dispute, I don't think there was prejudice, but
10  either way I'm going to deny the application, and I think
11  I've articulated it.  If there is an appropriate time to
12  revisit the issue, I'm sure you'll be able to come up with
13  one.
14         All right.  Next.
15         MR. HARBER:  Thank you, Your Honor.
16         The second issue is relating to the last time we
17  were before the Court on March 12th.  The Court ordered
18  certain narrowing to take place by both sides.
19         THE COURT:  Right.  So actually, I'm with you on
20  this.  Let's hear from the other side.
21         MR. NELSON:  Your Honor, Kevin Nelson for
22  Fresenius on behalf of the other defendants.
23         Your Honor, we think the issue here is much like
24  the issue with the inequitable conduct issue.  We think it's
25  the wrong time and wrong type of motion.

35

1          THE COURT:  I couldn't disagree with you more.
2   I thought it was pretty clear when we left here that you
3   were going to identify 40 prior art references.  I actually
4   sided with you against Mr. Berl and said I'm not going to
5   require identification of combinations at that point for the
6   narrowing, but I am going to require you, and I went back
7   and looked at the transcript.  I don't think it could have
8   been clearer.  You were to identify 40 prior art references
9   and you didn't.
10         MR. NELSON:  Your Honor, we actually did.
11         THE COURT:  Okay.  You did.  Then you in
12  56 pages of an expert report talked about various, it seems,
13  references that were not within the 40.  Now, I might be
14  wrong because I was somewhat frustrated with plaintiff.  I
15  was supposed to read 56 pages and figure out what all of
16  these references were and decide.  I don't know how you
17  expected me to decide whether they were among the 40.
18         So I'm accepting their word on that, but if you
19  tell me --
20         MR. NELSON:  Your Honor, that is incorrect,
21  because our expert reports were already in at the time that
22  they filed that motion.  So the 56 pages or whatever they
23  were citing, those references were already in.  The
24  narrowing came after the expert reports were already in.
25  But to be very clear, Your Honor, those background

36

1   references that they're fighting about right now that are
2   hypothetically going to be injected into these expert
3   reports now, they're not.  They're still in the background.
4   Those same 40 references are only being used for
5   invalidating purposes.
6          Now, yes, our experts do talk about background
7   references, but not in the context.  In the case law that
8   they cite, the case law that they cite clearly talks about
9   background references and invalidating references, and the
10  Court's say background references are fine as long as they
11  are not being used to show motivation or to invalidate a
12  specific limitation.  Our experts have never done that, Your
13  Honor.  The background references are clearly just
14  background.
15         And, Your Honor, to give this hypothetical a
16  little bit more meat, because I think that's the problem
17  here, Your Honor.  They are asking you to make a judgment
18  based on a problem that's not happening right now.  There is
19  no problem.
20         Their concern is we're going to take these
21  background references and move them into our invalidity case
22  and say, ah, this background reference meets this
23  limitation.  Our experts have not done that.  They are not
24  going to do that.
25         THE COURT:  So then why did you have any problem

37

1   with their order?
2          MR. NELSON:  First of all, their order is asking
3   for hypotheticals.
4          THE COURT:  No, no.  Let's go through the order.
5          MR. NELSON:  Okay.  Yes.
6          THE COURT:  And, again, it was very hard.  I
7   didn't go and check, but I'm just going to assume given who
8   counsel is, and reputable counsel, that they basically took
9   the expert report and they put through the accommodations.
10  Am I correct, Mr. Berl?
11         MR. BERL:  Yes, yes.  Your Honor.  I think we
12  may be conflating the second issue in our letter brief with
13  the third issue, but to answer that question, yes.
14         THE COURT:  Is the we meant the judge?  Sorry.
15         MR. NELSON:  So we're talking, Your Honor, about
16  their first request for relief, the background references
17  that they are saying.
18         THE COURT:  Hold up, hold up.
19         MR. NELSON:  Yes.  I'm sorry.  If I was
20  misunderstanding which issue --
21         THE COURT:  No.
22         MR. NELSON:  The 40 references are the ones that
23  we identified that are in our expert report that are only
24  used to show invalidity of the specific limitations.  That's
25  what our experts did.  They went not claim by claim, but

38

1 they went down to granular level limitation by limitation
2 and showed how those 40 references meet the limitation.
3 Again, they're across three different patents,
4 so, Judge there are a lot of different limitations. That's
5 why there's a lot of differences.
6 Again, they do refer to background references,
7 but the case law is very clear. Even the case that they
8 cite, it's permissible for background references.
9 And, Judge, background references are
10 something -- for instance, I'm sorry, Your Honor, if you are
11 reading something.
12 THE COURT: Yes. Just hold on one second. Hold
13 on.
14 MR. NELSON: Yes.
15 THE COURT: I was looking at your proposed
16 order, not their proposed order.
17 MR. NELSON: That could be a problem, yes. Feel
18 free to accept our proposed order.
19 THE COURT: Okay. So here is their proposed
20 order. Defendants may not rely on any reference not
21 identified in your letter, 40, including, but not limited
22 to, for the purpose of establishing that, one, the prior art
23 disclosed one or more claim limitations. You agree with
24 that.
25 MR. NELSON: Yes.

39

1 THE COURT: Two, a person of ordinary skill in
2 the art would have been motivated. You agree with that?
3 MR. NELSON: Yes.
4 THE COURT: Three, a POSA would have had a
5 reasonable expectation of success? You agree with that?
6 MR. NELSON: Exactly, Your Honor. Our
7 references have not done that.
8 THE COURT: Then I'm going to sign their order.
9 MR. NELSON: No. But, Your Honor, what I want
10 to be very clear about though, one issue, is we do have a
11 reply report coming out, so there may be some responses to
12 their expert.
13 THE COURT: That's a different story.
14 MR. NELSON: That's a different story. I agree.
15 I want to be very clear, we're still permitted to use
16 background references for the purpose for what they are
17 being used for and for the purpose of what the law allows
18 them to be used for. There should be no question of that.
19 As long as that's the issue, I don't think there's any issue
20 there.
21 THE COURT: So here is the problem. Right.
22 It's what does background mean. Right?
23 MR. NELSON: Yes.
24 THE COURT: I'm going to sign their order and,
25 you know, I just can't believe you're going to put in front

40

1 of a jury --
2 MR. NELSON: It's a bench trial. We're
3 definitely not going to do it.
4 THE COURT: Then you don't have to worry about
5 it. But I can't imagine this is going to be an issue.
6 MR. NELSON: The only time it becomes an issue,
7 and that's why we wanted the clarity, Your Honor. If they
8 call us out, if they take issue with something our expert
9 said, there's no way anybody would possibly know that.
10 Let's take, for instance, one of the limitations
11 is it's an antioxidant. Right. And so we have references
12 that say antioxidants are used in injectable formulations
13 all the time, and they'll criticize that. And we have
14 references that say antioxidants are used with bendamustine.
15 It's motivation to use the product. So that is prior art to
16 show motivation.
17 Now, if their expert comes back and criticizes
18 and says, well, nobody would use an antioxidant because of
19 certain properties or whatever, if we just want to show the
20 properties of an antioxidant, not that it meets a
21 limitation, because the properties of the antioxidant are
22 not a limitation. We don't want them to come back and say,
23 oh, you know, you can't educate the judge about the
24 properties.
25 THE COURT: But they are not going to do that.

41

1 MR. NELSON: I would hope not.
2 THE COURT: This is where it gets to absurdity.
3 Suppose there's a reference to a molecule and I ask a
4 question, what is a molecule? And do you think they are
5 going to object if you pull out a chemistry textbook to tell
6 me what a molecule is? They're not going to do that.
7 MR. NELSON: That's exactly, Your Honor, why we
8 viewed that as a hypothetical situation, because if that
9 issue came up, if our experts did pull a background
10 reference in and say, hey, this invalidates a limitation,
11 that's why they filed their motion to strike. That is why
12 they filed their motion in limine. That's why we view this
13 as an improper procedural motion.
14 THE COURT: I think that the reservation
15 language that you had would, it strikes me, motivate
16 somebody like the plaintiff to come to the Court and say, we
17 want to make sure we're not going to be sandbagged.
18 MR. NELSON: Well, let me make that clear. They
19 had the same exact reservation in their limitation when they
20 moved it down to 25 claims. They said we reserve the right
21 to bring new claims. So I think that issue is not in front
22 of the Court.
23 THE COURT: Wait.
24 MR. NELSON: Yes. That reservation was
25 primarily again because reply reports are still outstanding,

42

1   and we want to be able -- if we have to bring background
2   records in to show invalidity in response to one of their
3   criticisms, we need that flexibility.  We didn't want to run
4   to the Court and bother Your Honor.
5          THE COURT:  You did bother me, so I'm signing
6   the order.
7          MR. NELSON:  We didn't.
8          THE COURT:  Well, whoever did.
9          MR. NELSON:  Would you like me to address the
10  accommodations issue, Your Honor?
11         THE COURT:  That's the third issue.  Right?
12         MR. NELSON:  Yes.
13         THE COURT:  They've got to go first.
14         All right.  What's the DI number for the
15  defendants' letter so I can fill in this correctly?
16         MR. HARBER:  260, Your Honor.
17         THE COURT:  Hold on just one second.  Okay.  All
18  right.  So hold up.
19         All right.  So as far as the second paragraph,
20  I'm going to obviously order that, what I've just described.
21  Right?
22         As far as the striking the first paragraph, I'm
23  going to take that out of the proposed order.
24         And then I believe now we turn to the remainder
25  of the order, which is the combination issue.  Is that

43

1   correct?
2          MR. HARBER:  Correct, Your Honor.  And I just
3   want to be clear on one point before we leave the last
4   issue.  We've spoken here in terms of reply reports.  Those
5   are limited to responding to plaintiff's case of secondary
6   indicia, so it's not on prima facie obviousness.  So I think
7   to the extent that's what, through the statements that
8   defendants made, if they're intending to open that up --
9          THE COURT:  But what happens if you say there's
10  some article they cite, and they gave us one of their 40,
11  and your expert says they're misreading that article because
12  of blah, blah, blah, blah.  I mean, I think it's fair game
13  for them to say, wait, that's not true, because if you look
14  at this prior article, which isn't on their list, it rebuts
15  that.  That seems to me appropriate.
16         MR. HARBER:  There are two points, Your Honor.
17  One is that's not what the reply reports are here.  They
18  don't have a reply report that's just replying to the our
19  expert defense in the obviousness case.  There's only two
20  rounds.
21         The reply reports are limited to a very specific
22  purpose, and that is replying to the secondary
23  considerations of nonobviousness.
24         THE COURT:  Wait, wait.  This is Judge Sleet.
25  There are no reply reports.

44

1          MR. NELSON:  There are reply reports, Your
2   Honor, but your point illustrates --
3          THE COURT:  Wait, wait.  How can one say there
4   is and one says there isn't?
5          MR. NELSON:  No.  He's saying reply reports.
6   He's talking about the scope of the reply reports.  Your
7   Honor's point illustrates why this is a hypothetical issue
8   and not something again that the Court should be ruling on
9   right now because it's not an issue.
10         Our experts clearly delineated how they are
11  using these prior art references.  They clearly delineated
12  how they are using background references.  The case law is
13  clear about background references can be used and there's no
14  limitation on that.
15         Your Honor, we would be foolhardy to try to
16  bring issues to the Court's attention the Court is not
17  interested in.
18         THE COURT:  Every lawyer says that.
19         MR. NELSON:  But that's why this is all
20  hypothetical, Your Honor.
21         MR. HARBER:  I mean, I disagree with a lot of
22  what was just said.
23         THE COURT:  Right.  Help me with the reply
24  reports issue.
25         MR. HARBER:  I think this is all resolved by

45

1   just granting what's in the proposed order.  But there are
2   three, in general, three rounds of reports.  In the first
3   round, the parties put in reports on issues on which they
4   bear the burden of proof.
5          THE COURT:  Sure.
6          MR. HARBER:  So the plaintiffs put in
7   infringement reports.
8          THE COURT:  Right.
9          MR. HARBER:  And the defendants put in validity
10  reports.
11         THE COURT:  I believe they're not smart enough
12  to know that people do that.  This just came out this
13  afternoon talking with Judge Noreika.  My understanding is
14  Judge Sleet didn't have reply reports in certain cases.
15         MR. HARBER:  Right.
16         THE COURT:  Is this one of those cases?
17         MR. HARBER:  There are no general reply reports.
18  It's called a reply round, but they are just responsive
19  reports on the secondary considerations that we put in in
20  our --
21         THE COURT:  Right.  But that's it?
22         MR. HARBER:  That's it.
23         THE COURT:  Unlike a lot of other courts.
24  Usually my default is you get a real reply.  He doesn't
25  allow for it in this case.

46

1          MR. HARBER:  That's right.  It's not part of the
2   scheduling order.
3          THE COURT:  Okay.  So what did Judge Sleet do,
4   if you know, Judge Sleet, when it came to trial time when
5   one expert would want to reply to something that was raised
6   in an answering brief?  How did he deal with that?  Did you
7   ever have a trial in front of him?
8          MR. HARBER:  I did not.
9          MR. BERL:  I've had several, Your Honor.
10          THE COURT:  Okay.  So what happened in that
11   circumstance?
12          MR. BERL:  If it's not in the report, then it
13   wasn't in evidence.
14          THE COURT:  So how could you have any rebuttal
15   essentially?
16          MR. BERL:  He had almost no rebuttal, first of
17   all.
18          Second of all, his answer to it, if I can speak
19   for him is, I only have one round of reports.  If it's
20   something that the challenger wants to put in his or her
21   prima facie case and rely on for prima facie obviousness,
22   they get one chance.  That's their prima facie case.  You
23   can't go back and sort of rebuild a prima facie case with
24   new references that you didn't rely on.  If you think that
25   the patent is obvious as a result of the following three

47

1   references, that's what you put in, and if it's not and the
2   third round of reports is very limited, as Mr. Harber
3   indicated, and if it's not in the report, it's not in the
4   report.
5          I'm happy to hand Your Honor transcripts that
6   say just that.  I sat in this chair and an entire
7   examination of an expert was stricken on that exact
8   basis.
9          MR. NELSON:  Again, Your Honor, that's not the
10   situation we're looking at here.  These references have all
11   been provided well in advance of paying debt off.
12          And, again, it is very clear, the background,
13   that is the background of the invalidating reference.  We're
14   not talking about that.  That's a completely different
15   situation.
16          MR. HARBER:  And --
17          MR. NELSON:  If there are new opinions that
18   we're bringing up, they'll move to strike it.
19          THE COURT:  All right.
20          MR. HARBER:  I would say one more thing.  I feel
21   like we're conflating a lot of issues here.
22          The reason we are before the Court on this is
23   because Your Honor had a case narrowing order that applied
24   to both parties.  They said, you have all of these, we have
25   all of these claims, the plaintiffs.  You have all of these

48

1   references, defendant.  You each have to mutually narrow to
2   a certain amount.  We did that.  We can't, after seeing
3   their responses to our infringement positions say, okay,
4   we're now going to assert these ten other claims because of
5   what you said, and they had to narrow their case.
6          Now, when you ticked through the three items in
7   the proposed order, you're not going to use it to disclose a
8   limitation, the motivation and expectation, that is the
9   language that was in the letter that we sent them and said,
10   can you confirm that what your reservations doesn't mean it
11   that you are going to use it for one of these -- so that's
12   why we're here.
13          THE COURT:  Right.
14          MR. BERL:  I'm frankly confused.
15          THE COURT:  I'm not faulting you for why you are
16   here.  You said the reservation language.  I get it.  I'm
17   good.
18          MR. HARBER:  Right.  I'm not sure that we need
19   to reopen this.
20          THE COURT:  No.  And frankly, though, it's
21   helpful to me on the reply issue.
22          So I have reply briefs and I think there's a
23   purpose for them, so there's just a philosophical
24   disagreement on that, and which just seems to me something
25   new could be raised in a response that would justify a

49

1   reply, and that's why I was sympathetic to the defendant,
2   saying if you all, the plaintiffs, in a response of an
3   expert somehow raise prior art that was not on their list of
4   40, that it might be fair to have them come back and say,
5   well, wait a second.  Let me explain.  And I get that.
6          Now, it's funny.  I think under Judge Sleet's
7   rules, it's too late.  That's a problem with inheriting
8   cases.
9          MR. BERL:  And I sympathize with Your Honor, but
10   if I may say, we were very careful in what we did and what
11   we did not include in our reports and what arguments we
12   advanced and what arguments we did not advance in reliance
13   on Judge Sleet's order that their third round was very
14   limited.
15          THE COURT:  Yes, and I get that.  I'm going to
16   play by that rule.  But that is my initial thing about the
17   contentions.  You know, as you know from my scheduling
18   order, contentions are early and you've got to have good
19   cause to change them.
20          So, all right.  So we've resolved paragraph 1
21   and paragraph 2.  Let's move to paragraph -- the remainder
22   of the order, the third issue.
23          MR. HARBER:  All right.  Your Honor, and I think
24   Your Honor had some of this issue in mind when we turned to
25   the second issue.

