IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CEPHALON. INC, *et al.*, | ) | |
| | ) | Redacted- Public Version |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 17-1154-CFC |
| SLAYBACK PHARMA LIMITED | ) | CONSOLIDATED |
| LIABILITY CO., *et al.*, | ) | |
| | ) | ███████████ |
| Defendants. | ) | █████████ |

**PROPOSED FINAL PRETRIAL ORDER**

## PROPOSED FINAL PRETRIAL ORDER

Plaintiffs Teva Pharmaceuticals International GmbH ("Teva Pharmaceuticals") and Cephalon, Inc. ("Cephalon," and collectively with Teva Pharmaceuticals, "Teva") and Eagle Pharmaceuticals, Inc. ("Eagle" and, collectively with Teva, "Plaintiffs") and Defendants Apotex Inc. and Apotex Corp. (collectively, "Apotex"), Fresenius Kabi USA, LLC ("Fresenius Kabi"), Mylan Laboratories Ltd. ("Mylan"), and Slayback Pharma LLC ("Slayback" and, collectively with Apotex, Fresenius Kabi, and Mylan, "Defendants"), by their undersigned counsel, submit for the Court's approval this Proposed Final Pretrial Order pursuant to Local Rule 16.3.  A Pretrial Conference in this matter is scheduled for September 4, 2019, at 1:30 p.m.  A bench trial of this matter is scheduled to begin on September 9, 2019, at 9:00 a.m.

**Teva's Counsel:**  Teva is represented by David I. Berl (dberl@wc.com), Adam D. Harber (aharber@wc.com), Elise M. Baumgarten (ebaumgarten@wc.com), Shaun P. Mahaffy (smahaffy@wc.com), Ben V. Picozzi (bpicozzi@wc.com), and Matthew W. Lachman (mlachman@wc.com) of Williams & Connolly LLP, 725 Twelfth Street N.W., Washington, DC 20005, 202-434-5000; and John W. Shaw (jshaw@shawkeller.com), Karen E. Keller (kkeller@shawkeller.com), and Nathan Roger Hoeschen (nhoeschen@shawkeller.com) of Shaw Keller LLP, 1105 North Market Street, Twelfth Floor, Wilmington, DE 19801, 302-298-0700.

**Eagle's Counsel:**  Eagle is represented by Daniel G. Brown (dbrown@lw.com) and Michelle L. Ernst (michelle.ernst@lw.com) of Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, 212-906-1200; Kenneth G. Schuler (kenneth.schuler@lw.com) and Marc N. Zubick  (marc.zubick@lw.com) of 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, 312-876-7700; and John W. Shaw (jshaw@shawkeller.com), Karen E. Keller

(kkeller@shawkeller.com), and Nathan Roger Hoeschen (nhoeschen@shawkeller.com) of Shaw Keller LLP, 1105 North Market Street, Twelfth Floor, Wilmington, DE 19801, 302-298-0700.

**Apotex's Counsel**:  Apotex is represented by Steven E. Feldman (sfeldman@hahnlaw.com), Sherry L. Rollo (srollo@hahnlaw.com), Daniel R. Cherry (dcherry@hahnlaw.com), and John D. Cravero (jcravero@hahnlaw.com) of Hahn Loeser & Parks LLP, 125 South Wacker Drive, Suite 2900, Chicago, IL 60606, 312-637-3000; and Jeremy S. Cole (jeremy.cole@flastergreenberg.com), Damien Nicholas Tancredi (damien.tancredi@flastergreenberg.com), and Jeffrey A. Cohen (jeff.cohen@flastergreenberg.com) of Flaster Greenburg, P.C., 1201 North Orange Street, Suite 301, Wilmington, DE 19801, 856-382-2240.

**Fresenius Kabi's Counsel**:  Fresenius Kabi is represented by Imron T. Aly (ialy@schiffhardin.com), Kevin M. Nelson (knelson@schiffhardin.com), and Helen H. Ji (hji@schiffhardin.com) of Schiff Hardin LLP, 233 South Wacker Drive, Suite 7100, Chicago, IL 60606,, 312-258-5500; Arun J. Mohan (amohan@schiffhardin.com), of Schiff Hardin LLP, 666 Fifth Avenue, Suite 1700, New York, NY 10103, 212-745-9536; and Brian E. Farnan (bfarnan@farnanlaw.com) and Michael J. Farnan (mfarnan@farnanlaw.com) of Farnan LLP, 919 North Market Street, Twelfth Floor, Wilmington, DE 19801, 302-777-0300.

**Mylan's Counsel**:  Mylan is represented by Nicole W. Stafford (nstafford@wsgr.com), Dennis Gregory (dgregory@wsgr.com), Aden M. Allen (aallen@wsgr.com), Shyamkrishna Palaiyanur (spalaiyanur@wsgr.com) of Wilson Sonsini Goodrich & Rosati P.C., 900 South Capital of Texas Highway, Las Cimas IV, Fifth Floor, Austin, TX 78746, 512-338-5400; Rhyea Malik (rmalik@wsgr.com) of Wilson Sonsini Goodrich & Rosati P.C., 122235 El Camino Real

San Diego, CA 92130; James Michael Lennon (jlennon@devlinlawfirm.com) of Devlin Law

Firm LLC, 1526 Gilpin Avenue, Wilmington, DE 19806, 302-449-9010.