50

1        THE COURT:  Right.

2        MR. HARBER:  And I'm happy to address, there are

3   some procedural points that the other side raised.  I'm

4   happy to address these.

5        THE COURT:  So let me just ask this just so I

6   understand, right, because, again, these correspond, these

7   being the paragraphs with the different combinations listed

8   in the proposed order, they correspond to what their expert

9   disclosed.  Correct?

10       MR. HARBER:  Correct.

11       THE COURT:  Okay.

12       MR. HARBER:  And so here is what the issue is

13  and why it's different from the issue we were just

14  discussing.

15       One is an administrative kind of case narrowing.

16  You know, what is the scope of, how many claims can we rely

17  on, how many prior art references can they use?  And at the

18  last hearing there was some debate about when Your Honor was

19  narrowing, ordering the narrowing of their case.

20       THE COURT:  Let me save you some breath here.

21       MR. HARBER:  All right.

22       THE COURT:  I'm sympathetic to your argument.

23  They don't get to come up with new combinations.

24       MR. HARBER:  Yes.  And that's --

25       THE COURT:  That I agree with.

51

1        MR. HARBER:  And so the point, and we're raising

2   it now, frankly, because we're -- you know, we're heading

3   into the point in time where we're going to depose their

4   expert.

5        THE COURT:  Right.

6        MR. HARBER:  We don't want to be accused -- if

7   they come and put something in their pretrial order or try

8   to run something at trial that they we don't believe they've

9   adequately disclosed, we don't want to be accused of lying

10  in the weeds and having waited and prejudiced them by not

11  raising it until August, that we think there was something

12  inadequate.  We put it on the table right away, that their

13  reports, if they intend to rely on a combination of

14  references other than the combinations that are listed in

15  our proposed order, we don't believe those are adequately

16  disclosed.

17       THE COURT:  Right.  Okay.  All right.  I'm with

18  you.  Let's hear from the other side.  I don't know why

19  you're fighting this.

20       MR. NELSON:  Again, Your Honor, we think, again,

21  and I understand the Court disagrees with this, but we view

22  this as a motion in limine or motion to strike.  All the

23  cases that they cite in support of these positions, both

24  positions, all are in the contexts of motions in limine

25  or motions to strike.  We think they have not made the

52

1   proper showing in any event that there's any sort of

2   problem with what we disclosed.  All they are saying again

3   is a hypothetical that we may bring in some argument that

4   wasn't previously in their expert report.  I think that's

5   improper.

6        THE COURT:  Okay.  Here's the thing.  Let me ask

7   you this:  Do you disagree with the substance?  This is what

8   your expert has agreed to so far.

9        MR. NELSON:  I disagree with the way they

10  characterize how our experts have addressed these prior art

11  references and that's why I don't think we can agree to this

12  order.

13       So that is a problem that --

14       THE COURT:  All right.  Give me an example.

15       MR. NELSON:  Well, so, first of all, if you

16  compare this proposed order to the previous one, Your Honor,

17  from March, it's almost identical except for all of a sudden

18  there's a whole bunch more references in there.  Those

19  references were already in the expert report that they had

20  in the March hearing.  So I don't know why all of a sudden

21  they wanted to limit combinations then, but now they're

22  allowing for all these other combinations.  So that's why I

23  find it a little bit interesting.

24       Again, I don't know how the Courts police this,

25  because our experts again went through with a fine tooth

53

1   comb limitation by limitation and showed how these various

2   references relate to showing motivation to combine and a

3   reasonable expectation of success for meeting those

4   limitations, and to just sort of lay it out here like this

5   does not capture that.  It makes it too much of an issue

6   that they can come in and say, that's not the combination

7   that they raise, Your Honor, and then we've got to dig

8   through the expert reports and show it.

9        I don't think that's fair, Your Honor.  The

10  combinations are -- and, first of all, I should take a step

11  back, Your Honor.  KSR is very clear, that the Supreme Court

12  case on obviousness is very clear.  There's no requirement

13  that there be actual combinations.  It clearly said, don't

14  follow a rigid format, or that is a clear error, and you

15  should look at the prior art as a whole.

16       So, again, to try to pigeonhole this into

17  specific combinations is a clear error according to the

18  Supreme Court precedent, but putting that aside, our expert

19  showed how each of these references relate to each

20  limitation.  And so this is not indicative or -- it does

21  not characterize accurately how your experts attacked

22  these.

23       Again, the better mechanism, Judge, is our

24  expert does something that's not in their report, they

25  should come and call us out.  That's the proper vehicle.

**54**

1  That's the proper thing. That's how every other case that
2  all of us in this room have litigated, that's how it
3  proceeds. Our experts go outside the scope of their report.
4  You call the other side out. They have not even taken the
5  deposition of these individuals yet.
6      THE COURT: All right. I'm going to deny this
7  application on the third paragraph, but without prejudice,
8  because I'm going to hold the defendants to what's in their
9  expert report.
10     MR. NELSON: Yes. Thank you.
11     THE COURT: All right. Switch. I mean, I've
12 got to say, what really bothers me, and the reason why, you
13 know, I'm much more accepting of plaintiffs even teeing this
14 up, because part of me thinks this has been a waste of time
15 and it is an issue that can be addressed down the road, but,
16 you know, the defendants' response to what I thought was a
17 reasonable letter from the plaintiffs is why I understand
18 why they are here.
19     MR. NELSON: Your Honor, that was not our
20 intention. Our intention was just to be very clear, and we
21 said repeatedly in our letters, we are not going outside of
22 what our expert said. We said --
23     THE COURT: I thought they gave you the
24 opportunity with that letter. They spelled out specifically
25 what's in the second paragraph and you couldn't agree to

**55**

1  that.
2      MR. NELSON: That was not our intention. We
3  thought we were clear. We think there's other motivations
4  to these, but that's not the argument to make here.
5      THE COURT: All right. Let's go. Next.
6      MR. NELSON: So, Your Honor, our first issue for
7  the Court, we have three issues. I think other counsel will
8  be taking some of the other issues.
9      But the first issue would be our request for
10 expert materials from the bendamustine lyophilized case. Is
11 that okay if we started with that one, Your Honor?
12     THE COURT: Yes. Why are you bringing this now
13 since discovery is over?
14     MR. NELSON: Your Honor, this issue was raised
15 during discovery, and we have not been sitting on our hands
16 for 18 months as the plaintiffs have. We actually did raise
17 this issue in correspondences in November, and something did
18 happen in November. The parties had a meet and confer on
19 this issue. In November, plaintiffs submitted supplemental
20 interrogatory responses. They don't cite to the ones from
21 November or from July, the second set of supplemental
22 interrogatory responses.
23     In their interrogatory responses, Judge, they
24 say, our secondary considerations issues reincorporate
25 expert reports that that will be written and will be

**56**

1  submitted, and that's going to be our position.
2      So while they gave us some information, they
3  still left it open, and that's why -- what, frankly, were we
4  going to do at that point in time? We had to wait for the
5  expert reports to see what their final position was going to
6  be, to see what the final position on secondary
7  considerations was going to be. They left the door open
8  there, Your Honor. We weren't going to ask their fact
9  witnesses about expert reports in a prior case. The timing
10 we are going to use those is right now.
11     Yes, the timing is unfortunate, but they left
12 the door open. Immediately when we got their expert
13 reports, actually, before we got their expert reports, we
14 re-raised this issue, because that was the time to do it.
15     And, Your Honor, there's no prejudice here to
16 them. They can just simply provide those expert reports.
17 They're highly relevant because their experts in the
18 bendamustine.
19     Case said things that are relevant. Those are
20 admissions. Those can be relevant. They can be used
21 against their experts. So we're entitled. But, again,
22 there's no prejudice here. They can simply provide that
23 information to us.
24     THE COURT: All right. I'm going to deny the
25 application. I don't think you've established sufficient

**57**

1  probative value that would be gained from having access to
2  these, and, more importantly, it's too late. Let's move on.
3      MR. NELSON: Okay.
4      THE COURT: We had a scheduling order and I held
5  the plaintiffs to the scheduling order.
6      Next topic.
7      MR. NELSON: The next one is the Eagle/Teva
8  licensing documents. Now, this, Your Honor, this was
9  something that happened after close of discovery. We became
10 aware of this issue, the licensing issue, or the amendment
11 of the licensing agreement at the end of April, April 29th.
12 Plaintiffs didn't inform us of this. They have a continuing
13 discovery obligation. We had to find out through the news
14 media that this happened.
15     So when we raised it to them, and I do want to
16 be very clear, Your Honor. Plaintiffs say that there was no
17 meet and confer here. We raised it immediately on
18 April 29th. The parties had exchanged correspondences on
19 May 2nd and there was a meet and confer on May 10th. We
20 said we want all the correspondence and information. They
21 only gave us the amended agreement and flat refused. Said
22 you can't have anything else. There's no more negotiation
23 at that point, Your Honor.
24     So the parties properly met and conferred and,
25 Your Honor, we're entitled to the -- the case law is very

58

1 clear. We're entitled, two parties at arm's length
2 negotiating over issues regarding the product at issue in
3 this case. So we're entitled to those communications.
4 If they feel like they need to log something,
5 again, I think that's inappropriate, but that wasn't even
6 put on the table. They simply said, oh, it's too much work.
7 Too burdensome. There's too much. But they flat refused to
8 provide it.
9 So they should be providing information. If
10 they want to log it, you know, I don't think that's proper
11 because, again, I think it's an arm's length transaction,
12 but we believe that we're entitled to those communications
13 regarding this amendment of the license agreement.
14 THE COURT: All right. Actually, I'm sorry.
15 Can I just ask one more question?
16 MR. NELSON: Yes. Sorry.
17 THE COURT: If they hadn't cited it in their
18 expert report, would you be entitled to it?
19 MR. NELSON: If they hadn't cited it? Yes, we
20 would. The communications are still relevant, Your Honor,
21 and that's, quite frankly, the other reason for this. Not
22 only did we just find out about this stuff and brought it to
23 the Court, had a meet and confer and brought it to the
24 Court's attention as soon as we could.
25 The communications themselves, we don't know

59

1 what they say, but they may be relevant to showing various
2 issues on secondary consideration, those reports that are
3 due at the end of this month.
12 THE COURT: All right. Thank you.
13 MR. MAHAFFY: Your Honor, Shaun Mahaffy fee from
14 Williams & Connolly on behalf of Teva and Cephalon.
15 I think the main point is the one that you
16 brought up at the very end of your questioning, which is the
17 relevance of these negotiations at all.
18 So to be clear, plaintiffs are not relying on
19 this revised agreement as evidence of the nonobviousness of
20 the patents. Our expert merely cites it in a footnote as a
21 matter of factual, you know, something that has happened,
22 but the evidence that the expert relies on as evidence of
23 secondary considerations of nonobviousness is the original
24 agreement and the original royalty rate.
25 And --

60

1 THE COURT: Why did you add it? Why is it added
2 to the expert report?
3 MR. MAHAFFY: Frankly, as they said, they
4 requested this material. It is a change to an existing
5 agreement, and so they've requested this material and, you
6 know, we produced this material in discovery. And so it
7 seemed appropriate to have the expert, you know, acknowledge
8 its existence just to make, you know, make clear that it
9 didn't change anything about his opinion.
14 THE COURT: I mean, you had already produced --
15 when did you produce the original agreement? That was
16 produced I assume before?
17 MR. MAHAFFY: During fact discovery.
18 THE COURT: Right, so they had that, and they
19 read it in the newspaper somewhere, they learn the agreement
20 has been revised, but they ask you for an updated version.
21 Right?
22 MR. MAHAFFY: Exactly.
23 THE COURT: And then you produce that. Is that
24 right?
25 MR. MAHAFFY: We produced that along with the

61

1 expert report, yes.
2 THE COURT: At the same time?
3 MR. MAHAFFY: Yes.
4 THE COURT: Okay. So, but the expert report
5 didn't come until after they had requested the revised
6 agreement?
7 MR. MAHAFFY: This all happened very quickly. I
8 believe that the revised agreement, it was submitted along
9 with the expert report. They requested the revised
10 agreement I think two days before the expert report was
11 due.
12 THE COURT: And the agreement is relevant to
13 what in the case?
14 MR. MAHAFFY: I mean, frankly, Your Honor, I
15 don't think the agreement is relevant to anything.
20 THE COURT: And is it relevant at all, I don't
21 know, to damages or anything like that?
22 MR. MAHAFFY: Imagine that. I don't think the
23 defendants have alleged that. I mean, the only, you know,
24 there are various other provisions in --
25 THE COURT: But are you guys going to use it for

62

1    anything else?

2         MR. MAHAFFY:  No.  We're not going to use it for

3    anything else.  And what I was just going to say, to be

4    fair, there are other provisions, and if anything, I think

5    that makes things more complicated.  For example, there's

6    provisions related to litigation funding.  This agreement

7    was entered into by parties to this litigation during

8    ongoing litigation.  It involves things about this

9    litigation.

10        Reviewing these documents would be quite

11   burdensome.  This all happened very fast, so I can't stand

12   here and tell you the exact, you know, page and document

13   count, which I would normally like to, but it looks like

14   there's at least ten custodians that we would have to review

15   for this, several of them lawyers.  It looks like there's

16   probably over 2,000 documents that we might have to look at,

17   and it would be a messy and complicated privilege review.

18        So this would be a burdensome review for us to

19   do.  And as Your Honor said, there would be basically no

20   relevance because the only possible relevance would be to

21   help our case through the higher royalty rate, and we are

22   not relying on it for that purpose.

23        THE COURT:  Would you strike from the expert

24   report the references to the agreements?

25        MR. MAHAFFY:  Yes, that would be fine.

63

1         THE COURT:  All right.  Let's hear from the

2    other side.

3         This just seems to me, I do think it would be

4    burdensome.  I think it raises all sorts of complex issues.

5    I think the probative value is so attenuated, just trying to

6    figure out why this battle is being fought.

7         MR. NELSON:  Let me point out one thing, Your

8    Honor.  If there's so much going on in this agreement and

9    all it is is just simply ▌▌▌▌▌▌▌▌ there

10   wouldn't be so much going on.

11        THE COURT:  But there could be stuff completely

12   unrelated to --

13        MR. NELSON:  This agreement just has to do with

14   this product.

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

21        ▌▌▌ We should be able to show that, hey, yes, they have a

     license agreement.  We're showing our main contention this

22   license agreement doesn't have to do with the value of the

23   patent.  It has to do with regulatory issues.  Nothing to do

24   with the patent.

64

1    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

2    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

3         THE COURT:  When was the agreement revised?

4         MR. NELSON:  April 13th was when the press

5    release was.

6         THE COURT:  And when was fact discovery closed?

7         MR. NELSON:  Fact discovery was closed

8    January --

9         MR. MAHAFFY:  January.

10        MR. NELSON:  Yes, it was quite sometime ago.

11        THE COURT:  I'm going to deny the application.

12   I think it's attenuated, of minimal, if any, probative

13   value.  I do think there's a significant burden that would

14   be required to produce it.  I think it's unduly burdensome

15   to require it.  It occurred after the close of fact

16   discovery.  I'm denying the application.

17        Next.

18        MR. NELSON:  Your Honor, is it still possible

19   that they strike it from their expert report?  Again, we

20   think it shouldn't -- it shouldn't come in at all then.