Slayback's Counsel:  Frank D. Rodriguez (frodriguez@windelsmarx.com), Constance S.

Huttner (chuttner@windelsmarx.com), James P. Barabas (jbarabas@windelsmarx.com), and

Beth C. Finkelstein (bfinkelstein@windelsmarx.com) of Windels Marx Lane & Mittendorf, LLP,

One Giralda Farms, Madison, NJ 07940, 973-966-3200; and Eve H. Ormerod

(eormerod@skjlaw.com) and Neal C. Belgam (nbelgam@skjlaw.com) of Smith, Katzenstein &

Jenkins LLP, The Brandywine Building, 1000 West Street, Suite 1501, P.O. Box 410,

Wilmington, DE 19899, 302-652-8400.

## I.   <u>NATURE OF THE ACTION</u>

1.      This is a consolidated action for patent infringement under the patent laws of the

United States, Title 35, brought pursuant to the Hatch-Waxman Act, arising out of the filing by

each of Apotex, Fresenius Kabi, Mylan, and Slayback with the U.S. Food & Drug

Administration ("FDA") of an Abbreviated New Drug Application ("ANDA"), pursuant to the

Federal Food, Drug and Cosmetic Act ("FDCA"), seeking approval for generic versions of

Plaintiffs' Bendeka® drug product pursuant to 21 U.S.C. § 355(j) prior to the expiration of one

or more of the following patents: U.S. Patent Nos. 8,791,270 (the "'270 patent"), 8,609,707 (the

"'707 patent"), 9,265,831 (the "'831 patent"), 9,572,796 (the "'796 patent"), 9,572,797 (the

"'797 patent"), 10,010,533 (the "'533 patent"), 9,034,908 (the "'908 patent"), 9,144,568 (the

"'568 patent"), 9,572,887 (the "'887 patent"), 9,597,397 (the "'397 patent"), 9,597,398 (the

"'398 patent"), 9,597,399 (the "'399 patent"), 10,052,385 (the "'385 patent"), 9,000,021 (the

"'021 patent"), and 9,579,384 (the "'384 patent").

2.      Bendeka® is an alkylating drug that is indicated for the treatment of patients with

chronic lymphocytic leukemia and indolent B-cell non-Hodgkin lymphoma.  The active

ingredient in Bendeka® is bendamustine hydrochloride.  Plaintiffs sell Bendeka® in the United States pursuant to New Drug Application ("NDA") No. 208194, which has been approved by the FDA.

3.      Cephalon is the owner and assignee of the '270 patent, which has been listed in connection with Bendeka® in the FDA's publication *Approved Drug Products with Therapeutic Equivalence Evaluations*, also known as the "Orange Book."

4.      Eagle is the owner and assignee of the '707, '831, '796, '797, '533, '908, '568, '887, '397, '398, '399, '385, '021, and '384 patents, and those patents have been listed in connection with Bendeka® in the FDA's Orange Book.

5.      On or around February 13, 2015, Cephalon and Eagle executed a licensing agreement (the "Teva-Eagle license"). The text of the Teva-Eagle license purports to grant Cephalon an exclusive license to, *inter alia*, U.S. Patent No. 8,609,707, U.S. Patent Application No. 14/031,879 (which later issued as the '831 patent), U.S. Patent Application No. 13/838,090 (which later issued as the '908 patent), U.S. Patent Application No. 13/838,267 (which later issued as the '021 patent), and all patent rights claiming priority to those patents or patent applications (which include the '796, '797, '533, '568, '887, '397, '398, '399, '385, and '384 patents), for the commercialization of Eagle's bendamustine hydrochloride product EP-3102, which became Bendeka®.  The text of the Teva-Eagle license purports to provide Cephalon the right to sue for infringement of the licensed patents in the event of, *inter alia*, the filing of an ANDA that makes reference to Bendeka® and seeks approval before expiry of a licensed patent.

6.      By letter dated July 7, 2017, Apotex Inc. notified Cephalon and Eagle pursuant to the FDCA that Apotex Inc. had submitted to the FDA ANDA No. 210601, that Apotex had filed a Paragraph IV certification with respect to the '270, '707, '831, '796, '797, '908, '568, '887,

4

'397, '398, '399, '021, and '384 patents, and that Apotex was seeking approval for a generic

bendamustine hydrochloride injection, 100 mg/4 mL (25 mg/mL) multiple-dose vials ("Apotex's

ANDA Product") prior to the expiration of those patents.  This Paragraph IV certification

provided detailed statements setting forth the legal and factual bases as to why Apotex asserted

that all claims of the '270, '707, '831, '796, '797, '908, '568, '887, '397, '398, '399, '021, and

'384 patents are not infringed, are invalid, or otherwise unenforceable.