21        THE COURT:  I think --

22        MR. BERL:  We've agreed to strike it as long as

23   we don't hear from them that our expert somehow erred by not

24   considering it.

25        THE COURT:  I'm the factfinder.  If they do

65

1    that --

2         MR. NELSON:  We don't know what's behind it.

3         THE COURT:  Okay.

4         MR. NELSON:  Mr. Feldman is going to address our

5    last issue, which is more --

6         THE COURT:  Okay.

7    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

8    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

9    ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

10   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

11   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

12   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

13   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

14   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

15   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

16   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

17   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

18   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

19   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

20   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

21   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌

22        THE COURT:  Okay.  Anything else?

23        MR. FELDMAN:  No.

24        THE COURT:  All right.

25        MR. BROWN:  Thank you, Your Honor.  Dan Brown

66

1  from Latham & Watkins representing Eagle.
2      And there are really three reasons -- excuse me
3  one second.
4      I apologize, Your Honor.  There are really three
5  reasons that we shouldn't be required to log Ms. Sue's
6  documents at this point and they're interrelated.
7      The first is, is the timeliness issue, that fact
8  discovery closed a long time ago.
9      The second is relevance, and the third is the
10 burden proportionality issue.
11     And so with respect to the time limits issue,
12 there was a process that we all went through in fact
13 discovery, the ordinary process, document requests,
14 objections, et cetera.  And the way the process proceeded in
15 this case was the parties agreed that the local default ESI
16 rules would apply.  That was entered in an order by Judge
17 Sleet.  We went, and that operates by custodian.
18     THE COURT:  Right.
19     MR. BROWN:  We were not sticklers.  We did
20 approximately twice as many custodians as the default rules
21 require.  We did about 20.
22     We picked people who were operating at the
23 relevant time period, which is these patents were filed
24 in --
25     THE COURT:  So the issue is identified because

67

1  another custodian had a privileged communication with her.
2  Is that right?
3      MR. BROWN:  Correct.
4      THE COURT:  Okay.  And that was produced to them
5  when?
6      MR. BROWN:  That was produced in early December
7  of 2018, that privilege log.
8      THE COURT:  Right.
22     And so on top of that, the default rules require
23 you're supposed to identify custodians with discoverable
24 information, and her information would be entirely
25 privileged with respect to this issue.  That's in the TQ

68

1  Delta case that we cited.  It's pretty abundantly clear.
19     THE COURT:  Well, that's a after the privilege
20 log.  What does the privilege log say?
21     MR. FELDMAN:  I'm looking for it.  If I could
22 speak on this?
23     THE COURT:  Go ahead.
24     MR. BROWN:  And then, and so in defendants'
25 motion, they have not identified any connections or claim or

69

1  defense of a party to support relevance.
20     THE COURT:  Okay.  Thank you.
21     Mr. Feldman, were you able to locate the
22 privilege logs?
23     MR. FELDMAN:  I was, Your Honor.  Would you like
24 me to hand it up?
25     THE COURT:  That would be great.  Thank you.

70

1          (Mr. Feldman handed a document to the Court.)
2          THE COURT:  Okay.



19          THE COURT:  You'll have to redact portions of
20   it.  You'll do that at a later time.
21          MR. FELDMAN:  Yes.  So there comes a time, as I
22   was telling you earlier about, when there's a second patent
23   application that's not involved in this case, but that does
24   say all the things they need to do to actually get this
25   thing to work and gets the low impurities.

71



72

1   produce this, so it's just too late in the day.  I'm going
2   to deny the application.
3          MR. FELDMAN:  Thank you, Your Honor.
4          THE COURT:  All right.  Anything else?
5          MR. HARBER:  Nothing from plaintiff, Your Honor.
6          THE COURT:  Okay.  Thank you, all.
7          Oh, time out.  So I don't want to issue, so it's
8   clear I believe from the transcript what my order is.  I did
9   grant one relief and denied all others.
10          Is it clear from the plaintiff's perspective?
11          MR. HARBER:  Yes, Your Honor.
12          THE COURT:  And is it clear from the defense
13   perspective?
14          MR. NELSON:  Yes, Your Honor.
15          THE COURT:  Great.  Thank you.
16          (Hearing concluded at 4:53 p.m.)
17              - - -
18
19
20
21
22
23
24
25

17          THE COURT:  Did you make a motion to the Court
18   or anything, say I need to learn more about this person?
19          MR. FELDMAN:  We did not, Your Honor.  We did
20   raise it with them at that time.  We continued to raise
21   it.
22          THE COURT:  All right.  Well, discovery has
23   passed, so this is an untimely motion, and I think it would
24   be -- I don't think it's personal, and I do think it would
25   be incredibly burdensome at this stage to require Eagle to

**'**

**'707** [3] - 30:23, 31:3, 31:7

**1**

**1** [1] - 49:20
**10th** [2] - 57:19, 68:3
**12** [4] - 12:3, 13:16, 13:21, 13:22
**12th** [1] - 34:17
**13th** [1] - 64:4
**16** [1] - 1:13
**17-1154-CFC** [1] - 1:10
**18** [1] - 55:16

**2**

**2** [1] - 49:21
**2,000** [1] - 62:16
**20** [1] - 66:21
**2016** [2] - 67:11, 67:12
**2017** [1] - 67:13
**2018** [2] - 67:7, 68:3
**2019** [3] - 1:13, 7:7, 7:12
**22** [1] - 7:7
**22nd** [1] - 7:11
**25** [1] - 41:20
**26** [1] - 16:11
**26(b)(5)(a** [1] - 65:15
**260** [1] - 42:16
**28th** [1] - 8:20
**29th** [2] - 57:11, 57:18
**2nd** [1] - 57:19

**3**

**3:34** [2] - 1:14, 5:4

**4**

**40** [10] - 35:3, 35:8, 35:13, 35:17, 36:4, 37:22, 38:2, 38:21, 43:10, 49:4
**4:53** [1] - 72:16

**5**

**50** [2] - 9:25, 12:13
**56** [3] - 35:12, 35:15, 35:22

**8**

**8th** [1] - 71:16

**9**

**9(b** [1] - 33:2
**9th** [1] - 71:14

**A**

**abandon** [1] - 71:5
**abandoned** [1] - 31:2
**abandoning** [1] - 71:4
**ability** [3] - 10:23, 14:16, 19:20
**able** [6] - 31:17, 34:12, 42:1, 63:19, 63:20, 69:21
**absent** [1] - 15:15
**absurdity** [1] - 41:2
**abundantly** [1] - 68:1
**accept** [1] - 38:18
**accepting** [2] - 35:18, 54:13
**access** [1] - 57:1
**accommodations** [2] - 37:9, 42:10
**according** [2] - 53:17, 71:5
**accurately** [1] - 53:21
**accuse** [2] - 15:10, 23:12
**accused** [2] - 51:6, 51:9
**accusing** [1] - 31:24
**acknowledge** [1] - 60:7
**ACTION** [1] - 1:4
**action** [1] - 31:11
**actual** [1] - 53:13
**ADAM** [1] - 2:3
**Adam** [2] - 5:12, 7:23
**add** [1] - 60:1
**added** [1] - 60:1
**additional** [6] - 8:21, 25:23, 31:3, 31:5, 31:8, 63:25
**address** [8] - 14:9, 24:16, 33:20, 42:9, 50:2, 50:4, 65:4, 70:6
**addressed** [2] - 52:10, 54:15
**adduce** [1] - 14:11
**adequate** [2] - 14:7, 15:9
**adequately** [3] - 11:7, 51:9, 51:15
**administrative** [1] - 50:15
**admissions** [1] - 56:20
**admitted** [1] - 27:5

**advance** [2] - 47:11, 49:12
**advanced** [1] - 49:12
**advised** [1] - 14:13
**affirming** [1] - 16:9
**afternoon** [12] - 5:6, 5:9, 5:14, 5:16, 5:17, 6:4, 6:10, 6:21, 6:22, 7:22, 27:3, 45:13
**ago** [2] - 64:10, 66:8
**agree** [9] - 25:14, 29:25, 38:23, 39:2, 39:5, 39:14, 50:25, 52:11, 54:25
**agreed** [6] - 26:4, 26:16, 27:19, 52:8, 64:22, 66:15
**agreement** [20] - 57:11, 57:21, 58:13, 59:19, 59:24, 60:5, 60:11, 60:15, 60:19, 61:6, 61:8, 61:10, 61:12, 61:15, 62:6, 63:8, 63:13, 63:21, 63:22, 64:3
**agreements** [1] - 62:24
**ahead** [2] - 30:11, 68:23
**al** [1] - 1:9, 3:9
**allegation** [7] - 8:13, 8:14, 9:20, 10:16, 10:17, 11:16, 27:22
**allegations** [8] - 9:22, 10:10, 11:9, 11:19, 15:1, 17:11, 25:12, 32:23
**allege** [3] - 8:18, 10:19, 12:15, 23:6, 23:9
**alleged** [4] - 10:19, 10:21, 23:5, 61:23
**alleges** [1] - 9:19
**alleging** [4] - 8:15, 10:15, 10:16, 14:20
**allow** [7] - 21:18, 26:16, 28:25, 29:22, 29:25, 33:15, 45:25
**allowed** [3] - 26:5, 28:20, 29:1
**allowing** [1] - 52:22
**allows** [2] - 13:21, 39:17
**almost** [2] - 46:16, 52:17
**amend** [5] - 27:23, 32:17, 32:19, 32:20, 33:5
**amended** [3] - 8:16, 10:9, 57:21

**amendment** [3] - 57:10, 58:13, 60:11
**amount** [1] - 48:2
**AND** [1] - 1:2
**answer** [17] - 8:13, 8:16, 8:19, 8:20, 9:8, 9:21, 10:1, 10:9, 17:5, 21:20, 21:21, 23:14, 26:11, 32:20, 33:6, 37:13, 46:18
**answering** [1] - 46:6
**antioxidant** [4] - 40:11, 40:18, 40:20, 40:21
**antioxidants** [2] - 40:12, 40:14
**anyway** [1] - 33:23
**apologize** [2] - 32:21, 66:4
**apotex** [1] - 3:14
**Apotex** [6] - 3:14, 3:22, 6:12, 9:22, 24:4, 27:4
**Apotex's** [1] - 8:20
**apparent** [2] - 27:16
**appear** [2] - 7:2, 8:16
**APPEARANCES** [4] - 1:18, 2:1, 3:1, 4:1
**application** [13] - 31:1, 33:18, 33:24, 34:10, 54:7, 56:25, 64:11, 64:16, 70:23, 71:1, 71:4, 71:6, 72:2
**applied** [1] - 47:23
**applies** [1] - 8:8
**apply** [2] - 7:12, 66:16
**appreciate** [2] - 7:16, 13:24
**appropriate** [3] - 34:11, 43:15, 60:7
**approval** [1] - 15:13
**approve** [1] - 30:12
**April** [7] - 7:5, 7:7, 7:11, 57:11, 57:18, 64:4
**argue** [3] - 9:16, 12:21, 17:24
**arguing** [1] - 17:25
**argument** [8] - 11:20, 14:24, 14:25, 23:9, 23:19, 50:22, 52:3, 55:4
**arguments** [5] - 9:11, 12:3, 32:11, 49:11, 49:12
**arm's** [2] - 58:1, 58:11
**art** [10] - 35:3, 35:8, 38:22, 39:2, 40:15, 44:11, 49:3, 50:17,

52:10, 53:15
**article** [3] - 43:10, 43:11, 43:14
**articulated** [2] - 32:14, 34:5, 34:11
**articulating** [1] - 33:3
**aside** [1] - 53:18
**assert** [2] - 33:10, 48:4
**asserts** [1] - 33:4
**assume** [2] - 37:7, 60:16
**asterisk** [1] - 68:5
**asterisks** [1] - 68:6
**attach** [1] - 7:15
**attacked** [1] - 53:21
**attacking** [1] - 14:4
**attempting** [1] - 23:9
**attended** [1] - 30:5
**attention** [3] - 31:12, 44:16, 58:24
**attenuated** [2] - 63:5, 64:12
**attorney** [3] - 68:7, 68:8, 68:9
**attorneys** [2] - 68:6, 69:7
**August** [1] - 51:11
**aware** [2] - 12:6, 18:13, 57:10

**B**

**background** [20] - 35:25, 36:3, 36:6, 36:9, 36:10, 36:13, 36:14, 36:21, 36:22, 37:16, 38:6, 38:8, 38:9, 39:16, 39:22, 41:9, 42:1, 44:12, 44:13, 47:12, 47:13
**balance** [1] - 26:23
**Barabas** [1] - 6:6
**BARABAS** [1] - 3:7
**based** [9] - 9:20, 27:11, 27:20, 29:1, 29:23, 30:8, 33:21, 36:18, 65:16
**baseless** [1] - 32:16
**basis** [7] - 17:18, 32:2, 33:19, 33:21, 47:8, 65:17, 69:11
**battle** [2] - 16:22, 63:6
**bear** [1] - 45:4
**bears** [1] - 15:17
**became** [2] - 27:16, 57:9
**becomes** [1] - 40:6
**BEFORE** [1] - 1:16
**beginning** [2] - 5:4, 18:1, 22:3

**behalf** [9] - 5:18, 5:25, 6:1, 6:5, 6:11, 7:23, 27:4, 34:22, 59:14
**behind** [1] - 65:2
**belief** [1] - 11:23
**bench** [1] - 40:2
**bendamustine** [3] - 40:14, 55:10, 56:18
**Berl** [3] - 5:12, 35:4, 37:10
**BERL** [8] - 2:3, 37:11, 46:9, 46:12, 46:16, 48:14, 49:9, 64:22
**better** [2] - 27:24, 53:23
**between** [1] - 69:15
**beyond** [1] - 13:9
**big** [1] - 30:11
**bit** [2] - 36:16, 52:23
**blah** [4] - 43:12
**bother** [2] - 42:4, 42:5
**bothers** [2] - 29:6, 54:12
**break** [1] - 25:3
**breath** [1] - 50:20
**BRIAN** [1] - 2:15
**Brian** [1] - 5:18
**brief** [5] - 16:8, 23:19, 24:8, 37:12, 46:6
**briefing** [3] - 7:10, 23:16, 24:13
**briefs** [1] - 48:22
**bring** [5] - 31:11, 41:21, 42:1, 44:16, 52:3
**bringing** [2] - 47:18, 55:12
**brought** [4] - 13:21, 58:22, 58:23, 59:16
**brown** [1] - 70:12
**Brown** [2] - 5:13, 65:25
**BROWN** [10] - 2:9, 65:25, 66:19, 67:3, 67:6, 67:9, 67:12, 68:4, 68:12, 68:24
**built** [1] - 28:20
**bumping** [2] - 63:9, 64:1
**bunch** [2] - 17:11, 52:18
**burden** [7] - 17:11, 33:23, 45:4, 64:13, 66:10, 69:5, 69:12
**burdensome** [6] - 58:7, 62:11, 62:18, 63:4, 64:14, 71:25
**BY** [12] - 1:20, 2:3, 2:9, 2:15, 2:18, 3:3, 3:7, 3:12, 3:16, 3:20, 4:3,

4:6

# C

**California** [3] - 14:17, 16:19, 31:20
**capture** [1] - 53:5
**careful** [2] - 21:22, 49:10
**carries** [1] - 13:11
**case** [73] - 7:8, 7:13, 8:9, 8:14, 9:21, 10:2, 10:6, 10:16, 11:10, 11:16, 12:12, 13:4, 14:6, 14:8, 14:14, 15:14, 15:18, 15:25, 16:7, 17:8, 18:1, 18:3, 18:9, 18:20, 19:6, 21:1, 21:13, 23:22, 24:6, 24:12, 25:10, 25:20, 25:25, 27:13, 31:1, 32:12, 33:1, 33:3, 33:11, 33:16, 36:7, 36:8, 36:21, 38:7, 43:5, 43:19, 44:12, 45:25, 46:21, 46:22, 46:23, 47:23, 48:5, 50:15, 50:19, 53:12, 54:1, 55:10, 56:9, 56:19, 57:25, 58:3, 61:13, 62:21, 65:9, 66:15, 67:21, 68:1, 69:3, 69:18, 70:13, 70:23
**cases** [15] - 12:14, 15:7, 15:9, 16:6, 16:18, 20:22, 20:24, 23:16, 26:13, 26:19, 45:14, 45:16, 49:8, 51:23
**caveat** [1] - 7:13
**Cephalon** [2] - 2:7, 59:14
**CEPHALON** [1] - 1:5
**certain** [5] - 28:16, 34:18, 40:19, 45:14, 48:2
**certainly** [3] - 9:22, 16:25, 27:23
**cetera** [1] - 66:14
**chair** [1] - 47:6
**challenge** [1] - 10:23
**challenger** [1] - 46:20
**chance** [1] - 46:22
**change** [3] - 49:19, 60:4, 60:9
**characterize** [2] - 52:10, 53:21
**check** [1] - 37:7
**chemistry** [1] - 41:5