       7.      By letter dated July 14, 2017, Fresenius Kabi notified Cephalon and Eagle

pursuant to the FDCA that Fresenius Kabi had submitted to the FDA ANDA No. 210410, that

Fresenius Kabi had filed a Paragraph IV certification with respect to the '270, '707, '831, '796,

'797, '908, '568, '887, '397, '398, '399, '021, and '384 patents, and that Fresenius Kabi was

seeking approval for a generic Bendamustine Hydrochloride Injection, 25 mg/mL in a 5 mL

glass vial ("Fresenius Kabi's ANDA Product") prior to the expiration of those patents.  This

Paragraph IV certification provided detailed statements setting forth the legal and factual bases

as to why Fresenius Kabi asserted that all claims of the '270, '707, '831, '796, '797, '908, '568,

'887, '397, '398, '399, '021, and '384 patents are not infringed, are invalid, or otherwise

unenforceable.  By letters dated August 6, 2018, and August 31, 2018, Fresenius Kabi notified

Eagle that Fresenius Kabi had filed additional Paragraph IV Certifications with respect to the

'533 and '385 patents, and that Fresenius Kabi was seeking approval from the FDA for Fresenius

Kabi's ANDA Product prior to the expiration of the '533 and '385 patents.  These certifications

provided detailed statements setting forth the legal and factual bases as to why all claims of the

'533 and '385 patents are not infringed, are invalid, or otherwise unenforceable.

       8.      By letter dated October 30, 2017, Mylan notified Teva and Eagle pursuant to the

FDCA that Mylan had submitted to the FDA ANDA No. 210827, that Mylan had filed a

5

Paragraph IV certification with respect to the '270, '707, '831, '796, '797, '908, '568, '887, '397, '398, '399, '021, and '384 patents, and that Mylan was seeking approval for a generic Bendamustine Hydrochloride Injection, 100 mg /4 mL (25 mg/mL) ("Mylan's ANDA Product") prior to the expiration of those patents.  This Paragraph IV certification provided detailed statements setting forth the legal and factual bases as to why Mylan asserted that all claims of the '270, '707, '831, '796, '797, '908, '568, '887, '397, '398, '399, '021, and '384 patents are not infringed, are invalid, or otherwise unenforceable.  By letters dated August 30, 2018, and September 28, 2018, Mylan notified Eagle and Teva that Mylan had filed additional Paragraph IV Certifications with respect to the '533 and '385 patents and that Mylan was seeking approval for Mylan's ANDA Product prior to the expiration of the '533 and '385 patents.  These certifications provided detailed statements setting forth the legal and factual bases as to why all claims of the '533 and '385 patents are not infringed, are invalid, or otherwise unenforceable.

9.      By letter dated July 6, 2017, Slayback notified Cephalon and Eagle pursuant to the FDCA that Slayback had submitted to the FDA ANDA No. 210617, that Slayback had filed a Paragraph IV certification with respect to the '270 patent, and that Slayback was seeking approval for a generic bendamustine hydrochloride injection, 100 mg/4 mL (25 mg/mL) multiple-dose vials ("Slayback's ANDA Product") prior to the expiration of the that patent.  This Paragraph IV certification provided detailed statements setting forth the legal and factual bases as to why Slayback asserted that all claims of the '270 patent are not infringed, are invalid, or otherwise unenforceable.  By letter dated December 8, 2017, Slayback notified Eagle that Slayback had filed an additional Paragraph IV Certification with respect to the '887 patent and that Slayback was seeking approval from the FDA for Slayback's ANDA Product prior to the expiration of the '887 patent.  This Paragraph IV certification provided detailed statements

setting forth the legal and factual bases as to why all claims of the '887 patent are not infringed, are invalid, or otherwise unenforceable.

**A.    Plaintiffs' Complaints**

10.    Plaintiffs filed suit against Apotex on August 18, 2017, alleging that Apotex's filing of its ANDA No. 210601 constitutes an act of infringement of the '270, '707, '831, '796, '797, '908, '568, '887, '397, '398, '399, '021, and '384 patents.  Plaintiffs' Complaint also seeks a declaratory judgment that the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Apotex's ANDA Product would infringe those patents.  That case is C.A. No. 17-1164-CFC.

11.    Plaintiffs filed suit against Fresenius Kabi on August 24, 2017, alleging that Fresenius Kabi's filing of its ANDA No. 210410 constitutes an act of infringement of the '270, '707, '831, '796, '797, '908, '568, '887, '397, '398, '399, '021, and '384 patents.  Plaintiffs subsequently filed suit against Fresenius Kabi on October 15, 2018, alleging that Fresenius Kabi's filing of its ANDA No. 210410 constitutes an act of infringement of the '533 and '385 patents.  Plaintiffs' Complaints also seek a declaratory judgment that the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Fresenius Kabi's ANDA Product would infringe those patents.  Those cases are C.A. No. 17-1201-CFC and C.A. No. 18-1586-CFC, respectively.

12.    Plaintiffs filed suit against Mylan on December 12, 2017, alleging that Mylan's filing of its ANDA No. 210827 constitutes an act of infringement of the '270, '707, '831, '796, '797, '908, '568, '887, '397, '398, '399, '021, and '384 patents.  Plaintiffs subsequently filed suit against Mylan on October 15, 2018, alleging that Mylan's filing of its ANDA No. 210827 constitutes an act of infringement of the '533 and '385 patents.  Plaintiffs' Complaints also seek

7

a declaratory judgment that the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Mylan's ANDA Product would infringe those patents. Those cases are C.A. No. 17-1790-CFC and C.A. No. 18-1586-CFC, respectively.

13.     Plaintiffs filed suit against Slayback on August 16, 2017, alleging that Slayback's filing of its ANDA No. 210617 constitutes an act of infringement of the '270 patent. Plaintiffs subsequently filed suit against Slayback on January 19, 2018, alleging that Slayback's filing of its ANDA No. 210617 constitutes an act of infringement of the '887 patent. Plaintiffs' Complaints also seek a declaratory judgment that the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Slayback's ANDA Product would infringe those patents. Those cases are C.A. No. 17-1154-CFC and C.A. No. 18-117-CFC, respectively.