**Chicago** [2] - 2:19, 3:21
**chief** [1] - 29:18
**Circuit** [3] - 16:9, 24:3, 33:2
**circumstance** [1] - 46:11
**cite** [7] - 15:7, 36:8, 38:8, 43:10, 51:23, 55:20
**cited** [6] - 16:6, 16:8, 29:21, 58:17, 58:19, 68:1
**cites** [1] - 59:20
**citing** [1] - 35:23
**CIVIL** [1] - 1:4
**Civil** [2] - 11:12, 11:22
**claim** [4] - 37:25, 38:23, 68:25
**claimed** [1] - 65:16
**claims** [5] - 41:20, 41:21, 47:25, 48:4, 50:16
**clarity** [1] - 40:7
**clear** [30] - 22:2, 23:22, 24:2, 24:5, 27:8, 28:11, 35:2, 35:25, 38:7, 39:10, 39:15, 41:18, 43:3, 44:13, 47:12, 53:11, 53:12, 53:14, 53:17, 54:20, 55:3, 57:16, 58:1, 59:18, 60:8, 68:1, 68:8, 72:8, 72:10, 72:12
**clearer** [2] - 23:8, 35:8
**clearly** [10] - 12:14, 29:5, 32:22, 36:8, 36:13, 44:10, 44:11, 53:13, 68:7, 69:16
**close** [9] - 19:17, 20:2, 24:25, 25:5, 25:15, 26:5, 57:9, 64:15, 71:15
**closed** [7] - 10:3, 22:5, 25:11, 64:6, 64:7, 66:8, 71:16
**Cohen** [1] - 6:17
**COHEN** [2] - 3:21, 6:21
**Cole** [1] - 6:11
**COLE** [4] - 3:16, 6:10, 6:14, 6:17
**collect** [1] - 18:14
**COLM** [1] - 1:16
**comb** [1] - 53:1
**combination** [3] - 42:25, 51:13, 53:6
**combinations** [9] - 35:5, 50:7, 50:23,

51:14, 52:21, 52:22, 53:10, 53:13, 53:17
**combine** [1] - 53:2
**comfort** [1] - 23:17
**coming** [4] - 22:8, 22:9, 22:10, 39:11
**commenced** [1] - 5:3
**commensurate** [1] - 69:18
**commercial** [1] - 69:9
**committed** [2] - 14:15, 14:20
**communicating** [1] - 65:21
**communication** [2] - 67:1, 69:15
**communications** [6] - 58:3, 58:12, 58:20, 58:25, 59:10, 70:9
**COMPANY** [1] - 1:9
**Company** [1] - 3:9
**company** [7] - 67:10, 67:14, 67:19, 67:21, 69:3, 69:6, 69:8
**compare** [1] - 52:16
**complete** [1] - 32:16
**completely** [2] - 47:14, 63:11
**complex** [1] - 63:4
**complicated** [2] - 62:5, 62:17
**complied** [1] - 33:11
**concern** [3] - 20:20, 24:15, 36:20
**concerned** [2] - 30:7, 30:8
**concerning** [1] - 28:16
**concluded** [1] - 72:16
**conduct** [17] - 8:13, 8:18, 8:24, 10:10, 11:19, 12:1, 15:5, 15:15, 18:23, 19:13, 19:15, 20:25, 21:4, 23:12, 31:24, 34:24, 67:17
**conduct/unclean** [2] - 8:8, 15:2
**confer** [4] - 55:18, 57:17, 57:19, 58:23
**conference** [1] - 7:1
**conferred** [1] - 57:24
**confirm** [1] - 48:10
**conflating** [2] - 37:12, 47:21
**confused** [2] - 10:18, 48:14
**conjunction** [1] - 29:20
**connection** [1] - 69:4
**connections** [1] -

68:25
**CONNOLLY** [2] - 1:16, 2:2
**Connolly** [2] - 7:23, 59:14
**consideration** [1] - 59:2
**considerations** [5] - 43:23, 45:19, 55:24, 56:7, 59:23
**considering** [1] - 64:24
**constant** [1] - 26:22
**contains** [2] - 8:24, 16:16
**contemplate** [1] - 21:17
**contemplated** [1] - 25:4
**contention** [11] - 17:3, 17:16, 18:23, 19:12, 19:14, 19:23, 21:23, 23:6, 24:22, 24:23, 63:21
**contentions** [37] - 13:6, 13:8, 13:11, 17:4, 17:6, 17:11, 17:13, 17:17, 17:21, 19:4, 19:7, 19:18, 19:19, 19:21, 19:23, 20:9, 20:11, 21:11, 21:24, 22:13, 23:6, 25:3, 25:7, 25:15, 25:23, 26:5, 26:9, 26:11, 26:12, 26:20, 27:6, 27:10, 27:18, 27:22, 28:24, 49:17, 49:18
**contest** [1] - 24:4
**context** [6] - 10:24, 23:18, 23:23, 28:2, 36:7, 68:9
**contexts** [1] - 51:24
**continued** [1] - 71:20
**Continued** [3] - 2:1, 3:1, 4:1
**continuing** [2] - 57:12, 71:7
**control** [2] - 14:18, 31:20
**Corp** [1] - 3:14
**correct** [9] - 9:13, 15:6, 28:7, 37:10, 43:1, 43:2, 50:9, 50:10, 67:3
**correctly** [2] - 42:15, 61:16
**correspond** [2] - 50:6, 50:8
**correspondence** [1] -

57:20
**correspondences** [2] - 55:17, 57:18
**correspondingly** [1] - 14:7
**Counsel** [4] - 2:6, 2:12, 2:20, 3:22
**counsel** [8] - 3:8, 3:13, 4:8, 37:8, 55:7, 65:12, 69:8
**count** [1] - 62:13
**Counterclaim** [1] - 2:20
**course** [2] - 24:14, 30:18
**COURT** [199] - 1:1, 5:6, 5:14, 5:17, 5:21, 5:23, 6:3, 6:8, 6:13, 6:15, 6:20, 6:22, 8:3, 8:10, 8:18, 8:22, 9:1, 9:4, 9:10, 9:14, 10:11, 10:18, 10:21, 11:2, 11:12, 11:17, 11:20, 11:25, 12:5, 12:16, 12:20, 13:1, 13:15, 14:1, 14:23, 15:23, 15:25, 16:4, 16:12, 16:20, 17:1, 17:14, 17:20, 17:24, 18:6, 18:9, 18:16, 18:19, 18:25, 19:6, 19:10, 19:12, 19:22, 20:3, 20:7, 20:17, 21:7, 21:16, 22:6, 22:9, 22:16, 22:19, 22:23, 23:4, 23:15, 24:20, 24:22, 25:2, 25:14, 26:2, 26:15, 27:1, 28:4, 29:8, 29:12, 30:1, 30:15, 31:14, 31:22, 32:1, 32:5, 32:19, 33:17, 34:3, 34:19, 35:1, 35:11, 36:25, 37:4, 37:6, 37:14, 37:18, 37:21, 38:12, 38:15, 38:19, 39:1, 39:4, 39:8, 39:13, 39:21, 39:24, 40:4, 40:25, 41:2, 41:14, 41:23, 42:5, 42:8, 42:11, 42:13, 42:17, 43:9, 43:24, 44:3, 44:18, 44:23, 45:5, 45:8, 45:11, 45:16, 45:21, 45:23, 46:3, 46:10, 46:14, 47:19, 48:13, 48:15, 48:20, 49:15, 50:1, 50:5, 50:11, 50:20, 50:22, 50:25,

51:5, 51:17, 52:6, 52:14, 54:6, 54:11, 54:23, 55:5, 55:12, 56:24, 57:4, 58:14, 58:17, 59:4, 59:12, 60:1, 60:10, 60:14, 60:18, 60:23, 61:2, 61:4, 61:12, 61:20, 61:25, 62:23, 63:1, 63:11, 64:3, 64:6, 64:11, 64:21, 64:25, 65:3, 65:6, 65:22, 65:24, 66:18, 66:25, 67:4, 67:8, 67:11, 68:2, 68:11, 68:13, 68:19, 68:23, 69:20, 69:25, 70:2, 70:11, 70:19, 71:9, 71:11, 71:13, 71:15, 71:17, 71:22, 72:4, 72:6, 72:12, 72:15
**Court** [23] - 1:25, 12:11, 15:4, 16:1, 16:9, 18:10, 33:8, 34:17, 41:16, 41:22, 42:4, 44:8, 44:16, 47:22, 51:21, 53:11, 53:18, 55:7, 58:23, 70:1, 71:17
**Court's** [3] - 36:10, 44:16, 58:24
**courtroom** [1] - 5:3
**courts** [2] - 23:25, 45:23
**Courts** [3] - 24:17, 28:25, 52:24
**create** [4] - 10:5, 12:11, 20:23, 69:12
**created** [1] - 21:14
**critical** [2] - 18:4, 27:8
**criticisms** [1] - 42:3
**criticize** [1] - 40:13
**criticizes** [1] - 40:17
**cross** [1] - 14:11
**cross-examining** [1] - 14:11
**curious** [1] - 8:5
**custodian** [3] - 66:17, 67:1, 70:11
**custodians** [3] - 62:14, 66:20, 67:23

## D

**D.C** [1] - 2:4
**damages** [1] - 61:21
**Dan** [2] - 5:13, 65:25
**DANIEL** [1] - 2:9
**data** [2] - 30:20
**date** [4] - 26:9, 26:23,

71:9, 71:11
**DAVID** [1] - 2:3
**David** [1] - 5:11
**days** [1] - 61:10
**deadline** [3] - 25:21, 25:22, 26:16
**deal** [4] - 11:8, 12:22, 30:11, 46:6
**dealing** [6] - 9:4, 12:8, 12:23, 13:9, 15:7, 69:11
**deals** [1] - 24:7
**debate** [1] - 50:18
**debt** [1] - 47:11
**December** [4] - 28:9, 29:9, 67:6, 68:3
**decide** [2] - 35:16, 35:17
**decimated** [1] - 28:25
**declaration** [3] - 29:19, 30:19, 67:19
**decline** [1] - 21:19
**default** [4] - 45:24, 66:15, 66:20, 67:22
**defendant** [3] - 20:24, 48:1, 49:1
**Defendant** [6] - 2:12, 2:20, 3:8, 3:13, 3:22, 4:8
**defendants** [14] - 6:12, 8:4, 12:13, 15:1, 25:20, 26:19, 27:4, 32:12, 34:22, 38:20, 43:8, 45:9, 54:8, 61:23
**Defendants** [1] - 1:10
**defendants'** [3] - 42:15, 54:16, 68:24
**defense** [15] - 8:21, 10:4, 10:23, 11:7, 12:1, 14:5, 14:6, 15:5, 15:14, 21:3, 23:1, 23:9, 43:19, 69:1, 72:12
**defenses** [9] - 9:25, 12:13, 13:16, 19:2, 20:16, 22:4, 24:4, 33:3, 33:10
**defensive** [1] - 18:3
**definitely** [1] - 40:3
**defraud** [1] - 28:14
**DELAWARE** [1] - 1:2
**Delaware** [2] - 1:13, 17:3
**delineated** [2] - 44:10, 44:11
**Delta** [1] - 68:1
**demonstrate** [1] - 28:22
**demonstrated** [2] -

28:23, 34:4
**denied** [1] - 72:9
**DENNIS** [1] - 4:6
**Dennis** [1] - 6:1
**deny** [8] - 23:2, 33:17, 33:24, 34:10, 54:6, 56:24, 64:11, 72:2
**denying** [1] - 64:16
**depose** [1] - 51:3
**deposed** [1] - 31:16
**deposition** [8] - 27:8, 27:17, 31:22, 32:2, 34:7, 54:5, 65:11, 71:11
**depositions** [1] - 26:21
**describe** [1] - 29:15
**described** [3] - 28:6, 32:1, 42:20
**description** [2] - 21:10, 68:16
**designed** [1] - 29:4
**detail** [1] - 8:25
**details** [2] - 16:13, 32:8
**determine** [1] - 29:1
**determining** [1] - 20:14
**develop** [1] - 21:11
**developed** [1] - 33:9
**DEVLIN** [1] - 4:2
**DI** [1] - 42:14
**differences** [2] - 38:5, 67:20
**different** [10] - 25:6, 25:7, 31:13, 38:3, 38:4, 39:13, 39:14, 47:14, 50:7, 50:13
**dig** [1] - 53:7
**directly** [2] - 28:18, 71:6
**disagree** [7] - 21:7, 32:4, 32:7, 35:1, 44:21, 52:7, 52:9
**disagreement** [1] - 48:24
**disagrees** [1] - 51:21
**disclose** [4] - 16:21, 17:6, 22:22, 48:7
**disclosed** [13] - 16:17, 22:15, 22:16, 22:17, 22:19, 22:21, 24:18, 24:20, 38:23, 50:9, 51:9, 51:16, 52:2
**disclosure** [1] - 16:23
**discoverable** [1] - 67:23
**discovery** [49] - 7:6, 7:11, 14:10, 14:12, 14:19, 15:18, 17:8,

17:12, 17:15, 18:22, 19:9, 19:17, 19:20, 20:2, 21:9, 21:10, 21:12, 21:23, 22:3, 22:5, 22:18, 23:2, 25:1, 25:5, 25:11, 25:16, 26:1, 26:6, 26:17, 27:12, 33:22, 34:9, 55:13, 55:15, 57:9, 57:13, 60:6, 60:17, 64:6, 64:7, 64:16, 66:8, 66:13, 71:15, 71:16, 71:22
**discussing** [1] - 50:14
**discussion** [1] - 17:17
**dismiss** [10] - 8:10, 9:1, 9:2, 9:8, 9:11, 9:15, 9:23, 10:2, 10:22, 21:21
**disproportionality** [1] - 69:17
**dispute** [3] - 7:19, 33:23, 34:9
**disputes** [2] - 7:6, 7:14
**DISTRICT** [2] - 1:1, 1:2
**District** [1] - 16:9
**document** [5] - 20:14, 20:15, 62:12, 66:13, 70:1
**documents** [7] - 57:8, 62:10, 62:16, 65:16, 65:19, 66:6, 69:14
**done** [8] - 16:16, 19:8, 23:17, 25:13, 36:12, 36:23, 39:7, 65:18
**door** [10] - 10:3, 20:22, 56:7, 56:12
**down** [8] - 10:4, 12:15, 13:14, 21:2, 24:3, 38:1, 41:20, 54:15
**Dr** [13] - 15:1, 23:12, 27:25, 28:4, 28:23, 29:18, 29:23, 30:1, 30:2, 30:4, 30:14, 31:19, 34:6
**drug** [1] - 69:11
**due** [3] - 27:10, 59:3, 61:11
**during** [13] - 14:12, 15:18, 17:12, 22:2, 22:18, 26:1, 55:15, 60:17, 62:7, 65:11, 68:10, 69:3, 69:5
**duty** [1] - 25:9