14.     The cases listed in the preceding paragraphs have been consolidated as C.A. No. 17-1154-CFC (Consolidated).

15.     Plaintiffs have entered into stipulations with all Defendants to dismiss all claims and counterclaims related to the '270 patent. *See* D.I. 93 (July 24, 2018) (Apotex); C.A. No. 17-1201-LPS, D.I. 24 (Aug. 2, 2018) (Fresenius Kabi); C.A. No. 17-1790-LPS, D.I. 28 (Aug. 3, 2018) (Mylan); D.I. 221 (Jan. 4, 2019) (Slayback). On August 9, 2018, the Court entered a consent judgment dismissing the '270 patent against defendant Mylan and Fresenius Kabi. On January 4, 2019, the Court entered consent judgment dismissing the '270 patent against defendant Slayback.

16.     Plaintiffs have reduced the number of claims at issue in the case,[1] and are presently asserting that the manufacture, use, offer for sale, sale, marketing, distribution, and/or

---

[1] Plaintiffs provided Defendants with the narrowed set of the asserted claims on August 28, 2019. Defendants are continuing to study Plaintiffs' asserted claims to determine the defenses that Defendants will maintain at trial in a good faith effort to narrow the issues in dispute.

importation of Apotex's, Fresenius Kabi's, and Mylan's ANDA Products would infringe claims 2, 3, and 5 of the '831 patent; claims 9 and 11 of the '797 patent; claims 11, 18, and 22 of the '568 patent; claim 13 of the '399 patent; and claim 15 of the '021 patent.[2]  Plaintiffs are asserting that the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Apotex's ANDA Product would infringe claim 15 of the '399 patent.   Plaintiffs are asserting that the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Slayback's ANDA Product would infringe claim 13 of the '887 patent.

### B. Defendants' Answers and Counterclaims

17.    Apotex filed an Answer to Plaintiffs' Complaint on November 27, 2017 (C.A. No. 17-1164-CFC, D.I. 17), denying infringement of the asserted patents and alleging that the claims of those patents are invalid.  Apotex concurrently filed counterclaims seeking a declaration that its ANDA Product would not infringe any valid or enforceable claim of the asserted patents and that the claims of those patents are invalid.

18.    Fresenius Kabi filed Answers to Plaintiffs' Complaints on September 15, 2017 (C.A. No. 17-1201-CFC, D.I. 10) and November 6, 2018 (C.A. No. 18-1586-CFC, D.I. 9), denying infringement of the asserted patents and alleging that the claims of those patents are invalid.  Fresenius Kabi asserted defenses of invalidity for failure to comply with one or more requirements of patentability under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116; failure to state a claim upon which relief may be granted, failure to state a claim for willful infringement and/or

---

[2] Once Defendants make a determination about the defenses that they will maintain at trial, the parties will make good faith efforts to negotiate such that Plaintiffs assert at trial representative claims of the '707, '831, '796, '797, '533, '908, '568, '887, '397, '398, '399, '021, '384 patent, and '385 patents for purposes of final judgment against those patents.

exceptional case, failure to provide requisite detail to assert infringement and good faith basis for the claim being made; failure to establish injunctive relief; and non-infringement of the asserted patents. Fresenius Kabi concurrently filed counterclaims seeking a declaration that its ANDA Product would not infringe any valid or enforceable claim of the asserted patents and that the claims of those patents are invalid.

19.     Mylan filed Answers to Plaintiffs' Complaints on February 14, 2018 (C.A. No. 17-1790-CFC, D.I. 12) and November 9, 2019 (C.A. No. 18-1586-CFC, D.I. 9), denying infringement of the asserted patents and alleging that the claims of those patents are invalid for failure to comply with one or more requirements of patentability under 35 U.S.C. §§ 103 and/or 112.

20.     Slayback filed Answers to Plaintiffs' Complaints on September 29, 2017 (C.A. No. 18-117-CFC, D.I. 11) and February 12, 2018 (C.A. No. 18-117-CFC, D.I. 9), denying infringement of the asserted patents and alleging that the claims of those patents are invalid. Slayback concurrently filed counterclaims seeking a declaration that its ANDA Product would not infringe any valid or enforceable claim of the asserted patents and that the claims of those patents are invalid.

21.     Defendants have narrowed the prior art at issue in this case.  Pursuant to the Court's oral ruling on March 12, 2019, Defendants identified a list of 40 references on which Defendants may rely in support of their invalidity defenses.  *See* Ltr. from A. Mohan (Apr. 3, 2019).  Defendants reserved the right to rely on additional references, including but not limited to references to show the state of the art and references to rebut Plaintiffs' validity and secondary considerations contentions, expert reports, and/or testimony on validity and secondary

considerations of obviousness.  *Id.*  The Court's Oral Order dated March 12, 2019 sets forth the effect of Defendants' narrowing.

### C.      Claim Construction

22.      On July 24, 2018, the parties submitted a Joint Claim Construction Chart to Judge Sleet, who was then presiding over the case.  ECF No. 94.  The parties stated that "[n]o claim term contained in any of the" patents currently asserted in the litigation required construction. *Id.* at 1.  Defendants stated that they "reserve[d] the right to raise any indefiniteness argument presented in their Preliminary Invalidity Contentions or Final Invalidity Contentions."  *Id*. at 2.