## E

**e-mail** [1] - 70:6
**Eagle** [8] - 2:12, 5:10,

5:12, 31:20, 66:1, 68:9, 70:5, 71:25
**EAGLE** [1] - 1:5
**Eagle's** [1] - 30:5
**Eagle/Teva** [1] - 57:7
**early** [3] - 27:10, 49:18, 67:6
**educate** [1] - 40:23
**effort** [1] - 15:13
**either** [2] - 34:10, 65:19
**elemental** [1] - 20:21
**elicited** [1] - 27:12
**employee** [4] - 14:17, 14:18, 14:20, 31:18, 31:19, 34:6, 70:6
**employees** [1] - 25:12
**end** [6] - 21:9, 24:9, 57:11, 59:3, 59:16, 71:3
**ends** [1] - 71:3
**engage** [1] - 21:22
**engaged** [1] - 15:10
**entered** [2] - 62:7, 66:16
**entire** [2] - 47:6, 69:7
**entirely** [1] - 67:24
**entitled** [7] - 56:21, 57:25, 58:1, 58:3, 58:12, 58:18, 59:8
**Ernst** [1] - 5:13
**ERNST** [1] - 2:10
**erred** [1] - 64:23
**error** [2] - 53:14, 53:17
**ESI** [1] - 66:15
**ESQ** [18] - 1:20, 2:3, 2:3, 2:4, 2:9, 2:10, 2:15, 2:18, 3:3, 3:7, 3:12, 3:12, 3:16, 3:20, 3:20, 3:21, 4:3, 4:6
**essentially** [2] - 10:5, 46:15
**established** [1] - 56:25
**establishing** [1] - 38:22
**et** [3] - 1:9, 3:9, 66:14
**EVE** [1] - 3:3
**eve** [2] - 6:4, 11:3
**event** [1] - 52:1
**evidence** [7] - 14:12, 46:13, 59:19, 59:22, 61:18, 64:2
**exact** [5] - 16:13, 19:16, 41:19, 47:7, 62:12
**exactly** [2] - 41:7, 60:22
**Exactly** [1] - 39:6

**examination** [1] - 47:7
**Examiner** [1] - 15:12
**examining** [1] - 14:11
**example** [7] - 14:16, 16:18, 17:3, 17:19, 25:20, 52:14, 62:5
**examples** [1] - 16:7
**except** [1] - 52:17
**exchanged** [1] - 57:18
**excuse** [2] - 66:2, 68:12
**existence** [1] - 60:8
**existing** [1] - 60:4
**expectation** [2] - 39:5, 48:8, 53:3
**expected** [1] - 35:17
**expert** [77] - 9:19, 10:24, 11:6, 11:11, 11:24, 12:16, 14:6, 14:10, 14:11, 15:11, 15:20, 16:1, 16:2, 16:10, 16:16, 16:21, 17:9, 18:11, 19:9, 19:25, 20:3, 20:8, 20:13, 22:10, 22:14, 24:24, 27:25, 28:3, 28:12, 28:13, 29:4, 32:13, 35:12, 35:21, 35:24, 36:2, 37:9, 37:23, 39:12, 40:8, 40:17, 43:11, 43:19, 46:5, 47:7, 49:3, 50:8, 51:4, 52:4, 52:8, 52:19, 53:8, 53:18, 53:24, 54:9, 54:22, 55:10, 55:25, 56:5, 56:9, 56:12, 56:13, 56:16, 58:18, 59:20, 59:22, 60:2, 60:7, 61:1, 61:4, 61:9, 61:10, 61:19, 62:23, 64:19, 64:23, 67:16
**expert's** [1] - 16:10
**experts** [12] - 36:6, 36:12, 36:23, 37:25, 41:9, 44:10, 52:10, 52:25, 53:21, 54:3, 56:17, 56:21
**explain** [1] - 49:5
**explains** [1] - 30:14
**extended** [1] - 25:21
**extent** [1] - 43:7
**extra** [2] - 25:21, 25:22
**extremely** [1] - 33:9

**F**

**facie** [5] - 43:6, 46:21, 46:22, 46:23

**fact** [36] - 14:12, 14:18, 14:19, 15:18, 17:7, 17:12, 19:17, 20:2, 21:9, 22:2, 22:3, 22:18, 23:2, 24:25, 25:5, 25:10, 25:16, 26:1, 26:5, 26:17, 28:22, 29:1, 31:12, 32:10, 56:8, 60:17, 63:14, 64:6, 64:7, 64:15, 66:7, 66:12, 67:16, 67:18, 69:2, 69:4
**factfinder** [1] - 64:25
**facts** [4] - 9:7, 27:16, 28:16, 29:1
**factual** [5] - 21:12, 28:5, 32:2, 32:9, 59:21
**fair** [9] - 9:15, 43:12, 49:4, 53:9, 62:4
**familiar** [3] - 11:15, 12:2, 13:20
**family** [1] - 29:20
**far** [5] - 11:3, 17:24, 42:19, 42:22, 52:8
**Farnan** [2] - 5:15, 5:18
**FARNAN** [5] - 2:14, 2:15, 5:16, 5:18, 5:22
**fast** [1] - 62:11
**faulting** [1] - 48:15
**FDA** [4] - 28:16, 30:5, 30:6, 30:8
**February** [1] - 27:10
**Federal** [7] - 11:12, 11:22, 16:8, 23:10, 24:2, 33:1, 65:15
**fee** [1] - 59:13
**Feldman** [9] - 6:19, 27:4, 32:1, 32:4, 32:10, 65:4, 65:7, 69:21, 70:1
**FELDMAN** [23] - 3:12, 3:20, 27:3, 28:8, 29:11, 29:13, 29:17, 30:2, 30:16, 65:7, 65:23, 68:17, 68:21, 69:23, 70:3, 70:12, 70:21, 71:10, 71:12, 71:14, 71:16, 71:19, 72:3
**fighting** [2] - 36:1, 51:19
**figure** [5] - 12:7, 13:19, 18:6, 35:15, 63:6
**file** [5] - 7:14, 7:18, 12:21, 21:2, 30:25
**filed** [7] - 7:3, 9:22,

30:22, 35:22, 41:11, 41:12, 66:23
**fill** [1] - 42:15
**final** [8] - 19:3, 19:18, 26:9, 26:12, 26:20, 56:5, 56:6
**financial** [1] - 63:15
**fine** [4] - 29:17, 36:10, 52:25, 62:25
**finish** [1] - 26:21
**FIRM** [1] - 4:2
**first** [19] - 7:19, 7:20, 10:16, 19:11, 19:14, 20:1, 20:8, 37:2, 37:16, 42:13, 42:22, 45:2, 46:16, 52:15, 53:10, 55:6, 55:9, 66:7, 68:17
**FLASTER** [2] - 3:16, 3:19
**Flaster** [2] - 6:11, 6:18
**flat** [2] - 57:21, 58:7
**flexibility** [1] - 42:3
**focused** [1] - 9:7
**folks** [1] - 5:15
**follow** [3] - 8:4, 16:14, 53:14
**following** [1] - 46:25
**foolhardy** [1] - 44:15
**footnote** [2] - 59:20, 60:10
**FOR** [1] - 1:2
**forced** [1] - 11:10
**form** [4] - 7:12, 7:15, 12:13, 25:18
**format** [1] - 53:14
**former** [4] - 14:17, 31:18, 31:19, 34:6
**formulation** [1] - 30:24
**formulations** [1] - 40:12
**forth** [2] - 13:1, 20:15
**forward** [2] - 7:3, 7:6
**fought** [1] - 63:6
**four** [2] - 19:9, 32:12
**frankly** [10] - 20:19, 23:24, 32:8, 48:14, 48:20, 51:2, 56:3, 58:21, 60:3, 61:14
**fraud** [7] - 8:15, 9:20, 10:17, 14:15, 14:20, 25:12
**fraudulent** [1] - 15:13
**free** [1] - 38:18
**Fresenius** [3] - 2:21, 5:18, 34:22
**front** [4] - 30:13, 39:25, 41:21, 46:7
**frustrated** [1] - 35:14

**full** [1] - 29:20
**funding** [1] - 62:6
**funny** [1] - 49:6
**futile** [1] - 32:23

**G**

**gain** [1] - 15:13
**gained** [1] - 57:1
**game** [1] - 43:12
**general** [7] - 15:3, 15:14, 24:17, 45:2, 45:17, 69:8
**generally** [3] - 16:16, 17:6, 29:15
**generic** [1] - 20:24
**given** [3] - 8:6, 28:21, 37:7
**GMBH** [1] - 1:5
**GmbH** [1] - 2:6
**GOODRICH** [1] - 4:6
**grant** [1] - 72:9
**granting** [1] - 45:1
**granular** [1] - 38:1
**great** [3] - 30:24, 69:25, 72:15
**GREENBERG** [2] - 3:16, 3:19
**Greenberg** [2] - 6:11, 6:18
**GREGORY** [1] - 4:6
**Gregory** [1] - 6:2
**guess** [5] - 5:15, 22:24, 68:14
**Gunning** [1] - 1:24
**guys** [1] - 61:25

**H**

**HAHN** [1] - 3:11
**hand** [4] - 21:10, 28:12, 47:5, 69:24
**handed** [1] - 70:1
**hands** [6] - 8:8, 8:24, 15:2, 21:1, 21:4, 55:15
**happy** [4] - 24:15, 47:5, 50:2, 50:4
**HARBER** [94] - 2:3, 7:22, 8:7, 8:11, 8:20, 8:23, 9:2, 9:6, 9:13, 9:18, 10:14, 10:20, 11:1, 11:5, 11:14, 11:18, 11:23, 12:4, 12:9, 12:19, 12:25, 13:4, 13:23, 14:3, 14:25, 15:24, 16:3, 16:5, 16:13, 16:24, 17:2, 17:18, 17:23, 18:5, 18:8, 18:13,

18:18, 18:24, 19:1, 19:8, 19:11, 19:14, 20:1, 20:5, 20:10, 20:18, 21:15, 22:1, 22:8, 22:12, 22:18, 22:21, 22:25, 23:8, 23:21, 24:21, 24:25, 25:6, 25:17, 26:7, 26:18, 29:16, 31:19, 31:23, 32:3, 32:6, 32:20, 34:1, 34:15, 42:16, 43:2, 43:16, 44:21, 44:25, 45:6, 45:9, 45:15, 45:17, 45:22, 46:1, 46:8, 47:16, 47:20, 48:18, 49:23, 50:2, 50:10, 50:12, 50:21, 50:24, 51:1, 51:6, 72:5, 72:11

**Harber** [3] - 5:12, 7:23, 47:2
**hard** [4] - 23:11, 24:6, 26:18, 37:6
**HARDIN** [1] - 2:18
**Hardin** [1] - 5:20
**hardly** [1] - 23:25
**head** [1] - 18:14
**heading** [1] - 51:2
**hear** [8] - 20:7, 27:1, 31:14, 33:14, 34:20, 51:18, 63:1, 64:23
**heard** [3] - 13:2, 20:8, 67:17
**hearing** [4] - 24:16, 50:18, 52:20, 72:16
**held** [1] - 57:4
**hello** [1] - 5:24
**help** [3] - 44:23, 62:21, 69:3
**helpful** [1] - 48:21
**high** [1] - 31:5
**higher** [2] - 60:11, 62:21
**highly** [1] - 56:17
**hold** [9] - 17:14, 23:1, 37:18, 38:12, 42:17, 42:18, 54:8
**Honor** [103] - 5:9, 5:16, 5:24, 6:4, 6:11, 7:22, 8:1, 8:11, 9:13, 12:10, 13:23, 15:22, 16:14, 18:14, 18:18, 20:19, 20:21, 21:15, 22:1, 23:21, 24:12, 24:15, 26:7, 26:18, 27:3, 27:5, 27:7, 27:20, 32:3, 32:10, 32:24, 33:12, 33:13, 33:14, 34:1, 34:15,

34:21, 34:23, 35:10, 35:20, 35:25, 36:13, 36:15, 36:17, 37:11, 37:15, 38:10, 39:6, 39:9, 40:7, 41:7, 42:4, 42:10, 42:16, 43:2, 43:16, 44:2, 44:15, 44:20, 46:9, 47:5, 47:9, 47:23, 49:9, 49:23, 49:24, 50:18, 51:20, 52:16, 53:7, 53:9, 53:11, 54:19, 55:6, 55:11, 55:14, 56:8, 56:15, 57:8, 57:16, 57:23, 57:25, 58:20, 59:6, 59:13, 61:14, 61:16, 62:19, 63:8, 64:18, 65:7, 65:8, 65:25, 66:4, 68:17, 69:23, 70:3, 70:16, 71:19, 72:3, 72:5, 72:11, 72:14

**Honor's** [1] - 44:7
**HONORABLE** [1] - 1:16
**hope** [1] - 41:1
**house** [4] - 65:12, 68:11, 68:15, 68:16
**hypothetical** [6] - 13:1, 36:15, 41:8, 44:7, 44:20, 52:3
**hypothetically** [1] - 36:2
**hypotheticals** [1] - 37:3

## I

**identical** [1] - 52:17
**identification** [2] - 35:5, 70:5
**identified** [9] - 13:10, 37:23, 38:21, 65:11, 66:25, 68:2, 68:4, 68:7, 68:25
**identify** [5] - 10:12, 35:3, 35:8, 65:17, 67:23
**ignore** [1] - 17:9
**Illinois** [2] - 2:19, 3:21
**illustrates** [1] - 44:2, 44:7
**imagine** [3] - 24:6, 40:5, 61:22
**immediately** [2] - 56:12, 57:17
**implication** [2] - 9:24, 26:8
**importantly** [1] - 57:2

**improper** [5] - 20:11, 23:24, 33:15, 41:13, 52:5
**improperly** [2] - 11:9, 24:20
**impurities** [4] - 30:21, 30:25, 31:6, 70:25
**IN** [3] - 1:1, 1:2, 1:5
**in-house** [4] - 65:12, 68:11, 68:15, 68:16
**inability** [1] - 34:5
**inadequate** [7] - 12:14, 13:20, 17:17, 17:25, 18:11, 33:21, 51:12
**inadequately** [2] - 9:12, 10:2
**inappropriate** [1] - 58:5
**Inc** [3] - 2:7, 2:12, 3:14
**INC** [1] - 1:6
**include** [4] - 11:15, 20:25, 31:3, 49:11
**included** [3] - 27:11, 27:17, 28:12
**including** [1] - 38:21
**incorrect** [1] - 35:20
**increased** [1] - 61:16
**incredibly** [2] - 24:3, 71:25
**indicate** [1] - 61:17
**indicated** [1] - 47:3
**indicative** [1] - 53:20
**indicia** [1] - 43:6
**individuals** [4] - 8:15, 9:21, 14:14, 54:5
**inequitable** [19] - 8:8, 8:12, 8:18, 8:24, 10:10, 11:19, 12:1, 15:2, 15:5, 15:15, 18:23, 19:13, 19:15, 20:25, 21:4, 23:12, 31:24, 34:24, 67:17
**inform** [1] - 57:12
**information** [9] - 28:21, 32:7, 56:2, 56:23, 57:20, 58:9, 63:25, 67:24
**infringement** [2] - 45:7, 48:3
**infusion** [1] - 30:10
**ingredient** [2] - 31:4, 31:8
**inherited** [1] - 19:6
**inheriting** [1] - 49:7
**initial** [3] - 19:3, 26:11, 49:16
**inject** [1] - 10:4
**injectable** [1] - 40:12
**injected** [3] - 8:14,

14:5, 36:2
**Innogenetics** [1] - 16:7
**instance** [2] - 38:10, 40:10
**instruction** [1] - 15:8
**insufficient** [2] - 16:11, 33:20
**intend** [2] - 29:3, 51:13
**intending** [1] - 43:8
**intention** [3] - 54:20, 55:2
**interested** [1] - 44:17
**interesting** [1] - 52:23
**INTERNATIONAL** [1] - 1:5
**International** [1] - 2:6
**interrelated** [1] - 66:6
**interrogatories** [3] - 17:5, 24:23, 26:11
**interrogatory** [7] - 19:1, 22:2, 25:8, 27:17, 55:20, 55:22, 55:23
**inundated** [1] - 21:20
**invalid** [2] - 12:17, 20:25
**invalidate** [1] - 36:11
**invalidates** [1] - 41:10
**invalidating** [3] - 36:5, 36:9, 47:13
**invalidity** [12] - 13:2, 13:6, 13:8, 19:2, 19:4, 19:18, 22:4, 28:19, 36:21, 37:24, 42:2
**investigate** [1] - 59:9
**investment** [1] - 63:16
**involved** [6] - 30:20, 65:13, 70:13, 70:17, 70:23, 71:7
**involves** [1] - 62:8
**Ir** [1] - 32:16
**irrelevant** [1] - 26:24
**issue** [59] - 8:8, 15:21, 16:5, 16:8, 17:2, 28:1, 28:5, 33:7, 34:2, 34:12, 34:16, 34:23, 34:24, 37:12, 37:13, 37:20, 39:10, 39:19, 40:5, 40:6, 40:8, 41:9, 41:21, 42:10, 42:11, 42:25, 43:4, 44:7, 44:9, 44:24, 48:21, 49:22, 49:24, 49:25, 50:12, 50:13, 53:5, 54:15, 55:6, 55:9, 55:14, 55:17, 55:19, 56:14,