23.      On July 25, 2018, the case was reassigned to Chief Judge Stark.  On August 4, 2018, Defendants Fresenius Kabi and Mylan filed a letter with the Court requesting leave to brief indefiniteness at a claim construction hearing in front of Chief Judge Stark (C.A. No. 17-1154-CFC, D.I. 98).  On August 16, 2018, Chief Judge Stark denied the request, stating that "[the] Court deems it most reasonable in the context of this case not to address indefiniteness now but instead to do so, the extent necessary, at trial."  (C.A. No. 17-1154-CFC, D.I. 117.)

## II.      <u>JURISDICTION</u>

24.      This is an action for patent infringement under 35 U.S.C. § 271 and for declaratory and injunctive relief.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

25.      The jurisdiction of the Court is not disputed.  Apotex stated in its Answer that it does not contest personal jurisdiction for purposes of this action.  C.A. No. 17-1164-CFC, D.I. 17 ¶ 16.  Fresenius Kabi stated in its Answer that this Court has subject matter jurisdiction over this action and that it does not contest personal jurisdiction solely for the limited purposes of this action.  C.A. No. 17-1201-CFC, D.I. 10 ¶¶ 6, 8.  In its Answer, Mylan denied that this court has subject matter jurisdiction over any Declaratory Judgment causes of action.  C.A. No. 17-1790-

CFC, D.I. 12 ¶ 6.  Mylan also denied that it is subject to personal jurisdiction in this District, C.A. No. 17-1790-CFC, D.I. 12 ¶ 7; however, Mylan did not move to dismiss this action for lack of personal jurisdiction.  Slayback stated in its Answer that this Court has subject matter jurisdiction and that it does not contest personal jurisdiction for the purposes of this action.  18-117-CFC, D.I. 9 ¶¶ 7, 9.

26.     Venue is not disputed.  Apotex stated in its Answer that it does not contest venue for purposes of this action.  C.A. No. 17-1164-CFC, D.I. 17 ¶ 15.  Fresenius Kabi stated in its Answer that it does not contest venue solely for the limited purposes of this action.  C.A. No. 17-1201-CFC, D.I. 10 ¶ 7.  In its Answer, Mylan denied that venue was proper in this District, C.A. No. 17-1790-GMS, D.I. 12 ¶ 7; however, Mylan did not move to dismiss this action for improper venue.  Slayback stated in its Answer that it does not contest venue for the purposes of this action.  C.A. No. 18-117-GMS, D.I. 9 ¶ 8.

## III.   UNCONTESTED FACTS

27.     The parties' Joint Statement of Uncontested Facts is attached as Exhibit 1.  These facts are not disputed or have been agreed to or stipulated by the parties.  These facts do not require proof at trial, and should become part of the evidentiary record in this case.

28.     Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the Court, and will be charged for the time used to do so.

## IV.   CONTESTED FACTS

29.     Plaintiffs' Statement of Issues of Fact that Remain to be Litigated is attached as Exhibit 2P.

30.     Defendants' Statement of Issues of Fact that Remain to be Litigated is attached as Exhibit 2D.

## V.      ISSUES OF LAW

31.     Plaintiffs' Statement of Issues of Law that Remain to be Litigated is attached as Exhibit 3P.

32.     Defendants' Statement of Issues of Law that Remain to be Litigated is attached as Exhibit 3D.

## VI.     EXHIBITS AND DEMONSTRATIVES

### A.      Exhibits

33.     Plaintiffs' list of exhibits that they may offer at trial, except demonstrative exhibits and exhibits to be used solely for impeachment, and citations to the Federal Rules of Evidence to note Defendants' objections thereto, are attached as Exhibit 4P.  Plaintiffs' trial exhibits will be identified with PTX numbers; Plaintiffs' demonstrative exhibits will be identified with PDX numbers.

34.     Defendants' list of exhibits that they may offer at trial, except demonstrative exhibits and exhibits to be used solely for impeachment, and citations to the Federal Rules of Evidence to note Plaintiffs' objections thereto, are attached as Exhibit 4D.  Defendants' trial exhibits will be identified with DTX numbers; Defendants' demonstrative exhibits will be identified with DDX numbers.

35.     The parties will offer at trial one or more of the exhibits set forth in their respective exhibit lists.  These lists include the exhibit numbers to be used at trial and a description sufficient to identify the exhibits.  These exhibit lists may include exhibits that may not necessarily be offered or introduced into evidence.

36.     The parties agree that either side may offer into evidence the opposing sides' pleadings (including discovery responses, contentions, and filings) and do not need to list such

pleadings on the exhibit list.  The parties reserve the right to supplement these exhibit lists, with sufficient and reasonable notice to the other side.

37.    Absent agreement between the parties and approval by the Court, no exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit.  At some point before the close of a phase of the case, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.

38.    For each witness that a party intends to use in connection with the direct examination, a party will provide exhibits with an indication of which witness that exhibit may be shown to by 7:00 p.m. EST the day before their intended use, and objections will be provided no later than 10:00 p.m. EST that day.  The parties will meet-and-confer as soon as reasonably possible thereafter to resolve such objections.  If good-faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

39.    Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness in conformance with Paragraph 37 above. This paragraph does not apply to the patents-in-suit and file histories for the patents-in-suit, which are received into evidence without presentation to the witness.