57:10, 58:2, 65:5, 65:8, 66:7, 66:10, 66:11, 66:25, 67:10, 67:25, 69:5, 72:7
**issued** [2] - 67:13
**issues** [14] - 7:25, 16:24, 17:10, 44:16, 45:3, 47:21, 55:7, 55:8, 55:24, 58:2, 59:2, 63:4, 63:23, 69:10
**items** [1] - 48:6

## J

**James** [1] - 6:6
**JAMES** [2] - 3:7, 4:3
**January** [10] - 27:9, 28:7, 29:10, 64:8, 64:9, 71:10, 71:12, 71:13, 71:14, 71:16
**Jeff** [1] - 6:17
**JEFFREY** [1] - 3:21
**JENKINS** [1] - 3:3
**Jenkins** [1] - 6:5
**Jeremy** [1] - 6:11
**JEREMY** [1] - 3:16
**Jim** [1] - 5:24
**job** [2] - 28:21
**JOHN** [1] - 1:20
**joined** [4] - 6:6, 67:10, 67:18, 67:21
**joining** [1] - 5:11
**Judge** [13] - 25:18, 38:4, 38:9, 43:24, 45:13, 45:14, 46:3, 46:4, 49:6, 49:13, 53:23, 55:23, 66:16
**judge** [4] - 21:24, 23:17, 37:14, 40:23
**judgment** [2] - 13:17, 36:17
**July** [1] - 55:21
**jury** [2] - 15:8, 40:1
**justify** [1] - 48:25

## K

**Kabi** [1] - 2:21
**Katzenstein** [1] - 6:5
**KATZENSTEIN** [1] - 3:3
**KELLER** [1] - 1:19
**Kevin** [2] - 5:19, 34:21
**KEVIN** [1] - 2:18
**kind** [2] - 8:5, 50:15
**knowing** [1] - 26:1
**knowingly** [1] - 15:11
**knowledge** [1] - 67:16
**known** [1] - 9:23

**knows** [1] - 32:5
**Krill** [8] - 23:12, 29:18, 30:2, 30:4, 30:18, 31:19, 34:6, 67:19
**KSR** [1] - 53:11

## L

**laid** [1] - 8:4
**LANE** [1] - 3:6
**language** [3] - 41:15, 48:9, 48:16
**last** [7] - 22:22, 25:10, 34:2, 34:16, 43:3, 50:18, 65:5
**late** [8] - 18:16, 18:19, 21:5, 24:14, 27:13, 49:7, 57:2, 72:1
**latest** [2] - 20:15, 67:13
**LATHAM** [1] - 2:9
**Latham** [3] - 5:11, 5:13, 66:1
**law** [12] - 24:5, 24:13, 32:22, 32:25, 33:1, 33:9, 36:7, 36:8, 38:7, 39:17, 44:12, 57:25
**LAW** [1] - 4:2
**lawyer** [6] - 27:9, 30:17, 30:18, 44:18, 68:15, 68:16
**lawyers** [1] - 62:15
**lay** [1] - 53:4
**leads** [1] - 67:9
**learn** [2] - 60:19, 71:18
**least** [1] - 62:14
**leave** [1] - 43:3
**left** [4] - 35:2, 56:3, 56:7, 56:11
**length** [2] - 58:1, 58:11
**LENNON** [2] - 4:3, 5:24
**Lennon** [2] - 5:23, 5:25
**lest** [1] - 21:2
**letter** [13] - 7:18, 8:2, 8:5, 16:7, 17:17, 24:5, 37:12, 38:21, 42:15, 48:9, 54:17, 54:24, 70:8
**letters** [1] - 54:21
**level** [1] - 38:1
**levels** [1] - 31:5
**LIABILITY** [1] - 1:9
**Liability** [1] - 3:9
**license** [4] - 58:13, 63:17, 63:21, 63:22

**licensing** [3] - 57:8, 57:10, 57:11
**limine** [8] - 11:3, 12:7, 12:22, 13:14, 33:20, 41:12, 51:22, 51:24
**limit** [1] - 52:21
**limitation** [14] - 36:12, 36:23, 38:1, 38:2, 40:21, 40:22, 41:10, 41:19, 44:14, 48:8, 53:1, 53:20
**limitations** [6] - 13:22, 37:24, 38:4, 38:23, 40:10, 53:4
**Limited** [1] - 3:9
**limited** [6] - 28:5, 38:21, 43:5, 43:21, 47:2, 49:14
**LIMITED** [1] - 1:9
**limits** [2] - 17:21, 66:11
**list** [3] - 43:14, 49:3, 69:14
**listed** [2] - 50:7, 51:14
**litigant** [1] - 21:18
**litigated** [1] - 54:2
**litigating** [2] - 10:24, 16:18
**litigation** [9] - 16:2, 17:22, 18:10, 62:6, 62:7, 62:8, 62:9, 63:19, 64:2
**lives** [1] - 14:17
**LLC** [2] - 2:21, 4:2
**LLP** [8] - 1:19, 2:2, 2:9, 2:14, 2:18, 3:3, 3:6, 3:11
**local** [1] - 66:15
**locate** [1] - 69:21
**LOESER** [1] - 3:11
**log** [10] - 58:4, 58:10, 65:17, 66:5, 67:7, 68:3, 68:7, 68:20, 69:12
**logged** [1] - 70:10
**logs** [4] - 65:9, 65:10, 65:20, 69:22
**look** [5] - 13:16, 18:19, 43:13, 53:15, 62:16
**looked** [1] - 35:7
**looking** [4] - 23:15, 38:15, 47:10, 68:21
**looks** [2] - 62:13, 62:15
**loop** [1] - 8:5
**lose** [1] - 9:15
**loss** [1] - 23:20
**low** [3] - 30:25, 31:5, 70:25
**lying** [2] - 15:11, 51:9

**lyophilized** [1] - 55:10

## M

**MAHAFFY** [14] - 2:4, 59:13, 60:3, 60:13, 60:17, 60:22, 60:25, 61:3, 61:7, 61:14, 61:22, 62:2, 62:25, 64:9
**Mahaffy** [2] - 5:12, 59:13
**mail** [1] - 70:6
**main** [3] - 59:15, 63:21, 69:9
**maintain** [1] - 14:8
**March** [4] - 34:17, 52:17, 52:20, 67:13
**Mark** [1] - 6:7
**MARX** [1] - 3:6
**material** [3] - 60:4, 60:5, 60:6
**materials** [1] - 55:10
**matter** [4] - 12:13, 13:5, 24:17, 59:21
**McCanty** [6] - 31:9, 65:11, 68:18, 69:15, 70:15, 71:5
**McKenzie** [1] - 30:17
**mean** [30] - 8:14, 9:10, 10:18, 12:1, 13:13, 13:16, 13:19, 16:6, 20:18, 20:22, 20:23, 22:2, 22:6, 23:1, 23:4, 23:23, 25:12, 25:19, 26:24, 32:6, 33:18, 34:4, 39:22, 43:12, 44:21, 48:10, 54:11, 60:14, 61:14, 61:23
**meant** [1] - 37:14
**meat** [1] - 36:16
**mechanism** [1] - 53:23
**media** [1] - 57:14
**meet** [6] - 13:13, 38:2, 55:18, 57:17, 57:19, 58:23
**meeting** [1] - 53:3
**meetings** [1] - 30:5
**meets** [2] - 36:22, 40:20
**mention** [1] - 29:14
**merely** [1] - 59:20
**messy** [1] - 62:17
**met** [1] - 57:24
**MICHELLE** [1] - 2:10
**Michelle** [1] - 5:13
**middle** [1] - 18:10
**might** [4] - 29:24,

35:13, 49:4, 62:16
**mind** [1] - 49:24
**minimal** [1] - 64:12
**minute** [1] - 25:10
**misleading** [1] - 15:12
**misreading** [1] - 43:11
**misspoke** [1] - 30:3
**misunderstanding** [1]
- 37:20
**MITTENDORF** [1] - 3:6
**molecule** [3] - 41:3, 41:4, 41:6
**month** [1] - 59:3
**months** [2] - 19:9, 55:16
**motion** [26] - 7:14, 7:15, 11:2, 11:6, 11:8, 12:5, 12:22, 13:14, 13:17, 14:9, 21:2, 28:2, 33:7, 33:13, 33:20, 34:25, 35:22, 41:11, 41:12, 41:13, 51:22, 68:25, 71:17, 71:23
**motions** [8] - 7:3, 7:4, 10:5, 12:6, 13:21, 21:21, 51:24, 51:25
**motivate** [1] - 41:15
**motivated** [1] - 39:2
**motivation** [5] - 36:11, 40:15, 40:16, 48:8, 53:2
**motivations** [1] - 55:3
**move** [22] - 8:1, 8:10, 9:1, 9:2, 9:7, 9:8, 9:11, 9:15, 9:23, 9:25, 10:2, 10:22, 12:12, 13:7, 15:21, 32:19, 32:20, 33:5, 36:21, 47:18, 49:21, 57:2
**moved** [4] - 21:6, 23:11, 32:17, 41:20
**moves** [1] - 33:1
**moving** [1] - 12:18
**MR** [204] - 5:9, 5:16, 5:18, 5:22, 5:24, 6:10, 6:14, 6:17, 6:21, 7:22, 8:7, 8:11, 8:20, 8:23, 9:2, 9:6, 9:13, 9:18, 10:14, 10:20, 11:1, 11:5, 11:14, 11:18, 11:23, 12:4, 12:9, 12:19, 12:25, 13:4, 13:23, 14:3, 14:25, 15:24, 16:3, 16:5, 16:13, 16:24, 17:2, 17:18, 17:23, 18:5, 18:8, 18:13, 18:18, 18:24,

19:1, 19:8, 19:11, 19:14, 20:1, 20:5, 20:10, 20:18, 21:15, 22:1, 22:8, 22:12, 22:18, 22:21, 22:25, 23:8, 23:21, 24:21, 24:25, 25:6, 25:17, 26:7, 26:18, 27:3, 28:8, 29:11, 29:13, 29:16, 29:17, 30:2, 30:16, 31:19, 31:23, 32:3, 32:6, 32:20, 34:1, 34:15, 34:21, 35:10, 35:20, 37:2, 37:5, 37:11, 37:15, 37:19, 37:22, 38:14, 38:17, 38:25, 39:3, 39:6, 39:9, 39:14, 39:23, 40:2, 40:6, 41:1, 41:7, 41:18, 41:24, 42:7, 42:9, 42:12, 42:16, 43:2, 43:16, 44:1, 44:5, 44:19, 44:21, 44:25, 45:6, 45:9, 45:15, 46:8, 46:9, 46:12, 46:16, 47:9, 47:16, 47:17, 47:20, 48:14, 48:18, 49:9, 49:23, 50:2, 50:10, 50:12, 50:21, 50:24, 51:1, 51:6, 51:20, 52:9, 52:15, 54:10, 54:19, 55:2, 55:6, 55:14, 57:3, 57:7, 58:16, 58:19, 59:6, 59:13, 60:3, 60:13, 60:17, 60:22, 60:25, 61:3, 61:7, 61:14, 61:22, 62:2, 62:25, 63:7, 63:13, 64:4, 64:7, 64:9, 64:10, 64:18, 64:22, 65:2, 65:4, 65:7, 65:23, 65:25, 66:19, 67:3, 67:6, 67:9, 67:12, 68:4, 68:12, 68:17, 68:21, 68:24, 69:23, 70:3, 70:12, 70:21, 71:10, 71:12, 71:14, 71:16, 71:19, 72:3, 72:5, 72:11, 72:14
**MS** [1] - 6:4
**mutually** [1] - 48:1
**Mylan** [3] - 4:8, 5:25, 6:1

## N

**name** [2] - 68:5, 68:6

named [1] - 14:14
names [3] - 8:15, 29:14, 29:15
narrow [2] - 48:1, 48:5
narrowing [7] - 34:18, 35:6, 35:24, 47:23, 50:15, 50:19
necessarily [1] - 24:10
necessary [1] - 21:11
need [7] - 21:12, 42:3, 48:18, 58:4, 65:17, 70:24, 71:18
needed [1] - 25:23
needs [1] - 32:10
negotiating [1] - 58:2
negotiation [1] - 57:22
negotiations [1] - 59:17
Nelson [2] - 5:19, 34:21
NELSON [53] - 2:18, 34:21, 35:10, 35:20, 37:2, 37:5, 37:15, 37:19, 37:22, 38:14, 38:17, 38:25, 39:3, 39:6, 39:9, 39:14, 39:23, 40:2, 40:6, 41:1, 41:7, 41:18, 41:24, 42:7, 42:9, 42:12, 44:1, 44:5, 44:19, 47:9, 47:17, 51:20, 52:9, 52:15, 54:10, 54:19, 55:2, 55:6, 55:14, 57:3, 57:7, 58:16, 58:19, 59:6, 63:7, 63:13, 64:4, 64:7, 64:10, 64:18, 65:2, 65:4, 72:14
never [3] - 13:2, 14:13, 36:12
new [6] - 7:4, 41:21, 46:24, 47:17, 48:25, 50:23
New [2] - 2:10
news [1] - 57:13
newspaper [1] - 60:19
next [7] - 15:21, 33:25, 34:14, 55:5, 57:6, 57:7, 64:17
NO [1] - 1:10
nobody [1] - 40:18
none [1] - 30:13
nonobviousness [4] - 43:23, 59:19, 59:23, 61:18
Noreika [1] - 45:13
normally [2] - 16:22, 62:13
nothing [4] - 63:17,

63:23, 70:6, 72:5
notice [10] - 11:23, 11:25, 14:19, 17:12, 24:10, 27:24, 27:25, 29:5, 29:6, 29:7
November [4] - 55:17, 55:18, 55:19, 55:21
nowhere [1] - 8:16
number [1] - 42:14

## O

o'clock [1] - 1:14
object [1] - 41:5
objections [2] - 13:17, 66:14
obligation [1] - 57:13
obvious [2] - 29:24, 46:25
obviously [4] - 29:5, 32:3, 32:5, 42:20
obviousness [4] - 43:6, 43:19, 46:21, 53:12
occurred [4] - 64:15, 67:18, 67:21, 69:2
OF [1] - 1:2
office [1] - 31:10
Office [9] - 14:21, 28:14, 28:17, 28:20, 29:22, 30:7, 30:14, 31:12, 32:8
officer [1] - 29:19
Official [1] - 1:25
once [1] - 65:10
one [53] - 6:10, 7:4, 7:13, 9:9, 9:11, 10:5, 10:12, 13:9, 14:16, 16:4, 16:25, 20:15, 22:4, 26:13, 28:15, 29:9, 29:10, 29:11, 29:18, 29:22, 30:22, 33:25, 34:13, 38:12, 38:22, 38:23, 39:10, 40:10, 42:2, 42:17, 43:3, 43:10, 43:17, 44:3, 44:4, 45:16, 46:5, 46:19, 46:22, 47:20, 48:11, 50:15, 52:16, 55:11, 57:7, 58:15, 59:15, 63:7, 66:3, 67:13, 69:7, 70:9, 72:9
One [1] - 17:2
ones [3] - 37:22, 55:20, 69:13
ongoing [2] - 25:9, 62:8
open [5] - 20:22, 43:8, 56:3, 56:7, 56:12

operates [1] - 66:17
operating [1] - 66:22
operative [1] - 20:13
opinion [3] - 12:20, 12:21, 60:9
opinions [2] - 28:4, 47:17
opportunity [2] - 22:22, 54:24
opposed [1] - 11:2
order [47] - 7:5, 7:12, 7:15, 7:17, 7:25, 8:1, 8:4, 8:6, 11:3, 21:13, 21:17, 22:23, 25:15, 25:18, 26:4, 29:14, 37:1, 37:2, 37:4, 38:16, 38:18, 38:20, 39:8, 39:24, 42:6, 42:20, 42:23, 42:25, 45:1, 46:2, 47:23, 48:7, 49:13, 49:18, 49:22, 50:8, 51:7, 51:15, 52:12, 52:16, 57:4, 57:5, 66:16, 71:5, 72:8
ordered [1] - 34:17
ordering [1] - 50:19
orderly [1] - 17:7
orders [1] - 6:25
ordinary [2] - 39:1, 66:13
original [4] - 33:21, 59:23, 59:24, 60:15
ORMEROD [2] - 3:3, 6:4
Ormerod [2] - 6:3, 6:5
otherwise [2] - 8:25, 15:12
ought [1] - 15:19
outside [2] - 54:3, 54:21
outstanding [1] - 41:25