40.    On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

41.    Each party may use an exhibit that is listed on the other side's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections.  Any exhibit, once admitted at trial, may be used equally by any party, subject to the Federal Rules of Evidence.

42.    The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side for the purpose that the opposing side wishes to admit the document.  Each party reserves the right to object to the relevancy and admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

43.    The parties agree that exhibits to be used solely for impeachment need not be included on the list of trial exhibits or disclosed in advance of being used at trial.  The parties reserve the right to object on evidentiary or discovery grounds to any such exhibit if used at trial.

44.    Legible copies of documents may be offered and received into evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.  Legible copies of United States and foreign patents, and the contents of associated file histories, may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to admissibility of certified copies.

45.    The parties shall make available for inspection any physical exhibits to be used at trial, labeled with the exhibit number.  Access to the opposing side's physical exhibits shall be at such time and place and under such circumstances as are reasonable and mutually agreed to.

**B.** **Demonstratives to be Used During Direct Examination of Witnesses**

46.    For each direct examination, a party shall provide demonstrative exhibits (in color, and on 8.5 × 11 inch paper or larger, or in electronic pdf form) with an indication of the witness(es) with whom the subject demonstrative exhibit may be used to opposing counsel by [**Plaintiff' Proposal**: 7:00 p.m. EST two days before the witness will testify, and objections to be provided no later than 7:00 p.m. EST the next day.  The parties will meet and confer at 8:30 p.m. the night before the witness is set to testify to resolve any objections.]  [**Defendants' Proposal**: 7:00 p.m. EST the day before the witness will testify, and objections will be provided no later than 10:00 p.m. EST that day.  The parties will meet-and-confer as soon as reasonably possible thereafter to resolve such objections.]  If good-faith efforts to resolve the objections fail, the party objecting to the demonstrative exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative exhibit or waiver of objection to the demonstrative exhibit.

47.    For each Demonstrative Exhibit that includes an excerpt from a document, the party shall cite the document by Trial Exhibit number on the face of the demonstrative.

48.    Paragraph 46 does not apply to demonstratives created during testimony, which need not be provided to the other side in advance of their use.

49.    This provision does not apply to highlighting, ballooning, arrowing, call-outs, etc. of exhibits or testimony, which are not required to be provided to the other side in advance of their use.

16

### C.      Demonstratives to be Used During Cross-Examination of Witnesses

50.      A party will provide demonstrative exhibits (in color, and on 8.5 x 11 inch paper or larger, or in electronic pdf form) that may be used in connection with cross-examination by [**Plaintiff' Proposal**:  7:00 p.m. EST the day before the witness will testify; objections will be provided no later than 10:00 p.m. EST; and the parties will meet-and-confer as soon as reasonably possible thereafter to resolve such objections.]  [**Defendants' Proposal**:  10:00 p.m. EST the day before the witness will testify, and objections will be provided no later than 6:00 a.m. EST the next morning.  The parties will meet-and-confer as soon as reasonably possible thereafter to resolve such objections.]  If good-faith efforts to resolve the objections fail, the party objecting to the demonstrative exhibits shall bring its objections to the Court's attention prior to the witness being cross-examined.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative exhibit or waiver of objection to the demonstrative exhibit. This paragraph does not apply to demonstratives used during the direct examination of a witness, which each party may use during their cross examination of that same witness without notice.

51.      This provision does not apply to demonstratives created during testimony, which need not be provided to the other side in advance of their use.

52.      This provision does not apply to highlighting, ballooning, arrowing, call-outs, etc. of exhibits or testimony, including demonstrative exhibits used during direct examination, which are not required to be provided to the other side in advance of their use.

### VII.      <u>WITNESSES</u>

53.      The parties agree that fact witnesses will be sequestered, including for opening statements.  The parties agree that expert witnesses need not be sequestered.  [**Defendants' Proposal**:  Dr. Leoni, who is testifying on a mix of factual and expert issues, will also be

sequestered.] [**Plaintiffs' Proposal**:  Plaintiffs do not believe that there is any basis to sequester Dr. Leoni, but as a compromise are willing to agree that he be sequestered during the testimony of fact witnesses and during opening statements.  He should not be sequestered during the testimony of expert witnesses opining on subjects on which he is also opining.]

54.     The parties will give each other advance notice of the witnesses they will call, including the order in which the party intends to call the witness, by 7:00 p.m. EST two calendar days before the witness will testify.  Thereafter, each party shall update its list of expected witnesses at the end of each trial day.  This paragraph applies only to the identification of live witnesses; witnesses whose testimony will be played from a deposition must be disclosed according to the schedule set forth in below section VII.B.

55.     For the convenience of witnesses, the parties, and to streamline presentation for the Court, fact witnesses will testify only once — barring a showing of good cause — and therefore cross-examination of all witnesses may exceed the scope of direct examination so long as the evidence would be otherwise able to be presented in a party's case in chief.   The parties agree that this provision applies to witnesses who testify live and by deposition designation.