## P

P.C [2] - 3:16, 3:19
p.m [3] - 1:14, 5:4, 72:16
page [1] - 62:12
pages [4] - 12:17, 35:12, 35:15, 35:22
paragraph [7] - 42:19, 42:22, 49:20, 49:21, 54:7, 54:25
paragraphs [1] - 50:7
PARKS [1] - 3:11
part [6] - 7:4, 18:17, 21:16, 32:16, 46:1, 54:14

particular [2] - 13:12, 69:13
particularity [2] - 23:10, 32:21
particularized [2] - 33:4, 33:16
particularly [1] - 28:2
parties [12] - 17:4, 19:17, 27:19, 31:21, 45:3, 47:24, 55:18, 57:18, 57:24, 58:1, 62:7, 66:15
party [19] - 9:24, 10:1, 10:4, 13:13, 15:9, 15:10, 17:8, 17:12, 20:22, 21:1, 21:4, 21:8, 26:10, 26:16, 32:25, 33:2, 33:10, 69:1, 69:18
passed [1] - 71:23
Patent [10] - 14:21, 15:12, 28:14, 28:17, 28:20, 29:21, 30:7, 30:13, 31:12, 32:7
patent [20] - 7:5, 7:12, 12:17, 15:13, 27:8, 30:17, 30:18, 30:23, 31:3, 31:7, 46:25, 63:18, 63:23, 63:24, 67:15, 69:16, 70:22, 71:1, 71:4, 71:5
patents [16] - 20:25, 29:21, 29:22, 29:25, 30:20, 30:23, 31:11, 38:3, 59:20, 61:18, 65:14, 66:23, 67:12, 69:14, 70:14, 71:8
patents-in-suit [1] - 67:12
paying [2] - 47:11, 63:19
Pearl [5] - 65:8, 65:9, 68:18, 69:2, 70:9
pending [1] - 71:1
people [5] - 14:15, 19:24, 21:22, 45:12, 66:22
perfectly [2] - 27:8, 27:21
perhaps [1] - 32:24
period [1] - 66:23
permissible [1] - 38:8
permitted [2] - 22:24, 39:15
permutation [1] - 10:3
person [3] - 39:1, 71:4, 71:18
personal [1] - 71:24
perspective [2] - 72:10, 72:13

pertinent [1] - 14:22
PHARMA [1] - 1:9
Pharma [1] - 3:9
PHARMACEUTICAL S [2] - 1:4, 1:6
Pharmaceuticals [3] - 2:6, 2:12, 4:8
philosophical [1] - 48:23
picked [1] - 66:22
pigeonhole [1] - 53:16
place [4] - 7:8, 11:8, 27:9, 34:18
placed [1] - 13:22
Plaintiff [2] - 2:6, 2:21
plaintiff [3] - 35:14, 41:16, 72:5
plaintiff's [2] - 43:5, 72:10
plaintiffs [16] - 7:20, 7:24, 9:7, 33:19, 33:23, 45:6, 47:25, 49:2, 54:13, 54:17, 55:16, 55:19, 57:5, 57:12, 57:16, 59:18
Plaintiffs [1] - 1:7
play [1] - 49:16
plead [2] - 11:17, 27:6
pleaded [6] - 11:9, 11:16, 20:12, 22:15, 23:3, 23:10
pleading [25] - 10:19, 10:21, 10:22, 11:21, 12:2, 13:5, 13:12, 13:20, 14:4, 14:7, 15:9, 15:15, 18:1, 18:12, 23:18, 24:3, 24:9, 27:22, 27:23, 32:21, 33:4, 33:9, 33:16, 33:20, 33:22
pleadings [1] - 13:18
pled [7] - 9:12, 10:3, 10:17, 11:7, 11:18, 15:17, 24:19
plowing [1] - 69:12
point [29] - 9:10, 13:3, 13:15, 13:24, 13:25, 14:1, 14:2, 14:3, 14:22, 16:14, 19:19, 24:7, 24:13, 24:14, 26:25, 28:18, 32:9, 33:5, 35:5, 43:3, 44:2, 44:7, 51:1, 51:3, 56:4, 57:23, 59:15, 63:7, 66:6
pointed [2] - 27:5, 61:16
points [2] - 43:16, 50:3
police [1] - 52:24

**portion** [2] - 15:16, 28:13
**portions** [6] - 16:2, 16:10, 18:11, 28:2, 28:12, 70:19
**POSA** [1] - 39:4
**position** [4] - 30:6, 56:1, 56:5, 56:6
**positions** [3] - 48:3, 51:23, 51:24
**possible** [2] - 62:20, 64:18
**possibly** [2] - 26:23, 40:9
**practice** [2] - 16:15, 24:17
**precedent** [1] - 53:18
**predicate** [2] - 28:5, 28:10
**prefer** [1] - 33:15
**preference** [1] - 8:2
**prejudice** [8] - 25:25, 33:18, 34:4, 34:5, 34:9, 54:7, 56:15, 56:22
**prejudiced** [5] - 26:3, 26:4, 31:17, 34:4, 51:10
**prejudices** [1] - 14:21
**premise** [1] - 28:20
**present** [3] - 9:16, 31:22, 34:7
**presented** [2] - 13:17, 30:5
**press** [1] - 64:4
**presumption** [4] - 15:8, 28:18, 28:19, 28:24
**pretrial** [2] - 11:3, 51:7
**pretty** [2] - 35:2, 68:1
**previous** [1] - 52:16
**previously** [1] - 52:4
**prices** [1] - 63:18
**prima** [5] - 43:6, 46:21, 46:22, 46:23
**primarily** [1] - 41:25
**privilege** [11] - 62:17, 65:9, 65:10, 65:16, 65:17, 65:20, 67:7, 68:3, 68:19, 68:20, 69:22
**privileged** [3] - 67:1, 67:25, 69:16
**probative** [4] - 57:1, 63:5, 64:2, 64:12
**problem** [11] - 14:21, 18:17, 36:16, 36:18, 36:19, 36:25, 38:17, 39:21, 49:7, 52:2, 52:13

**procedural** [2] - 41:13, 50:3
**procedurally** [1] - 12:7
**procedure** [5] - 7:11, 10:8, 11:13, 13:7, 17:13
**Procedure** [1] - 11:22
**procedures** [1] - 7:8
**proceed** [5] - 14:10, 17:2, 26:14, 26:15, 33:16
**proceeded** [1] - 66:14
**proceedings** [1] - 5:3
**proceeds** [1] - 54:3
**process** [3] - 66:12, 66:13, 66:14
**produce** [5] - 27:13, 60:15, 60:23, 64:14, 72:1
**produced** [6] - 60:6, 60:14, 60:16, 60:25, 67:4, 67:6
**product** [3] - 30:12, 40:15, 58:2, 63:14, 69:9
**proof** [1] - 45:4
**proper** [14] - 10:8, 11:6, 11:8, 13:7, 14:9, 15:15, 20:14, 22:14, 26:10, 32:24, 52:1, 53:25, 54:1, 58:10
**properly** [9] - 8:13, 13:10, 15:17, 15:18, 16:17, 24:18, 24:19, 28:21, 57:24
**properties** [4] - 40:19, 40:20, 40:21, 40:24
**proportionality** [2] - 66:10, 69:5
**proposed** [11] - 6:24, 38:15, 38:16, 38:18, 38:19, 42:23, 45:1, 48:7, 50:8, 51:15, 52:16
**propound** [1] - 21:8
**prosecuted** [1] - 70:14
**prosecuting** [1] - 31:9
**prosecution** [6] - 65:14, 67:15, 69:3, 69:13, 69:16, 71:7
**protective** [1] - 29:14
**provide** [4] - 56:16, 56:22, 58:8, 65:20
**provided** [2] - 27:24, 47:11
**provides** [1] - 12:6
**providing** [1] - 58:9
**provisions** [3] - 61:24, 62:4, 62:6

**pull** [2] - 41:5, 41:9
**purpose** [9] - 16:20, 38:22, 39:16, 39:17, 43:22, 48:23, 61:19, 62:22, 69:14
**purposes** [1] - 36:5
**pursuant** [1] - 13:22
**put** [20] - 12:14, 13:1, 17:4, 17:10, 23:1, 26:9, 26:10, 27:22, 29:2, 37:9, 39:25, 45:3, 45:6, 45:9, 45:19, 46:20, 47:1, 51:7, 51:12, 58:6
**puts** [1] - 10:1
**putting** [2] - 22:14, 53:18

## Q

**questioning** [1] - 59:16
**quickly** [1] - 61:7
**quite** [3] - 58:21, 62:10, 64:10

## R

**raise** [7] - 11:21, 24:10, 49:3, 53:7, 55:16, 71:20
**raised** [9] - 9:19, 46:5, 48:25, 50:3, 55:14, 56:14, 57:15, 57:17, 63:14
**raises** [1] - 63:4
**raising** [3] - 51:1, 51:11, 63:16
**rate** [8] - 59:4, 59:10, 59:24, 60:11, 62:21, 63:9, 63:15, 63:16
**rates** [3] - 59:7, 61:16, 64:1
**re** [1] - 56:14
**re-raised** [1] - 56:14
**read** [4] - 35:15, 60:19, 65:15, 70:15
**reading** [1] - 38:11
**real** [2] - 28:17, 45:24
**reality** [1] - 29:6
**realize** [1] - 24:14
**really** [6] - 7:1, 54:12, 65:18, 66:2, 66:4, 70:4
**reason** [4] - 32:16, 47:22, 54:12, 58:21
**reasonable** [2] - 39:5, 53:3, 54:17
**reasons** [5] - 9:6, 59:8, 59:10, 66:2,

66:5
**rebuild** [1] - 46:23
**rebuts** [1] - 43:14
**rebuttal** [2] - 46:14, 46:16
**rebutting** [1] - 32:9
**receive** [1] - 21:19
**recipient** [1] - 68:5
**recollection** [1] - 60:10
**record** [3] - 7:10, 29:2, 34:3
**records** [1] - 42:2
**redact** [1] - 70:19
**refer** [2] - 27:18, 38:6
**reference** [6] - 19:24, 36:22, 38:20, 41:3, 41:10, 47:13
**references** [40] - 30:9, 35:3, 35:8, 35:13, 35:16, 35:23, 36:1, 36:4, 36:7, 36:9, 36:10, 36:13, 36:21, 37:16, 37:22, 38:2, 38:6, 38:8, 38:9, 39:7, 39:16, 40:11, 40:14, 44:11, 44:12, 44:13, 46:24, 47:1, 47:10, 48:1, 50:17, 51:14, 52:11, 52:18, 52:19, 53:2, 53:19, 62:24
**refused** [2] - 57:21, 58:7
**regarding** [4] - 27:7, 58:2, 58:13, 69:16
**regardless** [2] - 23:23, 32:25
**regular** [1] - 69:11
**regularly** [1] - 7:2
**regulatory** [1] - 63:23
**reincorporate** [1] - 55:24
**relate** [3] - 53:2, 53:19, 69:13
**related** [2] - 12:3, 62:6
**relates** [1] - 34:2
**relating** [1] - 34:16
**release** [1] - 64:5
**relevance** [7] - 15:17, 59:17, 62:20, 66:9, 67:9, 69:1
**relevant** [10] - 15:3, 56:17, 56:19, 56:20, 58:20, 59:1, 61:12, 61:15, 61:20, 66:23
**reliance** [1] - 49:12
**relief** [5] - 7:16, 21:19, 22:14, 37:16, 72:9
**relies** [1] - 59:22

**relieve** [1] - 25:25
**rely** [8] - 30:10, 38:20, 46:21, 46:24, 50:16, 51:13, 59:11, 61:19
**relying** [2] - 59:18, 62:22
**remain** [1] - 15:14
**remainder** [2] - 42:24, 49:21
**remember** [1] - 19:15
**reopen** [1] - 48:19
**repeatedly** [2] - 29:21, 54:21
**reply** [20] - 31:15, 39:11, 41:25, 43:4, 43:17, 43:18, 43:21, 43:25, 44:1, 44:5, 44:6, 44:23, 45:14, 45:17, 45:18, 45:24, 46:5, 48:21, 48:22, 49:1
**replying** [2] - 43:18, 43:22
**report** [50] - 9:19, 10:24, 11:24, 14:6, 15:2, 15:16, 15:20, 16:1, 16:2, 16:10, 16:16, 16:21, 16:23, 17:10, 18:11, 19:25, 20:4, 20:8, 20:13, 22:10, 22:14, 24:24, 27:25, 28:3, 28:12, 28:13, 29:4, 32:13, 35:12, 37:9, 37:23, 39:11, 43:18, 46:12, 47:3, 47:4, 52:4, 52:19, 53:24, 54:3, 54:9, 58:18, 60:2, 61:1, 61:4, 61:9, 61:10, 62:24, 64:19
**Reporter** [1] - 1:25
**reports** [34] - 11:6, 28:23, 35:21, 35:24, 36:3, 41:25, 43:4, 43:17, 43:21, 43:25, 44:1, 44:5, 44:6, 44:24, 45:2, 45:3, 45:7, 45:10, 45:14, 45:17, 45:19, 46:19, 47:2, 49:11, 51:13, 53:8, 55:25, 56:5, 56:9, 56:13, 56:16, 59:2, 67:16
**representing** [2] - 5:10, 66:1
**reputable** [1] - 37:8
**request** [4] - 21:19, 22:13, 37:16, 55:9
**requested** [5] - 7:16, 60:4, 60:5, 61:5,

61:9
**requests** [1] - 66:13
**require** [7] - 23:11,
35:5, 35:6, 64:15,
66:21, 67:22, 71:25
**required** [4] - 18:23,
25:19, 64:14, 66:5
**requirement** [2] -
19:3, 53:12
**requirements** [8] -
7:10, 7:11, 13:12,
17:3, 17:9, 24:3,
24:9, 33:9
**reservation** [4] -
41:14, 41:19, 41:24,
48:16
**reservations** [1] -
48:10
**reserve** [1] - 41:20
**resolved** [2] - 44:25,
49:20
**resonates** [1] - 17:20
**respect** [2] - 66:11,
67:25
**respond** [3] - 19:20,
21:12, 33:5
**responding** [1] - 43:5
**response** [5] - 18:23,
42:2, 48:25, 49:2,
54:16
**responses** [7] - 19:1,
19:23, 39:11, 48:3,
55:20, 55:22, 55:23
**responsive** [1] - 45:18
**result** [1] - 46:25
**review** [4] - 31:2,
62:14, 62:17, 62:18
**reviewing** [1] - 62:10
**revised** [10] - 7:4, 7:5,
7:17, 59:19, 60:20,
61:5, 61:8, 61:9,
64:3
**revisit** [1] - 34:12
**rigid** [1] - 53:14
**road** [5] - 10:4, 12:15,
13:14, 21:3, 54:15
**ROLLO** [2] - 3:12,
3:20
**Rollo** [1] - 6:18
**room** [1] - 54:2
**ROSATI** [1] - 4:6
**round** [5] - 45:3,
45:18, 46:19, 47:2,
49:13
**rounds** [2] - 43:20,
45:2
**routinely** [1] - 24:18
**royalty** [6] - 59:24,
61:16, 62:21, 63:9,
63:14, 63:16