56.     The parties agree that the order of the presentation of evidence will follow the burden of proof as follows:

**Plaintiffs' Proposal**:

| Phase I | Plaintiffs' presentation of asserted patents and case-in-chief on infringement |
|---|---|
| Phase II | Defendants' response on infringement and case-in-chief on invalidity |
| Phase III | Plaintiffs' response on invalidity and case-in-chief on objective indicia of nonobviousness |
| Phase IV | Defendants' response on objective indicia of nonobviousness asserted by Plaintiffs |

**Defendants' Proposal**:

| Phase I | Plaintiffs' presentation of asserted patents and case-in-chief on infringement |
|---------|---------------------------------------------------------------------------------|
| Phase II | Defendants' response on infringement, and case-in-chief on invalidity |
| Phase III | Plaintiffs' rebuttal on infringement and response on invalidity |
| Phase IV | Defendants' rebuttal on invalidity |

57.     The parties will give notice of when they intend to close their presentation of evidence for each phase by 7:00 p.m. EST two days before they intend to close the presentation of evidence.  By 9:00 a.m. EST the following day, the opposing party will provide notice of the witnesses they intend to call on the day that the noticing parties closes their presentation.

58.     The parties propose that the Court hear closing arguments after post-trial briefing has concluded.

**A.     Lists of Witnesses Who May be Called**

59.     Plaintiffs' List of Witnesses Who May be Called Live or by Deposition is attached as Exhibit 5P.  Defendants' Objections to Plaintiffs' List of Witnesses is attached as exhibit 5P.1.  Plaintiffs' Response to Defendants' Objections to Plaintiffs' List of Witnesses is attached as exhibit 5P.2.

60.     Defendants' List of Witnesses Who May be Called Live or by Deposition is attached as Exhibit 5D.  Plaintiffs' Objections to Defendants' List of Witnesses is attached as exhibit 5D.1.  Defendants' Response to Plaintiffs' Objections to Defendants' List of Witnesses is attached as exhibit 5D.2.

61.     Any witness not listed in the above exhibits will be precluded from testifying, absent good cause shown.

19

**B.      Testimony by Deposition**

62.      The deposition testimony that Plaintiffs may offer into evidence is identified in Exhibit 6P.[3]

63.      The deposition testimony that Defendants may offer into evidence is identified in Exhibit 6D.

64.      This pretrial order contains the maximum universe of deposition designations, which shall not be supplemented without approval of all parties or leave of the Court, on good cause shown.

65.      The party offering deposition testimony (other than for the purpose of impeachment) shall identify the deposition testimony to be offered from previously exchanged depositions by 7:00 p.m. EST three calendar days before the deposition testimony is to be played at trial.  The opposing party shall provide the designating party with any objections or counter-designations to the affirmative designations by 7:00 p.m. EST the day following receipt of the designating party's affirmative designations.  To the extent necessary, the designating party will provide the opposing party with any objections to the opposing party's counter-designations by 7:00 p.m. EST the day following receipt of the designating party's counter-designations.  The parties will thereafter meet-and-confer as soon as reasonably possible thereafter to resolve such objections.  Any issues that remain will be raised orally with the Court before the designations are played; unless the Court requests otherwise, there will be no written submissions to the Court.

---

[3] The parties have agreed that objections to deposition designations and counter designations need not be provided in the pre-trial submissions.  Rather, such objections will be provided on the schedule set out in the remainder of this Section.  The parties will negotiate a schedule for exchange of counter designations.

66.     All irrelevant material, including colloquy between counsel, requests to have the court reporter read back a question, and objections, may be eliminated when the deposition is played at trial.

67.     When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter designations that will be played.  The parties will be charged for time according to the following proportions:  each side shall be charged only with the time needed to play its own designations or counter-designations, and will not be charged with the time necessary to play the other side's designations or counter-designations.

68.     The parties agree that deposition testimony will be played by video.  The parties may omit dead time and long pauses from the testimony they designate to be played.   The time available for each party's trial presentation shall be reduced by the length of its designations played at trial.

69.     No deposition testimony may be presented for any witness testifying live, except for [**Plaintiffs' Proposal**: purposes of impeachment] [**Defendants' Proposal**: (1) purposes of impeachment, (2) 30(b)(6) deposition testimony from a witness who is testifying live, or (3) deposition testimony relied upon by an expert that is testifying live.]

### C.      Impeachment with Prior Inconsistent Testimony

70.     The parties agree that the Court should allow objections to the use of deposition and other prior testimony for impeachment purposes, including objections based on lack of completeness and/or lack of inconsistency.

**D.     Objections to Expert Testimony**

71.     The parties agree that the Court should rule at trial on objections to expert testimony as beyond the scope of expert disclosures.

## VIII.  STATEMENTS OF INTENDED PROOF

72.     Plaintiffs' Statement of Intended Proof is attached as Exhibit 7P.

73.     Defendants' Statement of Intended Proof is attached as Exhibit 7D.

## IX.  MOTIONS IN LIMINE

74.     All briefing related to Plaintiffs' Motions in Limine are attached as Exhibit 8P.

75.     All briefing related to Defendants' Motions in Limine are attached as Exhibit 8D.

## X.  AMENDMENT OF THE PLEADINGS

76.     The parties do not seek to amend the pleadings.

## XI.  LENGTH OF TRIAL

77.     This case is currently scheduled for a ten-day bench trial beginning at 9:00 a.m. on Monday, September 9, 2019.  The trial will be timed.  Unless otherwise ordered, time will be charged to a party for its own presentations or examinations, including a party's opening statement, direct and redirect examinations of witnesses it calls (including by designation), cross-examination of witnesses called by any other party (including by designation), and closing argument.  If a party raises undue or dilatory objections, the Court may charge that party with the time spent resolving those objections.  The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.  The time allotted for trial will be evenly split between Plaintiffs and Defendants.