**Rule** [7] - 11:12, 12:3,
13:16, 13:21, 13:22,
16:11, 33:2
**rule** [7] - 11:15, 12:2,
12:5, 12:11, 13:16,
25:3, 49:16
**ruled** [1] - 7:7
**rules** [6] - 22:20,
23:22, 49:7, 66:16,
66:20, 67:22
**Rules** [2] - 11:22,
23:10, 65:15
**ruling** [1] - 44:8
**run** [4] - 15:4, 24:9,
42:3, 51:8

## S

**sandbagged** [1] -
41:17
**sandbagging** [1] -
27:14
**sat** [1] - 47:6
**save** [1] - 50:20
**schedule** [2] - 25:19,
27:19
**scheduling** [8] -
21:13, 21:17, 22:23,
25:14, 46:2, 49:17,
57:4, 57:5
**SCHIFF** [1] - 2:18
**Schiff** [1] - 5:19
**science** [1] - 29:19
**scope** [4] - 17:22,
44:6, 50:16, 54:3
**seal** [1] - 70:15
**seated** [1] - 5:7
**second** [7] - 15:23,
17:14, 19:22, 34:2,
34:16, 37:12, 38:12,
42:17, 42:19, 46:18,
49:5, 49:25, 54:25,
55:21, 66:3, 66:9,
70:22
**secondary** [7] - 43:5,
43:22, 45:19, 55:24,
56:6, 59:2, 59:23
**see** [12] - 6:13, 7:20,
17:15, 23:16, 23:19,
28:1, 56:5, 56:6,
69:19, 70:3, 70:4
**seeing** [1] - 48:2
**seem** [1] - 33:22
**sent** [1] - 48:9
**sentence** [2] - 8:23,
10:12
**separate** [1] - 19:3
**seriously** [1] - 12:1
**serve** [3] - 18:22, 22:1,
22:2

**served** [7] - 11:24,
19:1, 19:17, 24:24,
25:4, 25:7, 25:8
**serving** [1] - 25:3
**set** [3] - 20:15, 30:22,
55:21
**several** [4] - 25:21,
25:22, 46:9, 62:15
**Shaun** [2] - 5:12,
59:13
**SHAUN** [1] - 2:4
**Shaw** [1] - 5:8
**SHAW** [3] - 1:19, 1:20,
5:9
**Sherry** [1] - 6:18
**SHERRY** [2] - 3:12,
3:20
**short** [1] - 30:10
**shot** [1] - 18:17
**show** [13] - 18:3, 18:9,
32:22, 36:11, 37:24,
40:16, 40:19, 42:2,
53:8, 63:19, 63:20,
64:2, 69:14
**showed** [3] - 38:2,
53:1, 53:19
**showing** [4] - 52:1,
53:2, 59:1, 63:21
**side** [8] - 17:7, 27:2,
31:15, 34:20, 50:3,
51:18, 54:4, 63:2
**sided** [1] - 35:4
**sides** [1] - 34:18
**sideshow** [1] - 32:16
**sign** [3] - 32:13, 39:8,
39:24
**significant** [2] - 63:15,
64:13
**signing** [1] - 42:5
**simply** [5] - 20:18,
56:16, 56:22, 58:6,
63:9
**single** [4] - 20:24,
32:9, 67:15, 67:18
**sitting** [1] - 55:15
**situation** [5] - 20:23,
21:2, 41:8, 47:10,
47:15
**six** [1] - 65:9
**skill** [1] - 39:1
**SLAYBACK** [1] - 1:9
**Slayback** [2] - 3:9, 6:6
**Sleet** [5] - 43:24,
45:14, 46:3, 46:4,
66:17
**Sleet's** [3] - 25:18,
49:6, 49:13
**smart** [1] - 45:11
**SMITH** [1] - 3:3
**Smith** [1] - 6:5

**sometime** [1] - 64:10
**somewhat** [1] - 35:14
**somewhere** [1] -
60:19
**SONSINI** [1] - 4:6
**soon** [3] - 9:19, 20:10,
58:24
**sorry** [8] - 6:13, 23:21,
30:2, 37:14, 37:19,
38:10, 58:14, 58:16
**sort** [4] - 46:23, 52:1,
53:4, 61:17
**sorts** [2] - 63:4, 69:10
**sought** [1] - 22:4
**sounds** [2] - 10:11,
26:4
**specific** [19] - 7:15,
8:14, 8:15, 9:20,
9:22, 10:9, 10:15,
10:16, 11:19, 13:12,
21:3, 24:12, 25:11,
33:8, 36:12, 37:24,
43:21, 53:17
**specifically** [3] - 12:6,
32:9, 54:24
**specificity** [1] - 10:13
**spelled** [1] - 54:24
**spend** [1] - 64:1
**spoken** [1] - 43:4
**stability** [2] - 30:25,
31:5
**stage** [5] - 11:2, 16:1,
17:10, 24:19, 71:25
**stand** [1] - 62:11
**start** [3] - 5:15, 6:24,
8:7
**started** [1] - 55:11
**statement** [1] - 28:11
**statements** [1] - 43:7
**STATES** [1] - 1:1
**step** [2] - 13:9, 53:10
**Steven** [3] - 6:18,
27:3, 65:7
**STEVEN** [2] - 3:12,
3:20
**sticklers** [1] - 66:19
**still** [7] - 33:8, 36:3,
39:15, 41:25, 56:3,
58:20, 64:18
**stories** [1] - 31:13
**story** [3] - 28:15,
39:13, 39:14
**strategy** [1] - 71:7
**stricken** [3] - 15:4,
15:19, 47:7
**strike** [23] - 9:2, 9:7,
9:23, 10:2, 10:22,
11:6, 11:8, 12:18,
13:7, 14:9, 21:6,
22:10, 24:18, 28:2,

33:7, 33:14, 41:11,
47:18, 51:22, 51:25,
62:23, 64:19, 64:22
**strikes** [1] - 41:15
**striking** [2] - 16:9,
42:22
**stringent** [1] - 24:3
**struck** [3] - 16:1,
16:12, 18:10
**stuff** [5] - 31:6, 58:22,
63:11, 67:19, 67:20
**submitted** [7] - 27:25,
29:11, 29:19, 30:18,
55:19, 56:1, 61:8,
65:9
**substance** [1] - 52:7
**substantive** [1] -
70:13
**success** [2] - 39:5,
53:3
**sudden** [1] - 52:17,
52:20
**Sue** [7] - 65:8, 65:9,
68:18, 69:2, 69:15,
71:2, 71:6
**sue** [1] - 69:6
**Sue's** [1] - 66:5
**sufficiency** [2] -
11:20, 14:4
**sufficient** [3] - 16:22,
21:10, 56:25
**suit** [1] - 67:12
**supplement** [1] - 25:9
**supplemental** [2] -
55:19, 55:21
**support** [2] - 51:23,
69:1
**suppose** [3] - 13:13,
24:7, 41:3
**supposed** [3] - 11:21,
35:15, 67:23
**Supreme** [2] - 53:11,
53:18
**switch** [1] - 54:11
**sympathetic** [2] -
49:1, 50:22
**sympathize** [1] - 49:9

## T

**table** [3] - 17:5, 51:12,
58:6
**talks** [2] - 30:14, 36:8
**tee** [1] - 18:2
**teeing** [1] - 54:13
**telephone** [1] - 6:25
**ten** [2] - 48:4, 62:14
**terms** [1] - 43:4
**test** [1] - 30:20
**testified** [2] - 28:7,

28:9
**testimony** [3] - 27:11, 28:6, 70:15
**Teva** [4] - 2:6, 5:10, 5:11, 59:14
**TEVA** [1] - 1:4
**textbook** [1] - 41:5
**THE** [201] - 1:1, 1:2, 4:2, 5:6, 5:14, 5:17, 5:21, 5:23, 6:3, 6:8, 6:13, 6:15, 6:20, 6:22, 8:3, 8:10, 8:18, 8:22, 9:1, 9:4, 9:10, 9:14, 10:11, 10:18, 10:21, 11:2, 11:12, 11:17, 11:20, 11:25, 12:5, 12:16, 12:20, 13:1, 13:15, 14:1, 14:23, 15:23, 15:25, 16:4, 16:12, 16:20, 17:1, 17:14, 17:20, 17:24, 18:6, 18:9, 18:16, 18:19, 18:25, 19:6, 19:10, 19:12, 19:22, 20:3, 20:7, 20:17, 21:7, 21:16, 22:6, 22:9, 22:16, 22:19, 22:23, 23:4, 23:15, 24:20, 24:22, 25:2, 25:14, 26:2, 26:15, 27:1, 28:4, 29:8, 29:12, 30:1, 30:15, 31:14, 31:22, 32:1, 32:5, 32:19, 33:17, 34:3, 34:19, 35:1, 35:11, 36:25, 37:4, 37:6, 37:14, 37:18, 37:21, 38:12, 38:15, 38:19, 39:1, 39:4, 39:8, 39:13, 39:21, 39:24, 40:4, 40:25, 41:2, 41:14, 41:23, 42:5, 42:8, 42:11, 42:13, 42:17, 43:9, 43:24, 44:3, 44:18, 44:23, 45:5, 45:8, 45:11, 45:16, 45:21, 45:23, 46:3, 46:10, 46:14, 47:19, 48:13, 48:15, 48:20, 49:15, 50:1, 50:5, 50:11, 50:20, 50:22, 50:25, 51:5, 51:17, 52:6, 52:14, 54:6, 54:11, 54:23, 55:5, 55:12, 56:24, 57:4, 58:14, 58:17, 59:4, 59:12, 60:1, 60:10, 60:14, 60:18, 60:23, 61:2, 61:4, 61:12,

61:20, 61:25, 62:23, 63:1, 63:11, 64:3, 64:6, 64:11, 64:21, 64:25, 65:3, 65:6, 65:22, 65:24, 66:18, 66:25, 67:4, 67:8, 67:11, 68:2, 68:11, 68:13, 68:19, 68:23, 69:20, 69:25, 70:2, 70:11, 70:19, 71:9, 71:11, 71:13, 71:15, 71:17, 71:22, 72:4, 72:6, 72:12, 72:15
**themselves** [1] - 58:25
**theory** [5] - 13:2, 13:5, 13:10, 13:11, 14:13
**therefore** [5] - 15:3, 15:19, 26:13, 28:1, 65:14
**they've** [6] - 25:13, 31:1, 42:13, 51:8, 60:5, 65:8
**thinks** [1] - 54:14
**third** [8] - 16:8, 37:13, 42:11, 47:2, 49:13, 49:22, 54:7, 66:9
**thousands** [1] - 70:8
**three** [10] - 19:16, 38:3, 39:4, 45:2, 46:25, 48:6, 55:7, 66:2, 66:4
**threw** [1] - 8:5
**Thursday** [1] - 1:13
**ticked** [1] - 48:6
**timeliness** [1] - 66:7
**timely** [1] - 27:21
**timing** [7] - 19:16, 20:20, 22:25, 27:7, 56:9, 56:11
**today** [4] - 5:19, 6:1, 6:6, 7:1
**took** [2] - 21:14, 37:8
**tooth** [1] - 52:25
**top** [2] - 18:14, 67:22
**topic** [1] - 57:6
**TQ** [1] - 67:25
**transaction** [1] - 58:11
**transcript** [4] - 35:7, 65:13, 70:16, 72:8
**transcripts** [1] - 47:5
**treated** [1] - 34:8
**trial** [8] - 11:3, 12:21, 12:22, 29:3, 40:2, 46:4, 46:7, 51:8
**trier** [1] - 29:1
**true** [2] - 43:13, 69:3
**truth** [1] - 28:15
**try** [3] - 44:15, 51:7, 53:16
**trying** [9] - 12:7,

12:23, 13:19, 13:24, 14:1, 14:2, 18:6, 63:5, 68:13
**turn** [1] - 42:24
**turned** [1] - 49:24
**turning** [1] - 29:12
**twice** [1] - 66:20
**two** [23] - 6:24, 8:15, 9:6, 9:20, 10:9, 10:12, 11:19, 14:14, 16:24, 19:16, 19:24, 20:6, 25:12, 29:8, 29:9, 31:13, 32:12, 39:1, 43:16, 43:19, 58:1, 61:10, 69:7
**two-sentence** [1] - 10:12
**type** [1] - 34:25

## U

**U.S.D.C.J** [1] - 1:16
**unclean** [3] - 8:24, 21:1, 21:4
**under** [7] - 11:21, 12:3, 16:11, 22:13, 22:19, 22:23, 49:6
**unduly** [1] - 64:14
**unfair** [1] - 59:11
**unfairly** [1] - 26:3
**unfortunate** [1] - 56:11
**UNITED** [1] - 1:1
**unless** [2] - 15:21, 31:3
**unlike** [1] - 45:23
**unrelated** [1] - 63:12
**untimely** [2] - 23:7, 71:23
**up** [23] - 6:25, 16:14, 18:2, 23:24, 28:12, 34:12, 37:18, 41:9, 42:18, 43:8, 47:18, 50:23, 54:14, 59:5, 59:7, 59:11, 59:16, 63:9, 64:1, 69:24, 71:3
**updated** [2] - 27:17, 60:20
**upend** [1] - 17:13
**upside** [1] - 69:18
**USA** [1] - 2:21

## V

**Valerie** [1] - 1:24
**validity** [8] - 15:3, 15:8, 15:14, 28:19, 28:24, 32:11, 45:9
**value** [5] - 57:1, 63:5,

63:17, 63:22, 64:13
**variety** [1] - 59:8
**various** [4] - 35:12, 53:1, 59:1, 61:24
**vehemently** [2] - 32:4, 32:6
**vehicle** [1] - 53:25
**version** [1] - 60:20
**view** [13] - 8:12, 11:7, 15:5, 15:16, 20:13, 20:19, 20:21, 22:13, 32:15, 32:25, 33:8, 41:12, 51:21
**viewed** [1] - 41:8
**violate** [1] - 29:13
**vs** [1] - 1:8

## W

**wait** [11] - 6:15, 25:10, 26:15, 41:23, 43:13, 43:24, 44:3, 49:5, 56:4
**waited** [1] - 51:10
**waive** [1] - 10:23
**wants** [4] - 21:4, 33:12, 33:14, 46:20
**Washington** [1] - 2:4
**waste** [1] - 54:14
**WATKINS** [1] - 2:9
**Watkins** [3] - 5:11, 5:13, 66:1
**website** [1] - 7:12
**weeds** [1] - 51:10
**week** [2] - 20:5, 20:12
**weeks** [6] - 19:16, 20:1, 20:6, 24:25, 25:21, 25:22
**whatnot** [1] - 30:25
**whole** [5] - 16:20, 28:13, 28:15, 52:18, 53:15
**willfully** [1] - 15:11
**WILLIAMS** [1] - 2:2
**Williams** [2] - 7:23, 59:14
**willing** [1] - 32:12
**Wilmington** [1] - 1:13
**WILSON** [1] - 4:6
**WINDELS** [1] - 3:6
**Windels** [1] - 6:7
**window** [1] - 67:14
**wishes** [1] - 12:11
**withhold** [1] - 65:16
**witness** [4] - 28:6, 28:8, 30:15, 30:16
**witnesses** [4] - 28:10, 29:8, 29:9, 56:9
**word** [4] - 17:16, 35:18, 59:9, 59:11

**words** [2] - 8:24, 15:11
**worry** [1] - 40:4
**written** [1] - 55:25
**wrote** [1] - 20:11

## Y

**Yates** [3] - 29:23, 30:1, 30:14
**Yates'** [4] - 15:2, 27:25, 28:4, 28:23
**year** [1] - 7:5
**York** [1] - 2:10
**York)** [1] - 2:10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CEPHALON. INC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 17-1154-CFC |
| SLAYBACK PHARMA LIMITED | ) | |
| LIABILITY CO., *et al.*, | ) | **CONSOLIDATED** |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER**

This _____ day of _____, 2019, upon consideration of the parties'

Joint Motion to Redact Portions of the May 16, 2019 Hearing Transcript, D.I. _____, IT IS

HEREBY ORDERED that the motion is GRANTED.

The Clerk of the Court shall docket the redacted version of the transcript attached as

Exhibit B to the motion.  The original, unredacted version shall be kept permanently under seal.

_____
United States District Judge