78.     In accordance with the Scheduling Order, D.I. 207, the parties shall have 30 days after the last day of trial to submit findings of fact and conclusions of law.

22

**XII.    SETTLEMENT**

79.     The parties hereby certify that they have engaged in a good faith effort to explore the resolution of the controversy by settlement.  In-house counsel for the parties have engaged in discussions regarding a potential resolution within the past calendar year.  All parties remain open to continuing such discussions.

**XIII.  MISCELLANEOUS ISSUES FOR COURT RESOLUTION**

80.     The proper procedure for narrowing the case presented at trial.

81.     The Court's desired procedures for offering evidence and testimony at a bench trial.

82.     Plaintiffs' object to trial subpoenas served on fact witnesses not listed on Defendants' Rule 26(a)(1) disclosures or deposed during fact discovery.  Defendants state that they did not depose one of the fact witnesses due to an agreement by the parties to forego a deposition in lieu of document production; Plaintiffs believe this characterization is incomplete. Plaintiffs intend to file a motion to quash the subpoena to Dr. Peter Grebow, including because it places an undue burden on a third-party.  Defendants intend to oppose this motion.

83.     Accommodations for one of Plaintiffs' witnesses who is hard of hearing.


*       *       *


**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.


DATED: _____        _____

                                             UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, Nathan R. Hoeschen, hereby certify that on August 29, 2019, this document was served

on the persons listed below in the manner indicated:

**BY EMAIL**

Jeremy S. Cole
Damien Nicholas Tancredi
FLASTER/GREENBERG P.C.
1201 N. Orange Street, Suite 301
302-351-1910
Wilmington, DE 19801
jeremy.cole@flastergreenberg.com
damien.tancredi@flastergreenberg.com
*Attorneys for Apotex Inc.*
*and Apotex Corp.*

Steven E. Feldman
Sherry L. Rollo
Daniel R. Cherry
John D. Cravero
HAHN LOESER & PARKS LLP
125 South Wacker Drive
Suite 2900
Chicago, IL 60606
(312) 637-3010
sfeldman@hahnlaw.com
srollo@hahnlaw.com
dcherry@hahnlaw.com
jcravero@hahnlaw.com
*Attorneys for Apotex Inc.*
*and Apotex Corp.*

Jeffrey A. Cohen
FLASTER & GREENBERG, P.C.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900
jeffrey.cohen@flastergreenberg.com
*Attorneys for Apotex Inc.*
*and Apotex Corp.*

James M. Lennon
DEVLIN LAW FIRM LLC
1306 N. Broom Street, 1st Floor
Wilmington, DE 19806
(302) 449-9010
jlennon@devlinlawfirm.com
*Attorney for*
*Mylan Laboratories Limited*

Nicole Stafford
Shyamkrishna Palaiyanur
Anjali Deshmukh
WILSON SONSINI GOODRICH
 & ROSATI PC
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746
(512) 338-5402
nstafford@wsgr.com
spalaiyanur@wsgr.com
adeshmukh@wsgr.com
*Attorneys for Mylan Laboratories*
*Limited*

Dennis D. Gregory
WILSON SONSINI GOODRICH
 & ROSATI PC
1301 Avenue of the Americas
40th Floor
New York, NY 10019
(212) 497-7764
dgregory@wsgr.com
*Attorney for Mylan Laboratories Limited*

Bobby Delafield
Aden Allen
WILSON SONSINI GOODRICH
 & ROSATI PC
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746
(512) 338-5432
bdelafield@wsgr.com
aallen@wsgr.com
*Attorneys for Mylan Laboratories
Limited*

Brian E. Farnan
Michal J. Farnan
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com
*Attorneys for Defendant
Fresenius Kabi USA, LLC*

Arun John Mohan
SCHIFF HARDIN LLP
666 Fifth Avenue, Suite 1700
New York, NY 10103
(212) 745-9536
amohan@schiffhardin.com
*Attorney for Defendant
Fresenius Kabi USA, LLC*

Kevin M. Nelson
Imron T. Aly
SCHIFF HARDIN LLP
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
(312) 258-5500
knelson@schiffhardin.com
ialy@schiffhardin.com
*Attorneys for Defendant
Fresenius Kabi USA, LLC*

Neal C. Belgam
Eve H. Ormerod
SMITH, KATZENSTEIN, & JENKINS LLP
The Brandywine Building
1000 West Street, Suite 1501
P.O. Box 410
Wilmington, DE 19899
302-652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com
*Attorneys for Defendant
Slayback Pharma Limited Liability
Company*

2

Constance S. Huttner
Frank D. Rodriquez
James P. Barabas
Beth C. Finkelstein
WINDELS MARX LANE & MITTENDORPH, LLP
One Giralda Farms, Suite 100
Madison, NJ  07940
chuttner@windelsmarx.com
frodriguez@windelsmatx.com
jbarabas@windelsmarx.com
bfinkelstein@windelsmarx.com
*Attorneys for Slayback Pharma Limited
Liability Company*

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Teva Pharmaceuticals
International GmbH, Cephalon, Inc., and
Eagle Pharmaceuticals, Inc.*

3